| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT | Return Date: 10/17/13 | 13-3589448 |
| EASTERN DISTRICT OF NEW YORK | Return Time: 2:00 p.m. | |

---------------------------------------------------------------
In Re:                                                          **Chapter 7**

                                                                **Case No. 11-46867 (CEC)**
**MAN KIT NG,**

              Debtor.

---------------------------------------------------------------
**ROBERT L. GELTZER**, as Trustee of the
Estate of **MAN KIT NG,**

              Plaintiff,                      **Adv. Pro. No. 12-01343 (CEC)**

     -against-

**MAN KIT NG,**

              Defendant.
---------------------------------------------------------------x

## MOTION FOR AN ORDER IMPOSING SANCTIONS AGAINST KARAMVIR DAHIYA, ESQ. AND/OR DAHIYA LAW OFFICES, LLC <u>PURSUANT TO 28 U.S.C. §1927</u>

TO:    THE HONORABLE CARLA E. CRAIG,
       <u>CHIEF UNITED STATES BANKRUPTCY JUDGE</u>:

### PRELIMINARY STATEMENT

        Robert L. Geltzer, chapter 7 trustee (the "Trustee") for Man Kit NG, the debtor (the "Debtor"), by and through his undersigned counsel hereby moves for an order to assess sanctions upon Karamvir Dahiya, Esq. and/or Dahiya Law Offices, LLC (collectively "Dahiya") under 28 U.S.C. §1927 of the United States Code (the "Bankruptcy Code"). The Trustee asserts that Dahiya has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct. Dahiya's actions, as set forth below, are sanctionable under the Bankruptcy Code.

**BACKGROUND**

1. On or about August 9, 2011 (the "Petition Date"), Man Kit NG filed a voluntary petition under Chapter 7 of Title 11 of the Bankruptcy Code with this Court.

2. On or about August 9, 2011, Robert L. Geltzer was appointed by the Office of the United States Trustee as interim trustee of the Debtor's estate pursuant to § 701, and pursuant to § 702(d) of the Bankruptcy Code thereafter became permanent Trustee by operation of law, and is serving as such.

3. On or about August 26, 2011, Dahiya sent a letter to Marylou Martin, Esq. of the Office of the United States Trustee in which he stated, among other things, that he wanted the Debtor's case to be assigned to another trustee; a copy of said letter is annexed hereto as Exhibit "A."

4. Dahiya and the Debtor failed to appear at the initial §341 meeting and, accordingly, the Trustee adjourned said meeting.

5. On October 17, 2011, the Trustee sent a letter to Alicia Leonhard, Esq., Assistant United States Trustee, in which he informed her that Dahiya was "trustee shopping"; a copy of said letter is annexed hereto as Exhibit "B."

6. Whereupon, the Trustee and Dahiya had a conversation, and on November 11, 2011, Dahiya sent an email to the Trustee in which Dahiya stated that: "I was very touched by your gesture and kindness," and that Dahiya would send the petition to the Trustee so that the Debtor could be examined at the §341 meeting.

7. On November 19, 2011, Ms. Leonhard also sent a letter to Dahiya in which she stated that "trustee shopping" is improper and, moreover, if Dahiya and the Debtor did not appear at the §341 meeting, then the Office of the United States Trustee would seek to

disgorge his fee in this case - - which fee was $4,000.00 in this individual chapter 7 case; a copy of said letter is annexed hereto as Exhibit "D."

        8.      On November 20, 2011, Dahiya responded to Ms. Leonhard's November 19, 2011 letter by stating that: "Mr. Geltzer [the Trustee] was very polite when I saw him last and I decided, that after all he is a senior lawyer and has more experience, standing than me. I am also open to any suggestion to build a healthy bankruptcy bar at EDNY"; a copy of said email is annexed hereto as Exhibit "E."

        9.      The Debtor and Dahiya finally appeared for the §341 meeting (the "Meeting") on February 14, 2012 - - almost 6 months after the Petition Date. On February 9, 10, and 13, 2012 (just a few days prior to the Meeting), Dahiya amended the Debtor's Schedules; however, those amendments were defective inasmuch as Dahiya failed to serve them on all creditors in violation of Local Bankruptcy Rule 1009-1[1].

---

[1]Local Bankruptcy Rule 1009-1 provides, in pertinent part, that:

    (a) *Effectuation of Amendment*

        An amendment shall not be effective until proof of service in accordance with subdivision (b) of this rule has been filed.

    (b) *Notice of Amendment*

        A complete copy of the voluntary petition, list, schedule, or statement, as amended, together with Local Form No. USBC-63, shall be served by the amending party upon:

           (i) the United States trustee;
           (ii) the trustee;
           (iii) all creditors who were added or deleted; and
           (iv) any other party affected thereby.

        If the amendment affects claimed exemptions, the amending party must also serve all creditors. If the amendment adds a creditor, the papers to be served on such creditor shall consist of the amendment, together with copies of all notices previously sent to creditors that appear in the Court's docket, including without limitation the notice informing creditors of the date by which all proofs of claim must be filed. . . .

10. At the Meeting, which Ms. Martin of the Office of the United States Trustee attended, the Debtor testified for <u>approximately 10 minutes</u>, answering numerous questions in English and without the assistance of a translator,[2] whose assistance was not requested. Unfortunately, the Trustee was unable to ask specific questions about the Debtor's interest in "In Hair Inc." (the "Business") inasmuch as the Debtor failed to turn over any of the books and records of the Business, albeit he had over 6 months to do so. Additionally, at the Meeting, the Trustee learned that, among other things, the: (1) Debtor had previously filed for bankruptcy (though that case was dismissed for his failure to confirm a plan, and (2) Debtor bought a home in 1999 which he still owned, and (3) Debtor had an interest in the Business for over 15 years.

11. Given the above, on April 27, 2012, within 3 months of the Debtor's appearance at the Meeting, the Trustee made an application for a Bankruptcy Rule 2004 examination of the Debtor and production of documents (the "2004 Application"), which this Court granted on May 9, 2012. The Debtor and Dahiya were served with the 2004 Application to which neither objected.

12. On May 14, 2012, the Bankruptcy Rule 2004 Order (the "2004 Order") was served on the Debtor and Dahiya. The Debtor produced certain documents; however, numerous documents were missing.[3]

13. On November 15, 2012, the Debtor appeared with Dahiya for the Bankruptcy Rule 2004 examination (the "Exam"). At the Exam, Dahiya alleged that, among

---

[2] At the Meeting, Dahiya informed the Trustee and Ms. Martin that he, Dahiya, was not in good shape and that something was wrong with him.

[3] A schedule of those "missing documents" is set forth in the Trustee's Complaint (Dkt. No. 1).

other things, the Debtor would not testify at the Exam inasmuch as he needed a translator - - although the Debtor did answer certain initial questions in English at the Exam, as stated above, and testified in English for 10 minutes at the Meeting; Dahiya claimed that the Debtor was intimidated by pictures on the Trustee's walls which pictures are of the Trustee's friends and family, and they with President Clinton in the Oval Office. When Dahiya told the Court that he wanted the Trustee to put a cloth on those pictures, the Court responded: "That's the most - - that's the most absurd thing I've ever heard." (Exhibit F - Tr. 31:21-22).

    14.  Given the Debtor's refusal to testify at the Exam, coupled with the numerous documents that he failed or refused to produce, on December 21, 2012, within one year of the Debtor receiving his discharge, the Trustee filed a complaint (the "Complaint") to revoke the Debtor's discharge (the "Adversary Proceeding") .

    15.  On or about January 24, 2013, Dahiya moved (the "Motion") to dismiss the Complaint; on February 5, 2013, the Trustee filed opposition to the Motion; and on February 12, 2013, the Court held a hearing (the "Hearing") in connection with the Motion, at which counsel for the Trustee and Dahiya appeared and were heard. At the Hearing, the following transpired:

- Dahiya showed up approximately 2 hours late for the Hearing;
- Dahiya stated that the Debtor told him that he does not possess any more documents[4];
- Dahiya admitted that most of the "stuff" contained in the Debtor's petition was certain information copied from the Debtor's prior and dismissed chapter 13 petition from almost a year and one-half prior thereto.
- The Motion was marked-off the calendar;
- The Court ordered that documents be produced or an affidavit explaining why they were not produced be provided to the Trustee

---

[4]As set forth herein, the Debtor produced certain documents subsequent to the Hearing in connection with various other orders of the Court.

     by March 14, 2013; and
-    The Court stated that: "I think this is being - - going to be resolved by - - in a fashion that I - - that I have indicated." (Tr. 35: 17-36:1).

A copy of the transcript of the Hearing is annexed hereto as Exhibit "F."

    16.  Although Dahiya represented to the Court at the Hearing that the Debtor did not have any documents, the Debtor subsequently did produce certain documents, which were tax returns only, and they were not produced until the March 21, 2013 Court hearing - - not by March 14, 2013, as agreed upon and ordered. Nevertheless, numerous documents remained outstanding and no affidavit, as ordered, was submitted.

    17.  Subsequent thereto, on March 26, 2013, the Court entered a scheduling order (the "Discovery Order") setting deadlines for submission of discovery which provided for, among other things, the turnover of "all documents requested on pages three through five of the Complaint on or before May 15, 2013."

    18.  There was no compliance with the Discovery Order. At the May 23, 2013 hearing, Dahiya stated that the Discovery Order was "overlooked . . . it should have been done." (Tr. 4: 20-21). Thus, it appears that Dahiya was responsible for the Debtor's failure to comply with the Discovery Order and the further delay in this case. The Court also said that if there was no compliance "that will be the second order that you has not been complied with, and then we'll be looking at contempt, all right." (Tr. 6: 11-14). Dahiya responded: "[t]hat's fine." (Tr. 6: 15). A copy of the May 23, 2013 transcript is annexed hereto as Exhibit "G."

    19.  Prior to the Court's entry of the Court's June 13, 2013 scheduling order (the "Second Discovery Order"), on June 3, 2013, Dahiya emailed various documents to the Trustee in 6 separate emails, but no hard copies ever were sent; the Second Discovery Order set

6

June 19, 2013 as the deadline for submission of discovery. While few additional documents were sent to the Trustee on June 17, 2013, documents still were missing.

20. On June 3, 2013, Dahiya sent an email which stated: "I will not let you withdraw this lawsuit. I want to fight it." Still further, Dahiya threatened to notice the deposition of the Trustee. A copy of said email is annexed hereto as Exhibit "H."

21. Additionally, on June 17, 2013, Dahiya emailed to the Trustee a Notice for Deposition of the Trustee (the "Deposition Notice"). At a subsequent Court hearing, the Trustee's counsel advised the Court of the Deposition Notice at which time Dahiya stated that he would not pursue the Trustee's deposition. Evidently, the Deposition Notice was not filed to elicit information that would lead to admissible evidence but, rather, was filed in bad faith and only to harass the Trustee and to multiply the proceedings in the Adversary Proceeding.

22. On July 25, 2013, the Court entered a third scheduling order (the "Third Discovery Order") directing the Defendant to comply with discovery which provided for, among other things, a document production deadline of August 15, 2013.

23. On or about August 14, 2013, the Defendant finally substantially complied with the Third Discovery Order, as well as providing an affidavit with respect to the "missing documents," as ordered by the Court.

24. Given that finally the Debtor had substantially complied with discovery, which took over a year since the Court entered the 2004 Order, the Trustee filed, on or about September 3, 2013, a detailed Notice of Dismissal of the instant Adversary Proceeding, pursuant to Bankruptcy Rule 7041, in that Dahiya never filed an answer to the Complaint.

25. On September 5, 2013, Dahiya filed opposition (the "Opposition") to the dismissal of the Adversary Proceeding against the Debtor. Dahiya's Opposition is his latest

step in his crusade against the Trustee[5] that has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct. Such actions undertaken by Dahiya expose him and/or his firm to sanctions under the Bankruptcy Code for fees and costs.[6]

---

[5] As shown below, Dahiya has embarked on like crusades not only against this Trustee, but also against several other panel trustees in the Eastern District of New York.

[6] It is important to note that in connection with the Adversary Proceeding, Dahiya consistently and repeatedly violated the New York Rules of Professional Conduct or the New York State's Standards for Civility for the legal profession, New York Rules of Court, Part 1200, adopted by the Bankruptcy Court for the Eastern District of New York under Administrative Order #568 of Your Honor, dated October 28, 2010 (the "Standards of Civility").

For example,

> I.B. of the Standards of Civility states: "Whether orally or in writing, lawyers should avoid vulgar language, disparaging personal remarks or acrimony toward other counsel, parties or witnesses." Dahiya's Opposition implies that I: "targeted [the Debtor] for being a minority"; and

> II.B. of the Standards of Civility states: "Lawyers should avoid unnecessary motion practice or other judicial intervention by negotiating and agreeing with other counsel whenever it is practicable." Dahiya's Opposition states: "The trustee must be directed to make a motion to dismiss the case pursuant to F.R.Civ.P. 41(a)(2) and debtor defendant must be allowed to contest that motion." That statement by Dahiya is a clear example of an attorney who is creating "unnecessary motion practice." What debtor would not want a case against him dismissed and oppose the Plaintiff's voluntary dismissal of it?; and

> VI.A. of the Standards of Civility states: "A lawyer should avoid discovery that is not necessary to obtain facts or perpetuate testimony or that is designed to place an undue burden or expense on a party." Dahiya's Deposition Notice is a clear violation of this rule; and

> VI.B. of the Standards of Civility states: "A lawyer should respond to discovery requests reasonably. . . ." Dahiya's multiple failures to respond timely to discovery is clear violation of this rule; and

> I.D of the Lawyers' Duties to the Court and Court Personal of the Standards of Civility states: "Lawyers should be punctual and prepared for all court appearances, if delayed, the lawyer should notify the court and counsel whenever possible." Dahiya's tardiness to a hearing resulted in the Trustee's counsel waiting at Court for approximately 2 hours until the case was heard. Moreover, Dahiya knew of his conflict but neither contacted the Court nor the Trustee.

# LEGAL ARGUMENT

## DAHIYA'S TACTICS ARE SANCTIONABLE UNDER 28 U.S.C. §1927

26. 28 U.S.C.§1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

27. "A bankruptcy court may impose sanctions pursuant to 28 U.S.C. §1927 if it finds that '[a]n attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" In re Cohoe Indus. Terminal, Inc., 931 F.2d at 230 (quoting Oliveri v. Thompson 803 F.2d at 1273). To establish the right to obtain sanctions pursuant to 28 U.S.C. §1927, a party must demonstrate that "an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." Veneziano v. Long Island Fabrication & Supply Corp., 238 F. Supp. 2d 683, 693 (D.N.J. 2002).

### A. DAHIYA HAS MULTIPLIED PROCEEDINGS

28. In the instant case, Dahiya hurls ad hominem attacks at the Trustee and delays the administration of the Debtor's estate by repeatedly violating Court Orders, which in turn, has multiplied proceedings in this case. Dahiya's latest attempt to multiply proceedings by opposing the Trustee's voluntary dismissal of the Adversary Proceedings is beyond incredulity.[7]

---

[7]Upon information and belief, the Debtor has consulted with another attorney and may not know that the Opposition was filed.

As set forth above, Dahiya:

  (1) did not comply with three discovery orders and the 2004 Order which, in turn, resulted in numerous Court appearances;
  (2) moved to dismiss the Complaint albeit the Complaint was supported by sufficient factual detail in the form of references to the Debtor's violation of the 2004 Order;
  (3) noticed the Trustee's Deposition;
  (4) opposed the dismissal of the Adversary Proceeding against the Debtor; and
  (5) filed a meritless pleading in the form of his Opposition.

29. These intentional dilatory tactics over a course of two years by Dahiya have been clearly detrimental to the interest of the Debtor's estate and its creditors. "[Section]1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics." Ted Lapidus, S.A. v. Vann, 112 F. 3d 91, 96 (2nd Cir. 1997).

**B. DAHIYA HAS ACTED UNREASONABLY AND VEXATIOUSLY**

30. From Dahiya's conduct by "trustee shopping" through his harassing and meritless Deposition Notice and Opposition, Dahiya has acted unreasonably and vexatiously throughout this case. As soon as the Trustee commenced the Adversary Proceeding, Dahiya attacked him notwithstanding Dahiya's prior statements that he was touched by the Trustee's "gesture and kindness" and that the Trustee was "very polite." Now Dahiya's Opposition essentially alleges that the Trustee discriminated against his client because he is a "minority." That is a lie! The Trustee has not discriminated against his client and has never discriminated against anyone for any reason. But, after the commencement of the Adversary Proceeding, Dahiya became contentious and acrimonious, while forsaking his own duty to advocate zealously on behalf of his own client. Can there be any greater deficiency in representing a client than to thwart a dismissal of an action against that client, when it is sought to be dismissed voluntarily

and with no prejudice to the client? Indeed, for such conduct, as well as for several other acts of his, all in violation of the New York Rules of Professional Conduct (22 NYCRR Part 1200) (the "NY Rules"), he should be referred to the Disciplinary Committee pursuant to section 8.3 of the NY Rules. Dahiya has acted, and continues to act, in bad faith with his unreasonable and vexatious acts.

C. **DAHIYA HAS INCREASED THE COSTS OF LITIGATION**

31. Indeed, it appears that Dahiya's only motive is to inflate needlessly litigation costs in order to satisfy his own ego. For example, in Dahiya's June 3, 2013 email to the Trustee, Dahiya states: "I will not let you withdraw this lawsuit. I want to fight it." (See Exhibit H). His actions throughout the course of this case have been unreasonable, increased the costs of litigation, and have been committed in bad faith. He failed to comply with multiple court orders which, in turn, caused Trustee's counsel to appear at multiple Court conferences; he moved to dismiss the Complaint albeit the Complaint was supported by sufficient factual detail in the form of references to the Debtor's violation of the 2004 Order; and now, he has filed the meritless Opposition to the grave disservice of his own client. Not only does the totality of the circumstances in this case warrant sanctions against Dahiya, each individual act does as well.

D. **DAHIYA HAS ACTED IN BAD FAITH**

32. Dahiya has made a point in the Eastern District of New York to embark on a course of bad faith by multiplying proceedings unreasonably and vexatiously and to sue panel trustees for alleged abuse of power.[8] As a result, the costs of litigation have increased, as have

---

[8] In addition to Debra Kramer, as Trustee of the Estate of Shahara Khan v. Tozammel H. Mahia, Adv. Pro. No. 11-01520 (ESS), Dahiya also has sued trustee Robert L. Pryor in Robert L. Pryor, Chapter 7 Trustee of the Estate of Jennifer Pupo Santangelo v. Michael Santangelo, Adv. Pro. No. 11-9096 (AST), R. Kenneth Barnard in Barnard v. Mohamed Arif and Lailun N. Shaikh, Case No. 09-08315 (AST), and Dahiya also had previously asserted

11

the courts' calendars by Dahiya's conduct.

33. For example, in <u>Debra Kramer, as Trustee of the Estate of Shahara Khan v. Tozammel H. Mahia</u>, Adv. Pro. No. 11-01520 (ESS), Dahiya asserted, among other things, an "abuse of power" counterclaim against the trustee. The trustee moved to sanction Dahiya under 28 U.S.C. §1927. On March 11, 2013, Judge Stong issued a decision and order awarding sanctions in the amount of $15,000.00 against Dahiya (the "Sanctions Order"). Prior to the entry of the Sanctions Order, Dahiya filed a motion to withdraw the reference of the adversary proceeding. Additionally, Dahiya filed an Order to Show Cause ("OSC") for a preliminary injunction staying the adversary proceeding and enjoining the Sanctions Order. On April 15, 2013, United States District Judge, Dora L. Irizarry issued a decision denying the motion and finding the OSC as moot. What was most telling from that decision was the following comment from Judge Irizarry:

> The Court is concerned by Dahiya's and his law firm's misconduct before the Bankruptcy Court that led to the imposition of sanctions in this matter. It is clear from the record and from other matters litigated by Dahiya and his law firm before this Court that this behavior is part of a consistent patter of misconduct and poor judgment. (See, *e.g.*, June 13, 2012 Tr. 11:17-22, 26:18-27:4, 27:13-20; *Koutsagelous v. DeRosa*, 12-CV-2365 (DLI) (June 4, 2012 Order); *In re Chatkhan*, 12-DV-3195 (DLI) (Mar. 20 2013 Order).)[9] Such behavior has not only protracted the

---

a counterclaim against me, as trustee, in <u>In re Leonid Chatkhan</u>, Case No. 10-46755 (CEC)<u>, Robert L. Geltzer, as Chapter 7 Trustee of Leonid Chatkhan v. Dahiya et al</u>, Adv. Pro. No. 11-1017 (CEC). In that case, I moved to sanction Dahiya inasmuch as he filed a second dismissal motion to an amended complaint even after the substantial same form dismissal motion with respect to the first complaint was denied. Furthermore, he asserted a counterclaim against me without seeking relief under the *Barton Doctrine*, which counterclaim he ultimately withdrew. Still further, he refused to discontinue the adversary proceeding against him albeit there were not pending counterclaims and I, as trustee, recovered the amount sought in the proceeding. Consequently, I had to seek an order dismissing the adversary proceeding, which he opposed, and which opposition the court overruled.

[9]A case in which I serve as trustee, as mentioned.

> adversary proceeding, but also has had negative effects on the effective use of scarce court and trustee resources, and on Dahiya's clients. The Court questions the competency of this attorney and his firm to continue practicing law in this District and expects the attorney to heed the Bankruptcy Court's thoughtful advice and seek assistance before taking on new clients and cases. (*See* June 13, 2012 Tr. 22:10-23:4, 38:19-25.)

Dahiya blatantly ignored the mindful words of Judge Irizarry and, instead, continued to employ those same bad faith tactics in this case.

        34.    His latest tactic of raising a spurious "abuse of power" claim in his Opposition, and then recommending that the Trustee file a Motion to Dismiss the Adversary Proceeding, which motion Dahiya would then oppose (again contrary to the best interest of his own client!), is one of the most egregious examples of an attorney unreasonably and vexatiously increasing the costs of litigation.[10] Dahiya has no colorable basis to bring any claims against the Trustee. Dahiya is acting in bad faith by asserting those claims in his Opposition. As Judge Stong stated on pages 25 and 26 of the Sanctions Order with respect to Dahiya: "When the attorney's conduct crosses the line that divides creative and zealous advocacy from the assertion of claims that are plainly without merit in order to pursue a personal agenda, the question of bad faith must be addressed." And, here, that bad faith is evidenced as follows:

---

[10]This conduct is also in violation of Rule 1.1(c)(2) of the NY Rules which states: "lawyer shall not intentionally prejudice or damage the client during the course of the representation except as permitted or required by these Rules."

This conduct is also in violation of Rule 3.1(b)(2) of the NY Rules which states: "[a] lawyer's conduct is "frivolous" for the purposes of this Rule if the conduct has no reasonable purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2, or serves merely to harass or maliciously injure another.

This conduct is also in violation of Rule 3.2 of the NY Rules which states: "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense."

13

- Dahiya sought to "trustee shop";
- Dahiya and the Debtor did not comply with Court Orders;
- Dahiya intentionally delayed the administration of the Debtor's estate;
- Dahiya refused to appear at the Trustee's office for a deposition because the Trustee has pictures of family and friends on the wall;
- Dahiya noticed the Deposition of the Trustee, which discovery request served no legitimate purpose other than delay and harassment;
- Dahiya filed the Opposition which was full of ad hominem attacks and spurious claims; and
- Dahiya could not care less about his own client in that Dahiya seeks to prolong litigation against his client rather than terminate it.

35. Finally, the Court should no longer tolerate Dahiya's bad faith, meritless pleadings, falsehoods, contradictions, dilatory tactics, and spiteful statements, which if not in a pleading would be libelous. The conduct that he utilizes continually in this District, is conduct which must be stopped for all concerned - - his clients, the Court, the system, and trustees. Every element of 28 U.S.C. §1927 has been satisfied and Dahiya should be sanctioned.

**[LEFT BLANK INTENTIONALLY]**

## CONCLUSION

36. For all the reasons stated herein, the Trustee respectfully requests that this Court grant the Trustee's Motion and impose sanctions against Dahiya under 28 U.S.C. §1927, and such other and further relief that this Court deems just and proper under the circumstances.

Dated: New York, New York
      September 11, 2013

                              Respectfully Submitted,

                              THE LAW OFFICES OF
                              ROBERT L. GELTZER,
                              Counsel to the Chapter 7 Trustee

                              By: /s/ Robert L. Geltzer
                                    Robert L. Geltzer  (RG 4656)