**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

**HEARING DATE: July 14, 2011**
**HEARING TIME: 2:00 p.m.**

--------------------------------------------------------------x    **NOTICE OF MOTION**

**IN RE**                                                      :

                                                               :

**SONG PARK AND YONGDAE PARK**                                 :    **Chapter 7 Case Nos.**

                                                               :

                                                               :    **1-11-40745-cec, 1-11-40747-cec**

                                                               :

**Debtors.**                                                   :    **(Jointly Administered)**

                                                               :

--------------------------------------------------------------x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the annexed Motion, Debtor Yongdae Park will move this

Court, before the Hon. Judge Carla E. Craig, C.U.S.B.J. in room 3529, Conrad B. Duberstein

Courthouse, Brooklyn, New York 11201, on the **14th of July, 2011 at 2:00 p.m.** or as soon

thereafter as counsel can be heard, for an order to **(1)** quash the subpoena issued on June 14,

2011 by Trustee Robert L. Geltzer under an ex parte motion filed on June 14, 2011 pursuant to

Fed. R. Bankr. P. § 2004(c); **(2)** impose attorney's fees for the Trustee's conduct and/or such

other or further relief as this Court may deem just and proper to the Debtor under Fed. R. Civ. P.

§ 45(c)(1); **(3)** order *sua sponte* the recusal of Trustee Geltzer as Trustee in the present case and

appoint another Trustee pursuant to 11 U.S.C. § 324(a) or allow Counsel to withdraw as

attorney; **(4)** stay this matter until an independent and unbiased examination of the record may be

made by the Office of the United States Trustee, this Court, or both; and **(5)** grant such other and

further relief that this court may deem to be just and proper.

Dated: June 29, 2011

By:  /s/_____

Naresh Gehi


LAW OFFICES OF N.M GEHI, P.C.

Naresh M. Gehi, Esq.
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999

Counsel to Debtor Song Park and Yongdae Park


To:    Robert L. Geltzer, Esq.
       Bankruptcy Trustee
       1556 Third Avenue
       New York, NY 10128
       Fax 212-410-0400


       Tracy Hope Davis
       United States Trustee
       U.S. Department of Justice
       U.S. Trustee Program
       33 Whitehall Street, Suite 2100
       New York, NY 10004
       Fax 212-668-2256

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

**HEARING DATE: July 14, 2011**
**HEARING TIME: 2:00 p.m.**

-------------------------------------------------------------x

**IN RE**      :

     :

**SONG PARK AND YONGDAE PARK**      :    **Chapter 7 Case Nos.**

     :

     :    **1-11-40745-cec, 1-11-40747-cec**

     :

**Debtors.**      :    **(Jointly Administered)**

     :

-------------------------------------------------------------x

## TABLE OF CONTENTS

Motion to quash Trustee's subpoena to conduct a Rule 2004 examination.....................3

Proposed Order.............................................................................................22

Affidavit of Service....................................................................................…..25

Exhibit A.................................................................................................…..26

     1.   Affidavit of Yongdae Park dated April 21, 2011..........................…....26

     2.   Letter from HSBC to Song Park dated April 27, 2011....................…...30

Exhibit B, Letters to Trustee Geltzer's Office dated February 18, 2011........................31

Exhibit C, Letter to United States Trustee Tracy Davis dated March 8, 2011.............…...33

Exhibit D......................................................................................................40

     1.   Affidavit of Song Park dated March 14, 2011.............................…....40

     2.   Affidavit of Yongdae Park dated March 14, 2011........................…...43

     3.   Affidavit of Douglas Gray dated March 14, 2011.........................…...46

Exhibit E, Letter to Trustee Geltzer's Office dated April 6, 2011................................49

Exhibit F, Letters to Trustee Geltzer's Office dates March 31, 2011...........................54

Exhibit G, Letter from Trustee Geltzer's Office dated April 8, 2011...........................56

Exhibit H, Letter to Trustee Geltzer's Office dated April 8, 2011..............................58

Exhibit I, Letter to Trustee Geltzer's Office dated May 5, 2011................................62

Exhibit J, Subpoena for a Rule 2004 Examination and Related Documents dated June 14,

2011.............................................................................................................64

U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
----------------------------------------------------------x
IN RE                                  :
                                       :
SONG PARK AND YONGDAE PARK             :   Chapter 7 Case Nos.
                                       :
                                       :   1-11-40745-cec, 1-11-40747-cec
                                       :
Debtors.                               :   (Jointly Administered)
                                       :
----------------------------------------------------------x

HEARING DATE: July 14, 2011
HEARING TIME: 2:00 p.m.

## DEBTOR'S MOTION TO QUASH TRUSTEE'S SUBPOENA

## TO CONDUCT A RULE 2004 EXAMINATION

1.     Debtor Yongdae Park ("Mr. Park"), by and through undersigned counsel, moves to:

   a.     quash the subpoena issued on June 14, 2011 by Trustee Robert L. Geltzer
          (hereinafter "Trustee Geltzer") under an ex parte motion filed on June 14, 2011
          pursuant to Fed. R. Bankr. P. § 2004(c);

   b.     impose attorney's fees for the Trustee's conduct and/or such other or further relief
          as this Court may deem just and proper to the Debtor under Fed. R. Civ. P. §
          45(c)(1);

   c.     order *sua sponte* the recusal of Trustee Geltzer as Trustee in the present case and
          appoint another Trustee pursuant to 11 U.S.C. §324(a) or allow Counsel to
          withdraw as attorney;

   d.     stay this matter until an independent and unbiased examination of the record may
          be made by the Office of the United States Trustee, this Court, or both; and

   e.     grant such other and further relief that this court may deem to be just and proper.

3

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §
1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined
by the Bankruptcy Court.  Venue is proper before this Court pursuant to 28 U.S.C. §§
1408 and 1409.

## FACTUAL BACKGROUND

3.    On February 1, 2011, Mr. Park commenced a voluntary case under Chapter 7 of Title 11
of the United States Code.  On the same day, Song Park ("Ms. Park"), his daughter,
commenced a voluntary Chapter 7 action.

### Events leading to the Petition for Bankruptcy

4.    The events leading to this action began when Ms. Park purchased a pet grooming
business in June 2006 called S.P. Puppy Love, Inc.  (Ex. A Mr. Park's Aff. ¶ 4, Apr. 21,
2011.)  Ms. Park was twenty-five years old when she purchased the business and had
never bought or managed a business prior to that time.  (Ex. A ¶ 5-6.)  Prior to purchasing
the business, Ms. Park was employed by the seller, who pressured her into purchasing the
business despite the fact that Ms. Park lacked the financial means to do so.  (Ex. A ¶ 5-6.)
The seller insisted that Ms. Park buy the business, going so far as to devise a scheme
which would allow Ms. Park to obtain a loan by making Mr. Park an officer of the
seller's corporation and assisting Ms. Park and Mr. Park, her father, in applying for a
loan.  (Ex. A. ¶ 5-6).

4

5.    Ms. Park operated the business to the best of her ability and showed a small profit of $973.00 in 2007.  (Ex. A ¶ 8.)  However, she was subsequently unable to meet her payments to both the seller and the bank that had granted her a loan. (Ex. A ¶ 7).

6.    In 2008, Ms. Park incurred serious losses and her business shut down. (Ex. A ¶ 8.)  Ms. Park became ill and distraught over her state of poverty and inability to pay her debts, which led to her attempted suicide.  (Id.)  When she closed down her business, the owner of the business next door, a veterinarian, was sad to witness Ms. Park's unfortunate situation and offered to sublet a space in his office to Mr. Park where he started a pet grooming business in that space.  (Ex. A ¶ 9.)  Upon the advice of an accountant, Mr. Park incorporated the business called Parks Doggi Mama, Inc. and operated it in 2009 and 2010.  (Id.)  Despite Mr. Park's efforts, however, the business failed to make enough profit to pay the debts owed to Ms. Lee, HSBC, and Washington Mutual, which forced Mr. Park and Ms. Park into filing for Chapter 7 Bankruptcy.  (Id.)  Currently, Ms. Park and Mr. Park cannot even afford to pay rent for an apartment and are being helped by Ms. Park's boyfriend, Douglas Gray.  (Ex. A ¶ 11).

**Events leading to the first § 341 meeting of the creditors**

7.    The first § 341 meeting of the creditors was scheduled on March 8, 2011.  Prior to the meeting and pursuant to the Trustee's request, Mr. Park and Ms. Park ("Debtors") submitted several documents (Ex. B Letters to Trustee Geltzer, Feb. 18, 2011) to Trustee Geltzer by certified mail on February 18, 2011:

a.    Copy of Ms. Park's Certificate of Counseling;

b.    Copies of Ms. Park's business tax returns since it opened;

c.    Copy of Ms. Park's affidavit of self-employment;

d.    Copies of Ms. Park's three month bank statements prior to closing the account;

e.    Copy of Ms. Park's 3 month bank statements prior to closing the account;

f.    Copies of Ms. Park's business records from 2006-2008;

g.    Copy of Mr. Park's Certificate of Counseling;

h.    Copy of Mr. Park's 2009 tax returns;

i.    Copies of Mr. Park's KBB value, title and proof of insurance for vehicle;

j.    Copies of Mr. Park's business tax return for 2009;

k.    Copies of Mr. Park's three month bank statements prior to closing the account;

l.    Copies of Mr. Park's business records from 2009 and 2010.

**The first § 341 meeting of the creditors on March 8, 2010**

8.    On March 8, 2011 the first § 341 meeting of creditors was held.  Despite the best efforts of Debtors to cooperate with Trustee Geltzer, his unacceptable conduct at the meeting prohibited the Debtors from resolving the matter amicably.  More specifically, Trustee Geltzer improperly accused the Debtors' counsel of failing to provide the petitions necessary for the meeting despite the fact that it was he who had failed to bring the petitions to the meeting.  (Ex. C Letter to U.S. Trustee Tracy Davis, Mar. 8, 2011.) Trustee Geltzer continued his behavior by flinging binder clips across the room for not having the Petition sent when it actually was, throwing the Debtors' tax return across the table at Debtors' counsel, and threatening Debtors' counsel with sanctions.  (See Ex. D Aff. of Song Park ¶ 3-7, Mar. 14, 2011; see also Ex. D Aff. of Yongdae Park ¶ 3-7, Mar. 14 2011; Ex. D Aff. of Douglas Gray ¶ 3-7, Mar. 14, 2011.)  He also told the Debtors to ask for a refund from Debtors counsel, interrupted Ms. Park repeatedly, shouted at her

and demanded that she leave the room. (<u>See</u> Ex. D Aff. of Song Park ¶ 3-7.)[1]  Ms. Park

was so frightened by Trustee Geltzer's behavior that she cried outside the hearing room

and became frightened by the prospect of appearing before Trustee Geltzer again.  (See

Ex. D. Aff. of Song Park ¶ 7).

9.      At the conclusion of the meeting, Debtors consented to a Rule 2004 examination because

        they were under the impression that the forthcoming meeting would be a Rule 2004

        meeting.  Trustee Geltzer also requested Books and Records of the Business from the

        Debtors and granted them until April 8, 2011 to comply, but failed to clarify which

        specific business documents he required and did not provide the Debtors with a complete

        list of the needed documents. (<u>See</u> Ex. E Letter to Trustee Geltzer, Apr. 6, 2011).

10.     After the meeting on April 8, 2011, Debtors' counsel submitted a letter to Tracy Davis

        from the U.S. Department of Justice notifying her of Trustee Geltzer's conduct during the

        § 341 meeting. (<u>See</u> Ex. C).

### Events leading to the second § 341 meeting of the creditors

11.     Despite Debtors' continued efforts to resolve the matter amicably through phone calls

        made to Trustee Geltzer on March 14 and on April 6, Trustee Geltzer refused to

        cooperate with Debtors, again refusing to clarify which documents he required.  Trustee

        Geltzer, in his letters demanding additional documents threatened to institute a civil

        action against Debtors' counsel and report them to the Disciplinary Committee. (<u>See</u> Ex.

        G.)  He has also made an attack on counsel's website, which was wholly unrelated to the

        present proceeding. (<u>See</u> <u>id.</u>)  Trustee Geltzer then called Debtors' counsel's office in the

---

[1] We respectfully request that the Court give special attention to Exhibit D for a thorough account of the events at the first § 341 meeting of the creditors.

last week of March and demanded that all the documents be submitted by April 1, instead of April 8, or he would file a motion to dismiss.

12.   On March 31, 2011 Debtors submitted several more documents (Ex. F Letter to Trustee Geltzer, Mar. 31, 2011) by certified mail:

   a.   Copies of Ms. Park's books and records for S.P. Puppy Love from 2006-2008;

   b.   Copies of documents in reference to Ms. Park's lawsuit;

   c.   Copy of Mr. Park's 2010 tax return;

   d.   Copies of Mr. Park's books and records for Park's Doggi Mama for 2009-2010.

13.   On April 6, 2011, Debtors' counsel wrote a letter to Trustee Geltzer requesting that he specify in writing the list of documents that he required. Counsel also requested the date and time for the next § 341 meeting to discuss the Debtors' case and requested that the United States Trustee Tracy Davis attend the meeting to closely monitor the case. (See Ex. E Letter to Trustee Geltzer, Apr. 6, 2011).

14.   On April 8, 2011, Trustee Geltzer sent counsel a letter requesting books and records for S.P. Puppy Love and documents in reference to Ms. Park's lawsuit, along with copies of checks and other documents relating to loans made to Debtors to be submitted on April 12. (See Ex. G Letter from Trustee Geltzer, Apr. 8, 2011.) In the letter, Trustee Geltzer accused Debtors of withholding documents concerning a $150,000 loan and Debtors' counsel of trying to intimidate Trustee Geltzer through the April 6 letter. Not only did Debtors' counsel call Trustee Geltzer to explain the circumstances concerning the $150,000 loan, it was also explained in the original petitions for the Debtors. (See Ex. G).

8

15.     Mr. Gehi replied to Trustee Geltzer's April 8 letter that same day again explaining, yet again, the circumstances behind the $150,000 loan to the Debtors and requesting that Trustee Geltzer provide the Debtors with a written list of all of the documents he requires. (See Ex. H Letter to Trustee Geltzer, Apr. 8, 2011).

16.     As a result, Debtors filed a motion with this Court on April 11, 2011 respectfully requesting that the Court grant Debtors an additional forty-five days to file documents requested by Trustee Geltzer; direct Trustee Geltzer to provide Debtors with a complete list, at one time, of all specific documents which he requires; and direct Trustee Geltzer to cease from engaging in abusive conduct in accordance with the New York State Standards of Civility for the Legal Profession along with any other relief the Court deemed just and proper.

**Second § 341 meeting of the creditors on April 12, 2011**

17.     The second § 341 meeting was held on April 12, 2011, which Debtors understood from Trustee Geltzer would be conducted as a Rule 2004 examination. Mr. Naresh Gehi, Esq., principal attorney on the Debtors' case, Ms. Monica Ahmad, Associate of Gehi and Associates, Trustee Geltzer, and United States Trustee Alicia Leonard attended the meeting along with the Debtors. At the meeting, Trustee Geltzer again engaged in inappropriate and hostile conduct against the Debtors, specifically calling Mr. Gehi "stupid" on the record and with disregard to the presence of the United States Trustee and the Debtors during the meeting, which was also heard by about fifty other people in the room.[2] At this meeting, the Debtors' received another extension of time to submit documents until May 10, which was later moved to June 1, 2011. As a result of the

---

[2] Counsel can provide to the Court a copy of the transcript of the second § 341 meeting if the Court would like to review it.

extension, the previous motion before this Court was withdrawn by our law firm because Trustee Geltzer consented to grant the forty-five day extension at the second § 341 meeting.

**Events leading to Trustee Geltzer's Rule 2004 Motion to Conduct an Examination**

18.     In response to the second § 341 meeting, on May 05, 2011, Debtors submitted several more documents (Ex. I Letter to Trustee Geltzer, May 5, 2011) to Trustee Geltzer by certified mail:

a.     Copies of books and records for Park's Doggi Mama Inc. from 2009-2011;

b.     Copies of Mr. and Ms. Park's personal bank statements for 2009 and 2010;

c.     Mr. Park's Memorandum of Law along with Exhibit A, Affidavit of Mr. Park;

d.     Ms. Park's Memorandum of Law along with Exhibit A, Affidavit of Ms. Park and Exhibit B, Letter from HSBC.

19.     Debtors have explained to Trustee Geltzer the Debtors' inability to provide comprehensive books and records for the businesses, their lack of financial sophistication, personal difficulties, and lack of fraudulent intent. They have explained how Ms. Park purchased the business and discusses its financial status during the years that she operated it. Ms. Park has already clearly mentioned to the Trustee that she cannot afford to provide her with all the bank records, including bank statements and cancelled checks, because she does not have any financial resources to pay the bank. (See Ex. A Letter from HSBC to Song Park, Apr. 27, 2011; see also Ex. A ¶ 11-12).

20.     Nevertheless, on June 14, 2011, Trustee Geltzer filed an ex parte motion to conduct a Rule 2004 Examination of Debtors and issued a subpoena to inspect all of Debtors' records. (Ex. J Subpoena for Examination, Jun. 14, 2011.) The subpoena requests the

production of documents and records of the last six years even though the facts on the

record already indicate that the businesses in question only performed for a combination

of three years before the filing date.  (See id.)  The subpoena also demands the production

of documents that the Debtors have already explained in the May 5 memorandum of law

that they do not have due to the Debtors' lack of financial sophistication, and personal

and financial difficulties.  (See id.).

## ARGUMENT

I.      **The subpoena issued for a Rule 2004 examination should be quashed because it is
        conducted in bad faith and is purposefully and improperly being used to harass
        Debtors, deliberately causing an undue burden and cost.**

21.     The subpoena Trustee Geltzer issued under Fed. R. Bankr. P. § 2004 (hereinafter "Rule

        2004") is improper and should be quashed.  As can be inferred from the record, Trustee

        Geltzer is using this examination to continue his harassment of Debtors and to cause an

        undue burden and cost in contravention of bankruptcy law.

        **A. The examination request is oppressive, over-reaching, and used to harass
        Debtors in bad faith.**

22.     Trustee Geltzer's subpoena issued under Rule 2004 is oppressive, overreaching, and used

        to harass Debtors.  A party subject to examination may challenge a requestor's good faith

        under Fed. R. Bankr. P. § 2004(c), which relies on the procedural protections provided to

        a person subject to a subpoena under Fed. R. Civ. P. § 45(c)(1), (3)[3], when the request is

---

[3] **(c) Protecting a Person Subject to a Subpoena.**

**(1) Avoiding Undue Burden or Expense; Sanctions.**

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing
undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose
an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney
who fails to comply.

....

**(3) Quashing or Modifying a Subpoena.**

so broad that it well exceeds the limits of reasonableness or scope such that a court may infer an improper purpose, such as to harass or annoy. See Martin v. Schaap Moving Systems, Inc., No. 97-5042, 1998 U.S. App. LEXIS 15255, at *6-7 (2d Cir. April 21, 1998) (noting that courts may limit discovery under Rule 2004 when it is designed to abuse or harass); see also In re Duratech Indus., Inc., 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (finding that "however vigorous and broad discovery may be under a Rule 2004 examination, there are well-established limits;" such as where discovery is oppressive, over-reaching, conducted in bad faith or for improper purposes); In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (noting that Rule 2004, like any other discovery method, may not be used to "annoy, embarrass or oppress the party being examined"). The party requesting a Rule 2004 examination carries the initial burden of showing good faith by demonstrating that the request is necessary and relevant to the basic inquiry at issue in the proceedings, or that a denial of

---

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

the request would cause a hardship or undue burden to the moving party. See In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y. 2004) (noting that good cause under Rule 2004 is generally shown if the examination "is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice"); see also In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (("[T]he one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." (quoting In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)). In demonstrating a showing of good faith, the requesting party must show more than the mere possibility that a document might be relevant or simply that "justice would not be impeded by production of the documents." See In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (holding that just because "documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production").

23.    Trustee Geltzer already has a pattern of harassment and inappropriate conduct against Debtors. At the first § 341 meeting of the creditors on March 8, 2011, Trustee Geltzer wrongly accused Debtors of failing to provide the petition (See Ex. C), then engaged in inappropriate behavior; which included interrupting Ms. Park repeatedly, shouting at Ms. Park, and demanding that Ms. Park leave the room crying. (See Ex. D Aff. of Song Park ¶ 3-7.) Trustee Geltzer also threw Debtors' tax returns across the table at counsel. (Ex. C.) As a result, Ms. Park became frightened by Trustee Geltzer's behavior and cried outside the hearing room. (See Ex. D Aff. of Song Park ¶ 7). Further, Trustee Geltzer's communications with the Debtors' counsel is against the ethical standards of professionalism. See supra ¶ 17.

24.    At this time, Trustee Geltzer's oppressive subpoena for a Rule 2004 examination is another extension of his continued efforts to harass and annoy Debtors. From the very beginning of these proceedings, Trustee Geltzer's inappropriate conduct and hostile behavior directed at Debtors have greatly hindered Debtors' efforts to resolve this matter amicably. Debtors have already provided Trustee Geltzer with several documents and records, attended two § 341 meetings, and filed a memorandum of law with accompanying affidavits (see Ex. A) stating the circumstances behind the $150,000 loan mentioned in Trustee Geltzer's Rule 2004 motion which also explained Debtors' inability to produce more comprehensive documents and records for the combined three year time period that Debtors had their businesses. Nevertheless, Trustee Geltzer demands an exhaustive and overbroad laundry list of records and documents spanning a six year period (see Ex. J), well beyond the three years that the Debtors were in business. Moreover, the Debtors have already provided several records and documents to Trustee Geltzer regarding this matter with which he may conduct his examination. The examination as directed under Trustee Geltzer's Rule 2004 subpoena serves only to further harass and cause severe mental distress to the Debtors who are currently all residing with Ms. Park's boyfriend, Douglas Gray, because they cannot afford to pay rent for their own apartment (see Ex. A § 11-12); and are ready to give up their current business and give Trustee Geltzer the few items remaining in the business in order to resolve this matter (e.g. scissors, a table, dog food, and treats). Under the facts of this case, this Court may properly infer that Trustee Geltzer has issued the Rule 2004 subpoena for the improper purpose of continuing his harassment directed at Debtors.

**B. The examination request under Rule 2004 purposefully imposes an undue burden or cost on the Debtors.**

25.    Further, Trustee Geltzer's Rule 2004 subpoena imposes a substantial undue burden and cost upon Debtors.  The subject of a subpoena may also move to quash under Fed. R. Civ. P. 45(c) if the subpoena subjects them to undue burden or cost.  In determining whether a request causes undue burden, a court may look to the relevance of the request, the hardship to the party upon a denial, the breadth of the request, the period of time covered under the subpoena, the particularly with which the requested documents are described, and the burden and cost imposed on the subject of the subpoena.  See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (noting that whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) depends upon relevance and the burden imposed); see also Plant Genetic Sys., N.V. v. Northrup King Co., 6 F.Supp.2d 859, 861 (E.D. Mo. 1998) ("[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.") (quoting Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986)); In re Coffee Cupboard, 128 B.R. at 514 (noting that a court must balance the compelling interests of the parties, weighing the relevance and necessity of the information sought by the examination).

26.    Here, the documents that Trustee Geltzer demands under the Rule 2004 subpoena cause a significant undue burden and cost to the Debtor.  Currently, the Debtors do not have the financial means to pay for copies of bank statements, images of cancelled checks, or copies of check received.  Nor do they possess insurance policies, 401(k) account statements, worksheets, ledgers, or memoranda, etc. as requested under the subpoena.  As

explained in the May 5, 2010 memorandum of law, Ms. Park was twenty-five years old when she purchased S.P. Puppy Love, Inc. and she had never bought or managed a business prior to that time. (Ex. A ¶ 5-6.) Ms. Park operated the business to the best of her ability and showed only a profit of $973.00 in 2007. (Id. ¶ 7.) She incurred losses in 2008 and was forced to shut down her business. (Id. ¶ 8.) Ms. Park became so distraught over her inability to pay the debts that she attempted to commit suicide. (Id. ¶ 7-8.) Debtors now live with Ms. Park's boyfriend because they cannot afford their own apartment. (See id. ¶ 11-12.) Based on a lack of sophisticated record keeping and substantial cost to Debtors, Trustee Geltzer's Rule 2004 subpoena imposes a significant burden on Debtors to produce records and documents which they do not possess or simply cannot afford to obtain. In fact, due to the financial difficulties faced by Debtor, counsel is actually now acting on a pro bono basis. Under the circumstances, Trustee Geltzer may subpoena the banks to obtain further records.

27.     Further, Trustee Geltzer's Rule 2004 motion applying for a subpoena does not explain how the documents already provided to Trustee Geltzer are insufficient and prejudice his efforts to perform a thorough examination. Towards that end, it was Trustee Geltzer's inappropriate and hostile behavior toward Debtors that has greatly hindered efforts to resolve this matter amicably. He purposefully stymied efforts by counsel to gather clarity on the documents and records he required, by either failing to provide a list of the required documents and refusing to answer questions directly related to the adjudication of the second § 341 meeting. (See Ex. C; see also Ex. F; Ex. G). Based on these actions, this Court may properly infer that Trustee Geltzer's Rule 2004 subpoena purposefully

and maliciously places an undue burden and cost onto Debtors prohibited under Rule 45(c).

**II.     This Court may properly award attorney's fees to Debtor in this case for Trustee Geltzer's misconduct throughout the entire matter and for deliberately using the Rule 2004 examination provision in the Bankruptcy Code to harass and place an undue burden and cost on Debtors.**

28.     This Court has full discretion to grant attorney's fees against Trustee Geltzer in response to his inappropriate use of a Rule 2004 examination for the purpose of harassment and failure to take reasonable steps to avoid imposing an undue burden or cost on Debtors. The rule governing subpoenas, Fed. R. Civ. P. § 45(c)(1), which is made applicable to Bankruptcy cases under Fed. R. Bankr. P. § 9016, places an express duty upon the party or attorney issuing the subpoena to take reasonable steps to avoid imposing undue burden or expense on the person subject to that subpoena or face an appropriate sanction by the court, which may include and is not limited to lost earnings and reasonable attorney's fees.

29.     Here, Trustee Geltzer took no measure to work with Debtors to avoid imposing on them an undue burden or expense when he served the Rule 2004 subpoena. Rather, the subpoena serves only to place further burden on Debtors and harass Debtors. Despite the best efforts of Debtors to cooperate with Trustee Geltzer, he has failed to cooperate with Debtors to provide needed guidance that would have enabled them to timely submit all the required documents. (See Ex. C; see also Ex. F; Ex. G). Specifically, Trustee Geltzer failed to cooperate with Debtors to provide a clear and complete list, at one time, of the documents which they needed to submit. Instead, he provided the information in a piecemeal fashion; demanded documents for Debtors' businesses going back six years prior to the Petition, despite the fact that the businesses were only in existence for a

combined three year period; and requests a laundry list of documents and records that Debtors simply cannot produce because they do not exist or would impose a substantial cost to Debtors, who are undergoing severe financial and personal difficulties.

30.     Trustee Geltzer's failure to comply with his affirmative duty under § 45 to take all reasonable steps to avoid imposing an undue burden and cost on Debtors is grounds for imposing attorney's fees.  Given Trustee Geltzer's record of harassment as discussed *supra*, it is not surprising that he chose to file his application for a 2004 examination ex parte, thereby preventing the Debtors from reviewing the motion and filing an objection.

**III.    This Court has just cause to order *sua sponte* Trustee Geltzer to recuse him from this case and to grant a stay this matter until an independent review may be conducted for the purpose of conducting a full and fair administration of this case.**

31.     Trustee Geltzer's failure to comply with his obligations of diligent and professional conduct, specifically by failing to clarify what documents Debtors were required to submit and Trustee Geltzer's continued harassment against Debtors and counsel should urge this Court to *sua sponte* order Trustee Geltzer to recuse himself as Trustee in this case and grant a stay pending an independent examination of the record.  A bankruptcy court has the discretion to remove a trustee *sua sponte* for just cause; see In re Morgan, 515 F.3d 1204 (11th Cir. 2008); see also In re Walker, 375 B.R. 838 (B.A.P. 8th Cir. 2007); or after a motion from a party of interest, such as the debtor, to remove the trustee under 11 U.S.C. § 324(a).

32.     Under the circumstances, the Court has just cause to *sua sponte* order Trustee Geltzer to recuse himself from this matter or move on Debtor's request that this Court remove Trustee Geltzer.  It is well settled that a trustee has the fiduciary obligations of diligence, accountability, competence, information disclosure, candor, civility, proper litigation

preparation and conduct, and impartiality. <u>See</u> Hon. Steven Rhodes, <u>The Fiduciary and Institutional Obligations of a chapter 7 Bankruptcy Trustee</u>, 80 Am. Bankr. L. J. 147 (2006); <u>see also</u> <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 12 (2000). Here, Trustee Geltzer has failed to act in accordance with his duties of diligence, competence, information disclosure, and candor by failing to timely clarify which documents still must be submitted by Debtors. Trustee Geltzer has also failed to act in accordance with his duties of civility by engaging in harassing behavior against Debtors at both § 341 meetings. Finally, he has failed to act in accordance with his duty of impartiality in that his threats and harassing comments against Debtors' counsel evidences a personal bias and intent to act to protect his own reputation.

33.    Debtors, through counsel, have made all possible efforts to cooperate with the Trustee to resolve this matter, including contacting Trustee Geltzer by phone, letters, and attending two § 341 meetings. Specifically, by writing to Trustee Geltzer on March 14, 2011 and April 8, 2011, and making calls to Trustee Geltzer on April 6 to solve this matter amicable, counsel has acted in accordance with the New York State Standards of Civility for the Legal Profession, adopted by this Court through Administrative Order #568. (<u>See</u> Ex. H.) Through counsel's several efforts to communicate with Trustee Geltzer to resolve this matter, counsel has attempted to comply with Section II of the New York Standards of Civility, which encourages communication among opposing counsel to resolve any dispute or disagreement and to avoid unnecessary motion practice. Under the circumstances, counsel feels uncomfortable especially because of the demeaning language which has been used by the trustee against Mr. Gehi on the record. As a result, because of Trustee Geltzer's continued efforts to harass Debtors, counsel is forced to

respectfully request that this Court grant a stay pending an independent review of this case by either or both the Office of the United States Trustee and this Court, and order that Trustee Geltzer recuse himself so that all parties in this matter obtain a full and fair administration of this case.

**GRANTING DEBTOR'S MOTION WILL NOT PREJUDICE CREDITORS**

34. Creditors in this action will not be prejudiced if this Court grants Debtor's motion to quash Trustee Getlzer's subpoena, grant Debtor's request to recuse Trustee Getlzer from this case, and grant the request to stay this matter until it may be viewed independently by either or both the Office of the United States Trustee and this Court. Nor are the creditors prejudiced by an imposition of sanctions by way of reasonable attorney fees and/or any other action deemed appropriate by this Court for Trustee Geltzer's conduct. Rather, granting this motion will serve to ensure a full and fair examination is conducted on behalf of the creditors in this case.

**NO PREVIOUS REQUEST**

35. No previous request for the relief sought herein has been made by Debtor to this or any other court.

**CONCLUSION**

36. WHEREFORE, Debtor respectfully requests that this Court use its discretion in granting an order to:

a. quash the subpoena issued on June 14, 2011 by Trustee Geltzer under an ex parte motion filed on June 14, 2011 pursuant to Fed. R. Bankr. P. § 2004(c);

b.    impose attorney's fees for the Trustee's conduct and/or such other or further relief as this Court may deem just and proper to the Debtor under Fed. R. Civ. P. § 45(c)(1);

c.    order *sua sponte* the recusal of Trustee Geltzer as Trustee in the present case and appoint another Trustee pursuant to 11 U.S.C. § 324(a) or allow Counsel to withdraw as attorney in light of the insults which have been made by Trustee Geltzer on the record;

d.    stay this matter until an independent and unbiased examination of the record may be made by the Office of the United States Trustee, this Court, or both; and

e.    grant such other and further relief that this court may deem to be just and proper.

Dated June 29, 2011        By: /s/_____

LAW OFFICES OF N.M GEHI, P.C.
Naresh M. Gehi, Esq.
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999
Counsel to Debtors Song Park and Yongdae Park

U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

HEARING DATE: July 14, 2011
HEARING TIME: 2:00 p.m.

-------------------------------------------------------------x  PROPOSED ORDER

IN RE                                           :
                                                :
SONG PARK AND YONGDAE PARK                      :   Chapter 7 Case Nos.
                                                :
                                                :   1-11-40745-cec, 1-11-40747-cec
                                                :
Debtors.                                        :   (Jointly Administered)
                                                :
-------------------------------------------------------------x

## ORDER GRANTING DEBTOR'S MOTION TO QUASH TRUSTEE'S SUBPOENA TO CONDUCT A 2004 EXAMINATION

Upon the motion ("Motion") of Yongdae Park for an order, pursuant to Bankruptcy Rule

1007(c), for an order **(1)** quash the subpoena issued on June 14, 2011 by Trustee Geltzer

pursuant to Fed. R. Bankr. P. § 2004(c); **(2)** impose attorney's fees for the Trustee's conduct

and/or such other or further relief as this Court may deem just and proper to the Debtor under

Fed. R. Civ. P. § 45(c)(1); **(3)** order *sua sponte* the recusal of Trustee Geltzer as Trustee in the

present case and appoint another Trustee pursuant to 11 U.S.C. § 324(a) or allow Counsel to

withdraw as attorney; **(4)** stay this matter until an independent and unbiased examination of the

record may be made by the Office of the United States Trustee, this Court, or both; **(5)** grant such

other and further relief that this court may deem to be just and proper; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334

and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Eastern District of New York dated August 28, 1986 (Weinstein, C.J.); and consideration of

the Motion and the requested relief being a core proceeding, the Bankruptcy Court can determine

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the

Office of the United States Trustee for the Eastern District of New York, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having held a hearing with appearances of parties in interested noted in the transcript thereof (the 'Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion at the Hearing establish just cause of the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the relief requested in the Motion is hereby granted; and it is further

ORDERED that Trustee Geltzer's subpoena to conduct a Rule 2004 examination is hereby quashed; and it is further

ORDERED that a stay on this matter is hereby granted until an independent review can be conducted by either this Court, the Office of the United States Trustee, or both; and it is further

ORDERED that the awarding of attorney's fees to Debtor is hereby granted; and it is further

ORDERED that Trustee Geltzer shall be removed as Trustee from this matter, or in the alternative, grant permission to Counsel to withdraw from this case; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion.

23

New York, New York

Dated: _____, 2011


_____
UNITED STATED BANKRUPTCY JUDGE

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

**HEARING DATE: July 14, 2011**
**HEARING TIME: 2:00 p.m.**

------------------------------------------------------------x   **AFFIDAVIT OF SERVICE**

**IN RE**                                                              :

**SONG PARK AND YONGDAE PARK**         :   Chapter 7 Case Nos.

                                                                          :   **1-11-40745-cec, 1-11-40747-cec**

**Debtors.**                                                      :

                                                                          :   **(Jointly Administered)**

                                                                          :

------------------------------------------------------------x

I, Gurhan Heiner, certify that I have served a copy of the attached Debtors' Motion to Quash Trustee's subpoena to conduct a Rule 2004 examination by mailing it via Federal Express Overnight to the Law Offices of Robert L. Geltzer, whose address is 1556 Third Avenue, New York, New York 10128, and upon the Office of the United States Trustee, whose address is the U.S. Department of Justice, U.S. Trustee Program, 33 Whitehall Street, Suite 2100, New York, New York 10004.

Dated: June 29, 2011
Forest Hills, New York

I declare that the statement above is true to the best of my information, knowledge and belief.

X _____

Notary _____

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

25

**EXHIBIT** _A_

U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN RE                                                :
                                                     :
SONG PARK AND YONGDAE PARK              :   Chapter 7 Case Nos.
                                                     :
                                                     :   1-11-40745-cec, 1-11-40747-cec
                                                     :
Debtors.                                             :
                                                     :   (Jointly Administered)
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SONG PARK

I, Song Park, duly sworn, depose and state under the penalty of perjury:

1.  I am a debtor in chapter 7 case number 1-11-40745.

2.  There have been two section 341 meetings in my chapter 7 case, one on March 8, 2011 and the second on April 12, 2011.

3.  I am submitting this affidavit to provide supporting details regarding the business I used to own, called SP Puppy Love, Inc.

4.  In June 2006 a business called JS Puppy Land, Inc. transferred its pet supplies, grooming business inventory, and stock to my business, SP Puppy Love, Inc. The president and sole owner of JS Puppy Land, Inc. was Ms. Ji-Sun Lee. The purchase price was $250,000.00.

5.  At the closing, my father Yong Dae Park and my mother Soon Kong Park made two separate payments, one for $40,000.00 in cash and another for $60,000.00 by check. Both payments were made to Ji-Sun Lee as a representative for JS Puppy Land, Inc.

6.  I was only 25 years old at the time and had never bought a business or had enough funds to purchase a business, and Ji-Sun Lee pressured our family into a plan to obtain the finances. Ms. Lee pressured my father to become an officer of JS Puppy Land so that he could obtain bank loans under the name of JS Puppy Land and then use the loan money to develop SP Puppy Love. In addition, Ji-Sun Lee pressured my mother to become an officer of JS Puppy

Land in order to obtain a $50,000.00 loan from TD Bank for the development of SP Puppy Love. My whole family felt forced into this arrangement by Ji-Sun Lee, and we believed that there was nothing else we could do.

7. The purchase agreement provides for an owner mortgage in the amount of $150,000.00 that SP Puppy Love would owe to JS Puppy Land. My parents and I ensured that monthly payments were made to Ji-Sun Lee as a representative of JS Puppy Land. I worked long hours and tried to continue monthly payments to Ji-Sun Lee in the amount of $3,500.00 in accordance with the agreement. After the first year, I was not able to keep up with the monthly payments of $3,500.00 to Ji-Sun Lee. I started making reduced monthly payments of $500.00 to her for another year. Additionally, during that same year I made minimum monthly payments to HSBC and Washington Mutual to help pay off the loans that my father had obtained. My mother used money she had received through my grandmother's will to pay off the $50,000.00 TD Bank loan.

8. I tried my very best to run SP Puppy Love, and in the first year I made a small profit of $973.00. However in the second year, July 1, 2007 through June 30, 2008, I started incurring serious losses and had a negative income of $481.00. From July 1, 2008 through September 2008, when the business stopped operating, there was a net income of negative $544.00. As a result of this, I was unable to continue running the business. I was so distraught that I tried to commit suicide due to the pressure and the losses I was sustaining.

9. Since I closed down the business, the owner of the business next door to the mine, a veterinarian, was very sad to witness my unfortunate situation. He offered to sublet his office space to my father, and my father began operating a pet grooming business in that space. Upon the advice of an accountant, my father incorporated his business. The corporation is called Parks Doggi Mama, Inc. It was incorporated in September 2009 and continues to operate currently, although with difficulty. This is one reason that my father is also a chapter 7 debtor at this time.

10. Our entire family has lost a great deal in our attempts to keep our businesses afloat.

11. At this stage, my parents and I cannot even afford to pay rent for an apartment, and we are being helped by my boyfriend Douglas Gray, who has been extremely kind to accommodate us during the worst financial time of our lives.

12. In accordance with the request of the bankruptcy trustee, I have tried to obtain as many documents as possible in reference to the finances of the businesses. I have requested bank statements and copies of cancelled checks regarding the entire duration of SP Puppy Love, but I cannot afford to pay the fees that would be charged to obtain all these documents. SP Puppy Love had a business bank account at HSBC, and HSBC has given me a letter stating that there is a fee for each check copy and an additional hourly charge. The letter is attached. An HSBC representative told me in person that the total cost would likely exceed $1000. I cannot afford to pay this amount. However I have provided to the bankruptcy trustee the bank statements and accounting records that I have been able to afford.

As demonstrated above, I am offering everything I can provide in response to the Trustee's request.

Respectfully,                                                    Sworn to before me this 21st day of April, 2011.

_Song Park_                                                      _Notary Public_

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

2



SP PUPPY LOVE INC
4510 Parsons Blvd
Flushing, NY 11355

Apr. 27, 2011

Dear Miss Park,

I wrote to let you know that your checking account statement copies for 3 years would be
$180 - $5 per each statement.
If you need all of your check copies it will be $5 per each copy of the check and there will be
an hourly service charge in addition to check copy fees.
The hourly charge cannot be determined now because we do not know how long it will take
for the job done.

If you have any questions, please call me at 718-762-8891.

Thank you for banking with HSBC.

Sincerely,

Alice J Choi
Business Banking Specialist

HSBC Bank USA, National Association, 144-61 Northern Blvd, Flushing, NY 11354-4230
Tel: (718) 762-8891

3

# LAW OFFICES OF N.M. GEHI, P.C.
## ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL.: (718) 263-5999 • FAX: (718) 263-1685

641-402-4848
Korea
Translation

February 18, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

RE: BANKRUPTCY FILINGS
Park, Yongdae
CHAPTER 7
CASE NO. 1-11-40747-cec

Dear Trustee Geltzer:

Enclosed is a copy of the bankruptcy petition filed by my client in the above-mentioned matter.

**Pursuant to your request, the following documents are enclosed:**
- ❖ Copy of Mr. Park's Certificate of Counseling;
- ❖ Copy of Mr. Park's 2009 tax returns;
- ❖ Copy of Mr. Park's affidavit of self-employment;
- ❖ Copies of Mr. Park's current bank statements;
- ❖ Copies of Mr. Park's KBB value, title and proof of insurance for vehicle;
- ❖ Copies of Mr. Park's business tax return for 2009;
- ❖ Copies of Mr. Park's 3 month bank statements prior to closing the account.

Thank you very much for your help in this matter.

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.

ng/AT

31

February 18, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

RE: BANKRUPTCY FILINGS
Park, Song
CHAPTER 7
CASE NO. 1-11-40745-cec

Dear Trustee Geltzer:

Enclosed is a copy of the bankruptcy petition filed by my client in the above-mentioned matter.

**Pursuant to your request, the following documents are enclosed:**
  ❖ Copy of Ms. Park's Certificate of Counseling;
  ❖ Copies of Ms. Park's business tax returns since it has open;
  ❖ Copy of Ms. Park's affidavit of self-employment;
  ❖ Copies of Ms. Park's 3 month bank statements prior to closing the account.

Thank you very much for your help in this matter.

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.

ng/AT

3

EXHIBIT___C___

# LAW OFFICES OF N.M. GEHI, P.C.

### ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL.: (718) 263-5999 • FAX: (718) 263-1685

March 8, 2011

Tracy Davis, U.S. Trustee
U.S. Department of Justice
U.S. Trustee Program
33 Whitehall Street, Suite 2100
New York, NY 10004
Fax: 212-668-2256

7010 1670 0000 1217 6256

<u>**Re: Request for review of Trustee Robert L. Geltzer's conduct in chapter 7 cases 1-11-40745 (Song Park), 1-11-40747 (Yongdae Park), and 1-11-40754 (Talat Islam)**</u>

Dear Ms. Davis:

I am respectfully requesting that the U.S. Trustee Program review the threatening, violent, and completely unethical behavior of Trustee Robert L. Geltzer. Specifically, I am writing in reference to the chapter 7 cases of my clients Song Park, Yongdae Park, and Talat Islam, whose case numbers are listed above. Their section 341 meetings before Trustee Geltzer were held today, March 8, 2011 at 271 Cadman Plaza East in Brooklyn, New York.

The attorney from my office who appeared on behalf of the clients was Monica E. Ahmad. Before the start of the meetings, Monica was sitting with all three clients in the audience section of the hearing room, when Trustee Geltzer asked her to state the names of the debtors she was representing. Monica began to state the names, and Trustee Geltzer asked her to approach the table where he was sitting. She approached the table, along with her files regarding the three cases. Trustee Geltzer asked her to show him a page from each of the three case files—the notice regarding the section 341 meeting. Monica turned to that page within each case file and showed the page to him. Each case file was bound by a binder clip. Trustee Geltzer took one of the case files and pulled angrily on the 341 notice so as to detach it from the rest of the case file. His sudden pull caused the binder clip to fly off the packet, past Monica and into the audience section of the room. He continued to do the same to each of the other packets, so that the binder clips went flying off in different directions. Monica moved so as not to be hit by these unexpected projectiles. There was no need to send the binder clips flying in order to remove the 341 notice. Trustee Geltzer's unacceptable behavior startled several people in the room, and his conduct deteriorated even further from that point.

He told Monica that my law office had never sent him copies of the three petitions, and that the three cases did not appear on his calendar. Monica replied that my law office had sent him the petitions. My law office sent the petitions by **certified mail**, and we have documentary proof of delivery to Trustee Geltzer's office. Nonetheless, Trustee Geltzer **threatened** Monica by saying that if anyone from her law office appeared for a 341 meeting on behalf of a client whose petition had not been received by Trustee

3·

Geltzer's office, he would refuse to conduct the examination on the appointed day. He told Monica that he would then tell such a client during the 341 meeting, on the record, to demand a refund from the law office because the law office had wasted the client's time. He then threatened to move a step further. He did not say what that step would be, but the implication was that he would move for sanctions against my law office. All of these threats were made despite Monica's **correct insistence** that our office had sent the petitions to his office. As mentioned above, we have documentary proof to demonstrate the same. I respectfully state that it is unbecoming of a trustee to **threaten an attorney** in this manner, in addition to behaving violently and angrily without justification. Trustee Geltzer is guilty of all of this, and his behavior must not be tolerated by the U.S. Department of Justice. He is also guilty of more. His violent behavior against Monica escalated.

When Monica sat down with client Song Park for Song's section 341 meeting, Trustee Geltzer was reviewing the documents that Monica had provided to him, and he pulled out three tax returns related to Song's business. **He threw the tax returns across the table, at Monica. I believe it is imperative to bring such abusive, violent behavior to the attention of the U.S. Department of Justice.**

In addition, during the section 341 meeting of Song Park, Trustee Geltzer made **degrading, offensive comments regarding the Korean language translation.** Trustee Geltzer ridiculed the Korean language interpreter who was participating by phone—**he said sarcastically and angrily that even though her job was to translate from Korean into English, he could not understand her English. He interrupted her and Song numerous times and shouted at them.** He told the interpreter that she was incompetent. And when the next case, Yongdae Park's case, was called, Trustee Geltzer rolled his eyes and moaned when Monica told him that a Korean translator was needed for this case as well. **During Yongdae Park's 341 meeting, Trustee Geltzer demanded suddenly that Song leave the hearing room. She was so scared and distraught by his cumulative behavior during that morning that she cried outside the hearing room.**

My law office will provide affidavits from witnesses regarding today's events. In the meantime I feel it is imperative that we bring Trustee Geltzer's horrendous behavior to the attention of the U.S. Trustee Program—which is why we are faxing this letter on the very same day as the incidents.

In sum, I respectfully state that trustees should be trained to treat everyone with politeness, equal respect, and dignity at all times. It is apparent from Trustee Geltzer's conduct at the 341 meetings that he thinks he is above the law and he is not afraid of any action against him. Additionally, Trustee Geltzer should not have abusive off-the-record conversations with attorneys or debtors. He uses threats off the record and I respectfully urge the U.S. Trustee Program to ensure that he does not do the same in future. My law firm team members work hard and believe in equal respect and politeness towards everyone in our system. However, such an attitude is seriously lacking from Trustee Geltzer.

In light of the aforesaid, I respectfully urge the U.S. Trustee's Office to investigate this matter accordingly. Thank you for your help and cooperation.

Respectfully Submitted,

Naresh M. Gehi, Esq.

Cc: Chief Judge Carla E. Craig
    U.S. Bankruptcy Court, EDNY          7010 1670 0000 1217 6249
    Conrad B. Duberstein Courthouse
    271 Cadman Plaza East - Suite 1595
    Brooklyn, NY 11201-1800

    Alicia Leonhard, Assistant U.S. Trustee    7010 1670 0000 1217 5884
    271 Cadman Plaza East, Suite 4529
    Brooklyn, NY 11201
    Fax: 718-422-4990

    Robert L. Geltzer, Esq.
    Bankruptcy Trustee
    1556 Third Avenue                     7010 1670 0000 1217 5891
    New York, NY 10128
    Fax: 212-410-0400

    Via Fax and Certified Mail

    Encl.

3

## VERIFICATION

I, Monica E. Ahmad, depose and state that I have read the within **Request for review of Trustee Robert L. Geltzer's conduct in chapter 7 cases**; that I am executing this Verification; that I know the contents of the request for review; and that the facts contained therein are true to my knowledge.

_Monica E. Ahmad, Esq._

Sworn to before me this 8th day of March, 2011

_Notary Public_

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

3/

USPS - Track & Confirm

http://trkcnfrm.smi.usps.com/PTSInternetWeb/InterLabel


**UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

### Search Results

Label/Receipt Number: **7010 1670 0000 1202 9798**
Expected Delivery Date: **February 19, 2011**
Class: **Priority Mail®**
Service(s): **Certified Mail™**
Status: **Delivered**

Your item was delivered at 10:27 am on February 24, 2011 in NEW
YORK, NY 10128.

**Detailed Results:**

• **Delivered, February 24, 2011, 10:27 am, NEW YORK, NY 10128**
• **Arrival at Unit, February 22, 2011, 1:19 am, NEW YORK, NY 10022**
• **Acceptance, February 18, 2011, 3:12 pm, JAMAICA, NY 11424**

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   ( Go > )

Track & Confirm 

Enter Label/Receipt Number.

( Go > )

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA



# LAW OFFICES OF N.M. GEHI, P.C.
### ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL: (718) 263-5999 • FAX: (718) 263-1685

February 18, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

RE: **BANKRUPTCY FILINGS**
**Park, Song**
**CHAPTER 7**
<u>**CASE NO. 1-11-40745-cec**</u>

Dear Trustee Geltzer:

Enclosed is a copy of the bankruptcy petition filed by my client in the above-mentioned matter.

<u>**Pursuant to your request, the following documents are enclosed:**</u>
- ❖ Copy of Ms. Park's Certificate of Counseling;
- ❖ Copies of Ms. Park's business tax returns since it has open;
- ❖ Copy of Ms. Park's affidavit of self-employment;
- ❖ Copies of Ms. Park's 3 month bank statements prior to closing the account.

Thank you very much for your help in this matter.

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.

7010 1670 0000 1202 9798

ng/AT

# LAW OFFICES OF N.M. GEHI, P.C.

### ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL.: (718) 263-5999 • FAX: (718) 263-1685

February 18, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

RE: **BANKRUPTCY FILINGS**
  **Park, Yongdae**
  **CHAPTER 7**
  <u>**CASE NO. 1-11-40747-cec**</u>

Dear Trustee Geltzer:

Enclosed is a copy of the bankruptcy petition filed by my client in the above-mentioned matter.

<u>**Pursuant to your request, the following documents are enclosed:**</u>
 ❖ Copy of Mr. Park's Certificate of Counseling;
 ❖ Copy of Mr. Park's 2009 tax returns;
 ❖ Copy of Mr. Park's affidavit of self-employment;
 ❖ Copies of Mr. Park's current bank statements;
 ❖ Copies of Mr. Park's KBB value, title and proof of insurance for vehicle;
 ❖ Copies of Mr. Park's business tax return for 2009;
 ❖ Copies of Mr. Park's 3 month bank statements prior to closing the account.

Thank you very much for your help in this matter.

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.

ng/AT

of such document;

(g) Set forth the date of destruction or discard of such document, the manner of destruction or discard; and

(h) Identify any person authorizing or carrying out such destruction or discard.

5. This document request shall be deemed continuing, and you are required to produce, in the form of supplementary document production, any document requested herein that is unavailable to you at the time of this request, but that subsequently becomes available to you or to any of your attorneys, agents or representatives up to the conclusion of the proceedings herein.

6. Unless otherwise indicated, the documents requested herein are for the time period commencing stated in the Order and continuing to the present.

C.    **DOCUMENTS TO BE PRODUCED**

Any and all documents, for a period of six (6) years immediately preceding the filing of the petition (or the life of Debtor's wholly owned business, SP Puppy Love, Inc., if less than six (6) years), of, and/or pertaining to, the Debtor and the Debtor's wholly owned business, SP Puppy Love, Inc., including, without limitation, invoices, bank statements, statements of accounts receivable and payable, periodic credit card statements, bills, fronts and backs of cancelled checks, check stubs, ledgers, sales register tapes, passwords for computers, worksheets, work papers, notes, manual records, tax returns, investment and/or brokerage, retirements, 401(k) account statements, insurance policies, interests in other businesses and real estate, loan documents regarding any loans to and/or from related entities and their officers and directors and friends and relatives of Debtor, bank deposit slips, copies of checks

received, back-up tapes and/or disks, contracts, agreements, lists of inventory and

work-in-progress and/or any other fixed assets, major customers and suppliers, any

papers and/or pleadings related to legal actions, correspondence, memoranda, etc.,

and any and all documents relating to any transactions between and/or among the

Debtor and any insider(s) of the Debtor, as that term is defined in the Bankruptcy Code.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------x

In re

**YONGDAE PARK,**

Debtor.

-----------------------------------------------------------------------------x

**Chapter 7**

**Case No. 11-40747-CEC**

## SUBPOENA IN A BANKRUPTCY CASE

| To: | Yongdae Park<br>3625 Parsons Boulevard, Apt. 6C<br>Flushing, NY 11354 | N.M. Gehi, Esq.<br>118-21 Queens Boulevard, Suite 411, 4th Floor<br>Forest Hills, NY 11375 |
|---|---|---|

YOU ARE COMMANDED to appear to testify at the place, date, and time specified below to testify at the taking of a deposition in the above proceeding.

| Address: | Law Offices of Robert L. Geltzer<br>1556 Third Avenue, Suite 505<br>New York, New York 10128 | Floor: | 5 |
|---|---|---|---|
| | | Date and Time: | July 21, 2011<br>at 2:00 P.M. |

YOU ARE ALSO COMMANDED TO produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:

By July 5, 2011 at 10:00 A.M.
Law Offices of Robert L. Geltzer
1556 Third Avenue, Suite 505
New York, New York 10128

Any and all documents, for a period of six (6) years immediately preceding the filing of the petition (or the life of Debtor's wholly owned business, Park's Doggie Mama, Inc., if less than six (6) years), of, and/or pertaining to, the Debtor and the Debtor's wholly owned business, Park's Doggie Mama, Inc., including, without limitation, invoices, bank statements, statements of accounts receivable and payable, periodic credit card statements, bills, fronts and backs of cancelled checks, check stubs, ledgers, sales register tapes, passwords for computers, worksheets, work papers, notes, manual records, tax returns, investment and/or brokerage, retirements, 401(k) account statements, insurance policies, interests in other businesses and real estate, loan documents regarding any loans to and/or from related entities and their officers and directors and friends and relatives of Debtor, bank deposit slips, copies of checks received, back-up tapes and/or disks, contracts, agreements, lists of inventory and work-in-progress and/or any other fixed assets, major customers and suppliers, any papers and/or pleadings related to legal actions, correspondence, memoranda, etc., and any and all documents relating to any transactions between and/or among the Debtor and any insider(s) of the Debtor, as that term is defined in the Bankruptcy Code

Any subpoenaed organization not a party to this action is directed pursuant to Federal Rule of Civil Procedure 30(b)(6), to file a designation with the court specifying one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and to set forth for each person designated, the matters on which each person will testify, and which documents or objects each person will produce. The persons so designated shall testify as to matters known or reasonably available to the organization. Fed.R. Civ.P. 30(b)(6) is made applicable in adversary proceedings by Rule 7030, Fed.R. Bank P.

| Issuing Officer Signature and Title: | /s/ Robert L. Geltzer |
| --- | --- |
| | Attorneys for Chapter 7 Trustee |

Issuing Officer's Name, Address and Phone Number:
   Robert L. Geltzer, Esq.
   Law Offices of Robert L. Geltzer
   1556 Third Avenue, Suite 505
   New York, New York 10128
   (212) 410-0100

Rule 45, Fed. R. Civ. P., Parts (c) and (d) made
Applicable in cases under the Bankruptcy
Code by Rule 9016, Fed. R. Bankr. P.

(c)      PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing on trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B)      If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)       DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

76

2122302699
DGPW
11:19:13 a.m.   06-08-2011
2/5

PARK, Youngdae

| DOCUMENTS DEMANDED OF DEBTOR | Received* | Needed** |
|---|---|---|
| Any and all documents of, and/or pertaining to, the Debtor and his wholly owned business, Park's Doggi Mama Inc, for a period of six (6) years (except where otherwise noted) immediately preceding the filing of the petition including, without limitation: | | |
| invoices | | N |
| bank statements - personal - Woori America Bank acct# 2314484 | 7/27/09 - 12/27/10 | BN |
| bank statements - business - Woori America Bank acct#227012614 | 1/31/10 - 3/31/11 | BN |
| statements of accounts receivable and payable | | N |
| periodic credit card statements | | N |
| bills | | N |
| fronts and backs of cancelled checks/images | | N |
| check stubs | | N |
| bank deposit slips | | N |
| copies of checks received | | N |
| financial statements - fiscal income statement and balance sheet | 9/21/09 - 8/31/10 | BN |
| ledgers | | N |
| sales register tapes | | N |
| passwords for computers | | N |
| worksheets | | N |
| work papers | | N |
| notes | | N |
| manual records | | N |
| tax returns - personal | 2010 | N |
| tax returns - business | | N |
| investment and/or brokerage, retirement, 401(k) account statements | | N |
| insurance policies | | N |
| interests in other businesses and real estate | | N |
| loan documents regarding any loans to and/or from related entities and their officers and directors and friends and relatives of Debtor | | N |

77

2122302699

PARK, Youngdae

| DOCUMENTS DEMANDED OF DEBTOR | Received* | Needed** |
|---|---|---|
| back up tapes and/or disks | | N |
| contracts | | N |
| agreements | | N |
| lists of inventory and/or work in progress and/or any other fixed assets | | N |
| major customers and suppliers | | N |
| any papers and/or pleadings related to legal actions | | N |
| correspondence | | N |
| memoranda | | N |
| any and all documents related to the any business in which the Debtor holds position (officer, etc) including but not limited to JS Puppy Land, Inc) | | N |
| any and all documents relating to the Debtor and any transactions with an insider of the Debtor as that term is defined in the Bankruptcy Code. | | N |

* Y equals received
** N equals not received
**BN equals balance needed

78

EXHIBIT    D

**U.S. DEPARTMENT OF JUSTICE**
**U.S. TRUSTEE RPOGRAM**
**NEW YORK, NY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN THE MATTER OF                                          :

**REQUEST FOR REVIEW OF TRUSTEE ROBERT**   :    <u>**AFFIDAVIT OF SONG PARK**</u>
**L. GELTZER'S CONDUCT IN CHAPTER 7 CASES** :
**1-11-40745 (SONG PARK), 1-11-40747 (YONGDAE** :
**PARK), and 1-11-40754 (TALAT ISLAM)**     :
                                                         :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Song Park, duly sworn, depose and state under the penalty of perjury:

1. I am a debtor in chapter 7 case number 1-11-40745.

2. The section 341 meeting in my chapter 7 case was held on March 8, 2011 at 271 Cadman Plaza East in Brooklyn, New York, before Trustee Robert L. Geltzer.

3. I was frightened and offended by Trustee Geltzer's behavior on the day of my section 341 meeting. The attorney who accompanied me for my meeting was Monica E. Ahmad. Before the meeting, Monica was sitting with me and her other clients in the audience section of the hearing room. Trustee Geltzer asked her to tell him the names of the debtors she was representing. Monica began to say the names, and he asked her to come to the table where he was sitting. She went to the table, holding papers dealing with the three cases. Trustee Geltzer asked her to show him a page from each of the three case files. Monica turned to that page in each case file and showed the page to him. Each case file was held together by a binder clip. Trustee Geltzer took one of the case files and, looking angry, pulled very hard on the page to remove it from the rest of the case file. His harsh pull caused the binder clip to fly off the packet.

4. The binder clip flew past Monica and into the audience section of the room, close to where I was sitting. I was very startled by Trustee Geltzer's behavior, and I felt that he had acted inappropriately. I saw that other people in the audience were also looking startled by his actions. He continued to do the same to each of the other packets; he made the binder clips go flying off in

4

different directions. Monica moved out of the way and other people in the room looked just as startled as I was.

5. When Monica sat down with me for my section 341 meeting before Trustee Geltzer, he was reviewing the documents that Monica showed him, and he pulled out three tax returns for the business that I used to own. I saw him throw the tax returns across the table, at Monica. I was startled to see him act that way, and I felt scared and uncomfortable to be sitting near him. I felt scared of what he might do next, especially because my attorney and I had done nothing wrong.

6. I needed a translator for my hearing, and Trustee Geltzer was very degrading during the translation. He shouted at me and at the translator, made me feel uncomfortable for no reason, and did not let me express myself as I felt necessary for my meeting. He was also rude to the interpreter and told her that she was incompetent. His behavior struck me as inappropriate and made me feel scared because I felt that an unreasonable, unstable trustee was handling my bankruptcy case.

7. After my meeting was over, Trustee Geltzer called the next case, which was my father Yongdae Park's case. Trustee Geltzer rolled his eyes and moaned when Monica told him that a Korean translator was needed for this case as well. I found this offensive. During my father's meeting, trustee Geltzer started an inappropriate conversation with the translator about how to say yes and no in Korean. He demanded that the translator tell him how to say yes in Korean, and the translator did not say anything in response. It seemed to me that the translator was feeling uncomfortable with Trustee Geltzer's behavior too. Trustee Geltzer seemed to be mocking people who speak Korean. Since the translator didn't answer the question, I answered by saying the word for yes in Korean. Trustee Geltzer yelled at me and ordered that I leave the room. I left the room, and my boyfriend Douglas Gray, who had accompanied me for the hearing, left the room with me. He had been in the room the whole time I was there too. I was traumatized by the way Trustee Geltzer had treated me, because I felt I had done nothing wrong and did not deserve to be addressed so harshly. I cried in the hallway after I left the meeting room.

8.  I hope that the U.S Trustee Program looks into Trustee Geltzer's behavior to prevent anything like this from happening again.

Respectfully,

Sworn to before me this 14th day of March, 2011.

Song Park

Notary Public

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

4

**U.S. DEPARTMENT OF JUSTICE**
**U.S. TRUSTEE RPOGRAM**
**NEW YORK, NY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF                                        :
                                                        :
**REQUEST FOR REVIEW OF TRUSTEE ROBERT**       :    <u>**AFFIDAVIT OF YONGDAE PARK**</u>
**L. GELTZER'S CONDUCT IN CHAPTER 7 CASES**    :
**1-11-40745 (SONG PARK), 1-11-40747 (YONGDAE**   :
**PARK), and 1-11-40754 (TALAT ISLAM)**        :
                                                        :
                                                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I, Yongdae Park, duly sworn, depose and state under the penalty of perjury:

1.  I am a debtor in chapter 7 case number 1-11-40747.

2.  The section 341 meeting in my chapter 7 case was held on March 8, 2011 at 271 Cadman Plaza East in Brooklyn, New York, before Trustee Robert L. Geltzer.

3.  I was shocked and offended by Trustee Geltzer's behavior on the day of my section 341 meeting. The attorney who accompanied me for my meeting was Monica E. Ahmad. Before the meeting, Monica was sitting with me and her other clients in the audience section of the hearing room. Trustee Geltzer asked her to tell him the names of the debtors she was representing. Monica began to say the names, and he asked her to come to the table where he was sitting. She went to the table, holding papers dealing with the three cases. Trustee Geltzer asked her to show him a page from each of the three case files. Monica turned to that page in each case file and showed the page to him. Each case file was held together by a binder clip. Trustee Geltzer took one of the case files and, looking angry, pulled very hard on the page to remove it from the rest of the case file. His harsh pull caused the binder clip to fly off the packet.

4.  The binder clip flew past Monica and into the audience section of the room, close to where I was sitting. I was very surprised and disappointed by Trustee Geltzer's behavior, and I felt that he had acted inappropriately. I saw that other people in the audience were also looking startled by his actions. He continued to do the same to each of the other packets; he made the binder clips go

4.

flying off in different directions. Monica moved out of the way and other people in the room looked just as startled as I was.

5. My daughter Song Park had her section 341 meeting scheduled for the same day and time as my meeting, also before Trustee Geltzer. When Trustee Geltzer asked my daughter to sit before him for the meeting, he began reviewing the documents that Monica showed him, and he pulled out three tax returns for the business that I used to own. I saw him throw the tax returns across the table, at Monica. I was startled to see him act that way, and I knew that my daughter would also feel uncomfortable. There was no good reason for him to act in this way. I felt that this man must be crazy, and it was scary to think that a man this unstable was a trustee handling my bankruptcy case and my daughter's.

6. My daughter needed a translator for her hearing, and Trustee Geltzer was very degrading during the translation. He shouted at Song and at the translator, and did not let Song express herself. He also spoke rudely to the interpreter. I felt that his behavior was inappropriate.

7. After my daughter's meeting was over, Trustee Geltzer called my case. Trustee Geltzer rolled his eyes and moaned when Monica told him that a Korean translator was needed for this case as well. I found this offensive. During my meeting, trustee Geltzer started an inappropriate conversation with the translator about how to say yes and no in Korean. He demanded that the translator tell him how to say yes in Korean, and the translator did not say anything in response. It seemed to me that the translator was feeling uncomfortable with Trustee Geltzer's behavior too. Trustee Geltzer seemed to be mocking people who speak Korean. Since the translator didn't answer the question, my daughter answered by saying the word for yes in Korean. Trustee Geltzer yelled at her and ordered that she leave the room. She left the room, and her boyfriend Douglas Gray, who had accompanied her for the hearing, left the room with her. He had been in the room the whole time my daughter and I were there too. I believe that my daughter was traumatized by the way Trustee Geltzer had treated her. She was crying in the hallway afterward.

44

8.  I hope that the U.S Trustee Program looks into Trustee Geltzer's behavior to prevent anything like this from happening again.

Respectfully,                                    Sworn to before me this 14th day of March, 2011.

Yongdae Park                                     Notary Public

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

45

**U.S. DEPARTMENT OF JUSTICE**
**U.S. TRUSTEE RPOGRAM**
**NEW YORK, NY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN THE MATTER OF

**REQUEST FOR REVIEW OF TRUSTEE ROBERT**
**L. GELTZER'S CONDUCT IN CHAPTER 7 CASES**
**1-11-40745 (SONG PARK), 1-11-40747 (YONGDAE**
**PARK), and 1-11-40754 (TALAT ISLAM)**

**AFFIDAVIT OF DOUGLAS GRAY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Douglas Gray, duly sworn, depose and state under the penalty of perjury:

1. My girlfriend Song Park is a debtor in chapter 7 case number 1-11-40745.

2. The section 341 meeting in her chapter 7 case was held on March 8, 2011 at 271 Cadman Plaza East in Brooklyn, New York, before Trustee Robert L. Geltzer. I accompanied her on the day of the meeting, for moral support.

3. I was shocked and offended by Trustee Geltzer's behavior on the day of the section 341 meeting. The attorney who accompanied her for the meeting was Monica E. Ahmad. Before the meeting, Monica was sitting with Song and me in the audience section of the hearing room. Trustee Geltzer asked her to tell him the names of the debtors she was representing. Monica began to say the names, and he asked her to come to the table where he was sitting. She went to the table, holding papers dealing with the three cases. Trustee Geltzer asked her to show him a page from each of the three case files. Monica turned to that page in each case file and showed the page to him. Each case file was held together by a binder clip. Trustee Geltzer took one of the case files and, looking angry, pulled very hard on the page to remove it from the rest of the case file. His harsh pull caused the binder clip to fly off the packet.

4. The binder clip flew past Monica and into the audience section of the room, close to where I was sitting. I was very surprised and disappointed by Trustee Geltzer's behavior, and I felt that he had acted inappropriately. I saw that other people in the audience were also looking startled by his

46

actions. He continued to do the same to each of the other packets; he made the binder clips go flying off in different directions. Monica moved out of the way and other people in the room looked just as startled as I was.

5.  When Trustee Geltzer called Song's name for the meeting, he began reviewing the documents that Monica showed him, and he pulled out three tax returns for the business that Song used to own. I saw him throw the tax returns across the table, at Monica. I was startled to see him act that way, and I knew that Song would also feel uncomfortable. There was no good reason for him to act in this way. I felt that this man must be crazy, and it was scary to think that a man this unstable was a trustee handling Song's bankruptcy case.

6.  My girlfriend needed a translator for her hearing, and Trustee Geltzer was very degrading during the translation. He shouted at Song and at the translator, and did not let Song express herself. He also spoke rudely to the interpreter. I felt that his behavior was inappropriate.

7.  After Song's meeting was over, Trustee Geltzer called Yongdae Park's case. Yongdae is Song's father, and Yongdae's meeting was scheduled for the same date and time as Song's meeting. Trustee Geltzer rolled his eyes and moaned when Monica told him that a Korean translator was needed for this case as well. I found this offensive. During Yongdae's meeting, Trustee Geltzer started an inappropriate conversation with the translator about how to say yes and no in Korean. He demanded that the translator tell him how to say yes in Korean, and the translator did not say anything in response. It seemed to me that the translator was feeling uncomfortable with Trustee Geltzer's behavior too. Trustee Geltzer seemed to be mocking people who speak Korean. Since the translator didn't answer the question, Song answered by saying the word for yes in Korean. Trustee Geltzer yelled at her and ordered that she leave the room. She left the room, I came with her. Song was clearly traumatized by the way Trustee Geltzer had treated her. She was crying in the hallway afterward.

8.  I hope that the U.S Trustee Program looks into Trustee Geltzer's behavior to prevent anything like this from happening again.

47

Respectfully,

Douglas Gray

Sworn to before me this 14th day of March, 2011.

Notary Public

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

4

EXHIBIT E

# LAW OFFICES OF N.M. GEHI, P.C.
### ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL.: (718) 263-5999 • FAX: (718) 263-1685

April 6, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

7008 3230 0001 2829 5617

**RE: BANKRUPTCY FILINGS**
**Park, Song & Yong Dae**
**CHAPTER 7**
**CASE NO. 1-11-40745-cec & 1-11-40747**

Dear Trustee Geltzer:

Please specify the date and time you want me and my client to appear before you in connection with the above-captioned matter in writing. Additionally, I also request you to specify IN WRITING the exact documents you are requesting in connection with the above captioned matter. Our clients are more than willing to come in and testify in connection with **every request** that you are seeking. I look forward to receiving a written reply from your end as soon as possible. I would very much appreciate it if you would forward a copy of all the correspondence in this matter to the United States Trustees Office so that this case can be closely monitored by the US Trustee.

We have already provided you with the following documents until date:

-Profit & loss statement Park's Doggi Mama;
-profit & loss statement for S.P Puppy love;
-Young Dae Park's tax return for 2010;
-Documents in reference to Song Park's lawsuit.

We would very much appreciate the presence of the U.S Trustees office on the date of the hearing on this matter so that justice can be done properly in this matter. **As mentioned earlier, my client is ready and willing to comply with every single request for documents to the United States Trustee as well as personal testimony in this matter.** If you need any further documents, please provide us thirty days in order for my client to respond to your specific list of documents. Thank you.

Very truly yours,

Naresh M. Gehi, Esq.

49

VIA FACSIMILE AND CERTIFIED MAIL

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.
ng/AT

CC:    Chief Judge Carla E. Craig
       U.S Bankruptcy Court, EDNY
       Conrad B. Duberstein Courthouse          7008 3230 0001 2829 5624
       271 Cadman Plaza East- Suite 1595


       Alicia Leonhard, Assistant U.S Trustee
       271 Cadman Plaza East, Suite 4529
       Brooklyn, NY 11201                        7008 3230 0001 2829 5631
       FAX- 718-422-4990

       Tracy Davis, U.S Trustee
       33 Whitehall Street, Suite 2100
       New York, NY 10004                   7010 1670 0000 1217 5921
       FAX 212-668-2256

2

# LAW OFFICES OF N. M. GEHI, P.C.
## 118-21 QUEENS BLVD, SUITE 411, FOREST HILLS, NY 11375
### Phone: (718) 263-5999 Fax: (718) 263-1685



## Fax

| | | | |
|---|---|---|---|
| **To:** | Attn: Tracy Davis | **From:** | **Naresh Gehi, Esq.** |
| **Fax:** | 212-668-2256 | **Date:** | 4/6/2011 |
| **Phone:** | | **Pages:** | (Including cover) 3 |
| **Re:** | Song Park | **CC:** | |
| | 1-11-40745-cec | | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

**Confidentiality Notice** The documents accompanying this facsimile contains information from the law offices of N.M. Gehi and is intended to be for the use of the entity on the transmission sheet and that which may be confidential, privileged or the work product of an attorney. If you are not the intended recipient, please be aware that any disclosure, copying or distribution or use of this tele-faxed information is strictly prohibited. If you receive this facsimile in error we request you to notify the Law Offices of N. M. Gehi immediately.

# LAW OFFICES OF N. M. GEHI, P.C.
## 118-21 QUEENS BLVD, SUITE 411, FOREST HILLS, NY 11375
### Phone: (718) 263-5999 Fax: (718) 263-1685

*faxed*
*Seal*

## Fax

| To: | Attn: Alicia Leonhard | From: | Naresh Gehi, Esq. |
|---|---|---|---|
| Fax: | 718-422-4990 | Date: | 4/6/2011 |
| Phone: | | Pages: | (Including cover) 3 |
| Re: | Song Park | CC: | |
| | 1-11-40745-cec | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

**Confidentiality Notice** The documents accompanying this facsimile contains information from the law offices of N.M. Gehi and is intended to be for the use of the entity on the transmission sheet and that which may be confidential, privileged or the work product of an attorney. If you are not the intended recipient, please be aware that any disclosure, copying or distribution or use of this tele-faxed information is strictly prohibited. If you receive this facsimile in error we request you to notify the Law Offices of N. M. Gehi immediately.

52

# LAW OFFICES OF N. M. GEHI, P.C.

**118-21 QUEENS BLVD, SUITE 411, FOREST HILLS, NY 11375**
**Phone: (718) 263-5999 Fax: (718) 263-1685**

*Fxed*
*Sent*

## Fax

| | | | |
|---|---|---|---|
| **To:** | Attn: Robert Geltzer, Esq. | **From:** | **Naresh Gehi, Esq.** |
| **Fax:** | 212-410-0400 | **Date:** | 4/6/2011 |
| **Phone:** | 212-410-0100 | **Pages:** | (Including cover) 3 |
| **Re:** | Song Park | **CC:** | |
| | 1-11-40745-cec | | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

**Confidentiality Notice** The documents accompanying this facsimile contains information from the law offices of N.M. Gehi and is intended to be for the use of the entity on the transmission sheet and that which may be confidential, privileged or the work product of an attorney. If you are not the intended recipient, please be aware that any disclosure, copying or distribution or use of this tele-faxed information is strictly prohibited. If you receive this facsimile in error we request you to notify the Law Offices of N. M. Gehi immediately.

53

EXHIBIT _F_

# LAW OFFICES OF N.M. GEHI, P.C.
### ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL.: (718) 263-5999 • FAX: (718) 263-1685

CERTIFIED MAIL

March 31, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

**RE: BANKRUPTCY FILINGS**
**Park, Song**
**CHAPTER 7**
**CASE NO. 1-11-40745-cec**

Dear Trustee Geltzer:

**Pursuant to your request, the following documents are enclosed:**
- ❖ Copy of Ms. Park's books and records for S.P Puppy love from 2006-2008;
- ❖ Documents in reference to Ms. Park's lawsuit.

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.

ng/AT

EG829651044US

CERTIFIED MAIL

54

# LAW OFFICES OF N.M. GEHI, P.C.
## ATTORNEYS & COUNSELLORS AT LAW

THE PICKMAN BUILDING • 118-21 QUEENS BLVD. • SUITE 411, 4TH FL. • FOREST HILLS, NY 11375
TEL.: (718) 263-5999 • FAX: (718) 263-1685

March 31, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

> **RE: BANKRUPTCY FILINGS**
>      **Park, Yongdae**
>      **CHAPTER 7**
>      **CASE NO. 1-11-40747-cec**

Dear Trustee Geltzer:

**Pursuant to your request, the following documents are enclosed:**
 ❖ Copy of Mr. Park's 2010 tax return;
 ❖ Books and records for Park's Doggi Mama for 2009-2010.

Thank you very much for your help in this matter.

Very truly yours,

Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.

ng/AT

EXHIBIT $G$

LAW OFFICES OF

# ROBERT L. GELTZER

1556 THIRD AVENUE
NEW YORK, NEW YORK 10128
(212) 410-0100

FACSIMILE (212) 410-0400

April 8, 2011

**BY FAX ONLY  (718) 263-1685**

Naresh M. Gehi, Esq.
The Pickman Building
118-21 Queens Blvd.
Suite 411, 4th Floor
Forest Hills, NY 11375

> Re:  Song Park - Case No. 11-40745 (CEC)
>       Yongdae Park - Case No. 11-40747 (CEC)

Mr. Gehi:

   NOTA BENE:  **NEVER** shall I be intimidated by your threats and accede to abstaining from, or in any way diminishing or detracting from, my fiduciary duties. Moreover, if you so much as intimate a threat to me again I shall explore and effectuate against you any and all legal remedies including, perhaps, instituting any civil causes of actions that may lie, and making any appropriate referrals, including to the Disciplinary Committee for violations of the New York Rules of Professional Conduct, and the Chief Judge's Standards for Civility under Administrative Order #568.

   By your telephone calls to me on April 6, 2011, you again unsuccessfully attempted to compel me to forsake my duties to investigate the above two debtors by threatening to resurrect your formerly unfounded and, as you wrote on March 14, 2011, "amicably resolved" complaint if I did not agree to extend your time further in turning over documents to me to enable me to administer properly the above estates, cooperation with which is a duty of the debtor pursuant to §521 of the Bankruptcy Code. All the documents of the debtors and their wholly-owned same or similar business enterprises, operated or operating at the same location or next door to each other, directly or indirectly, became estate property on February 1, 2011 when the petitions were filed. At the meeting conducted pursuant to §341 of the Bankruptcy Code on March 8, 2011, I demanded all of the debtors' financial books and records for a period of six years preceding the filing of the petition, and the books and records of their businesses for that same period or for the lives of those businesses, whichever were less -- and I demand them again at this time.

Again, your threats to resurrect your unfounded complaint unless I further extended that time will not be tolerated by me. During our phone conversation I never, in any way, demanded any money from the debtors inasmuch as I do not know whether any money is owing to their respective estates, and cannot know that unless and until I have received and reviewed the documents and, if necessary, examined the debtors. All I stated to you was that – and I reiterate here -- if all those documents are not turned over to me, I shall apply for orders to retain counsel and an accountant, and for orders for examinations under Rule 2004 which, if not complied with, would result in adversary proceedings to deny or revoke your clients' discharges; additionally, I state that I shall also move, if appropriate, to hold them in contempt of Court if they do not comply with such orders under Rule 2004, to which, in any event, the attorney who appeared on your behalf consented on the record.

I believe that those demands for documents are eminently clear and, as I explained to you yesterday, "all" means just that. The only documents that you provided pursuant to my demands were: Mr. Park's 2010 tax returns, two (2) pages of the books and records of his business from 2009 to 2010, six (6) pages for Ms. Park's business from 2006 to 2008, and a Verified Answer to a complaint against her. Interestingly, what is conspicuously absent are all documents pertaining to $150,000.00 loans each debtor scheduled and the disposition of the proceeds from those loans, to say nothing of any and all other financial records of the debtors and their businesses. I trust you do know that concealing property from the trustee is a violation of 18 U.S.C. §152(1), (7) and/or (9), and carries with it penalties of fines and imprisonment of up to five years, or both.

Both cases were adjourned to April 12, 2011 at 12:00 p.m. as holding dates subject to the receipt of the required documents prior to that time. Had the attorney who appeared paid attention to that, rather than to concocting complaints against me as written in your mendacious March 8, 2011 letter, she would know that.

Finally, your very letter of April 6, 2011 is prima facie evidence of your desire to threaten and to attempt to intimidate me inasmuch as it does not seem to me to be a matter in which a competent and capable attorney would need to invoke the Chief Judge, and the United States Trustee, and the Assistant United States Trustee, and, thus, only could have been written to intimidate.

Yours, etc.,

cc:    Honorable Carla E. Craig
       Tracy Hope Davis, Esq. (by email)
       Alicia M. Leonhard, Esq. (by email)

P.S.   I also suggest you review your website for any misleading, unfair and/or deceptive statements, as, for example, your intimation that your firm actually was the agent in "discharging millions of dollars in debt."

EXHIBIT __H__



April 8, 2011

Robert L. Geltzer, Esq.
Bankruptcy Trustee
1556 Third Avenue
New York, NY 10128
Fax: 212-410-0400

**Re: Chapter 7 case 1-11-40745 (Song Park), 1-11-40747 (Yongdae Park), and 1-11-40754 (Talat Islam)**

Dear Trustee Geltzer,

I am respectfully urging that a full and fair investigation should be conducted by the United States Trustee in this matter.

I am in receipt of your letter dated April 8, 2011. At no point of time I have intimidated you in connection with the proceedings in this matter. In fact my letter dated April 6, 2011 clearly shows my intentions as well as the intentions of my client to comply with all the requests of the Hon. Bankruptcy Court.

I am ready and willing to face the consequences of our Honorable Court System if I am committing anything which is against the code of professional ethics in our profession.

In my letter April 6th 2011, I just wanted you to clarify the documents you wanted in order to review my clients case thoroughly. You had called my office and asked me to return your phone call. When I returned your phone call, I asked you to please let me know the exact documents you need and I will be happy to try to provide the same to you. You repeatedly mentioned "Books and Records" but you never clarified what you meant by "Books and Records". Additionally, I respectfully state that you were extremely reluctant to provide me with the date and time of the meeting during our telephone conversations. Assuming arguendo, even if my associate did not remember the

5

date, you would just provided me with the date and time and the matter would have been resolved. Additionally, if you would have provided me with a detailed list of every single document which you needed, there would have been no issues in this matter. I am still waiting to get an exact list of documents from your end.

In my letter I am only requesting that the US Trustee to closely monitor this matter so that justice can be done to all the parties, including creditors in this matter. .

I am shocked and surprised to notice monetary issues in this matter and I had a witness present during our conversation in my office. There is no reason for my clients to speak about any monies especially because they have been completely wiped off by one of their creditors from whom they had purchased the business. Therefore, your statement in connection with the monies involved in this matter is incorrect.

The facts in connection with my clients case in your letter are incorrect. There were no next door businesses which was owned by my clients in this case at any point of time. Additionally, the businesses of my clients have not been around for more than six years and I respectfully state that my clients cannot provide you with six year tax returns of the business. I humbly request you to not embarrass me in connection with my accent when I speak to you on the phone.

Your facts in connection with the fact that each of my clients incurred a $150,000.00 loan are incorrect. There was only one $150,000.00 loan in this matter and this loan was from the person who actually is responsible for all the suffering of my client. My clients had purchased the business from Ji Sung Li who has actually defrauded my clients. In other words, my clients have been victims of fraud from the Purchasers of the Business and I request you to review the facts and circumstances of the case and do justice to all parties including creditors in this matter.

My clients have literally lost everything and are ready for a full investigation in connection with the bonafides of this case. However, I request you to directly go on the record at the forthcoming meeting and please do not make any statements which are not recorded in this matter. I respectfully state that The Code of Ethics requests everyone including Trustees to be courteous to attorneys as well as clients appearing before any authority in our great nation and I respectfully urge you to comply with the same.

There are witnesses who are ready to affirm under oath and testify before the Bar Committee as well as the Hon. Trustee regarding the manner in which this matter has been handled by you. I have never threatened you at any time, but have tried to resolve issues between us before writing letters to the Hon. U.S. Trustee. If you read my letter

dated April 8, 2011 carefully, I am requesting you to give me a specific list of documents like other Trustees and our clients would be more than willing to comply with the same.

I respectfully state to the Hon. U.S. Trustee that I am so stressed out because of Trustee Geltzer's intimidation that I had no choice other than forwarding my feelings to the great Hon. Judges as well as to the Hon. Bankruptcy Trustee regarding everything which is transpiring in this matter.

I have done my very best to work with you and resolve this matter and this is evident from the fact that I had requested the Hon. Trustee to close the above matter.

If you think that my clients are hiding any assets, please feel free to comply with the Bankruptcy Code and I respectfully urge you to bring the facts to the Hon. Court. Yes, I had asked you for time on the phone if you needed any additional documents. This is because I wanted to hear from your end if you needed any additional documents particularly because it would be impossible for me to provide you documents which you would request at the last minute. I respectfully state that it would be a great asset if you would provide a written list to all the attorneys regarding the documents you expect and this would avoid confusion for everyone.

In connection with your statement regarding instituting a civil action against me, I request you not to threaten me regarding the same.

Assuming agruendo, even if my client is found to have done anything wrong in this matter, they have full faith that the U.S. Trustees Office and the Hon. Judges will render a fair verdict to you as well as our clients in this matter. Our clients are only requesting for justice to everyone including creditors. This was clearly amplified in my letter dated April 8, 2011.

I respectfully state that my website has no bearing in this matter and is completely irrelevant in this matter. To the best of my knowledge, I have handled cases in the past wherein the debt of some of my clients that owe more than a million dollars. If you think that it is an improper statement, I respectfully thank you for alerting me regarding the same and I will ensure that I remove the statement from my website.

I would be extremely indebted if a representative from the U.S. Trustee's Office will be present on the date of this hearing in this matter or if this matter would be assigned to different trustee.   Thank you.

Respectfully Submitted,

Naresh M. Gehi, Esq.

Cc: Tracy Davis, U.S. Trustee
    U.S. Department of Justice
    U.S. Trustee Program
    33 Whitehall Street, Suite 2100
    New York, NY 10004
    Fax:212 668-2256

    Chief Judge Carla E. Craig
    U.S. Bankruptcy Court, EDNY
    Conrad B. Duberstein courthouse
    271 Cadman Plaza East- Suite 1595
    Brooklyn, NY 11201-1800

    Alicia Leonhard, Assistant U.S. Trustee
    271 Cadman Plaza East- Suite 4529
    Brooklyn, NY 11201-1800
    Fax: 718-422-4990

EXHIBIT __I__

**FedEx Express** NEW Package US Airbill

FedEx Tracking Number **8759 0515 7693**

Sender's Copy

Ship Date **0215**

**From** *Please print and press hard.*

Date

Sender's FedEx Account Number _SENDER'S FEDEX ACCT NO. — FEDEX USE ONLY_ **2599 2592 1**

Sender's Name **NARESH M GEHI**    Phone (**718**) **263-5999**

Company **LAW OFFICE OF N. M. GEHI**

Address **11821 QUEENS BLVD STE 411**    Dept./Floor/Suite/Room

City **FOREST HILLS**    State **NY**    ZIP **11375-7208**

Your Internal Billing Reference    OPTIONAL
*First 24 characters will appear on invoice.*

**To**
Recipient's Name **Robert L. Geltzer**    Phone ( )

Company

Address **1556 Third Avenue**    Dept./Floor/Suite/Room
*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

Address
*Use this line for the HOLD location address or for continuation of your shipping address.*

City **New York**    State **NY**    ZIP **10128**

**0437012476**

**!** The FedEx US Airbill has changed. See Section 4.
For shipments over 150 lbs., order the new FedEx Express Freight US Airbill.

**4  Express Package Service**    *To most locations.*
NOTE: Service order has changed. Please select carefully.

**Next Business Day**

[X] FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

[ ] FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

[ ] FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

[ ] NEW FedEx 2Day A.M.
Second business morning.*
Saturday Delivery not available.

[ ] FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

[ ] FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

**5  Packaging**    *Declared value limit $500.*

[X] FedEx Envelope*    [ ] FedEx Pak*    [ ] FedEx Box    [ ] FedEx Tube    [ ] Other

**6  Special Handling and Delivery Signature Options**

[ ] SATURDAY Delivery
NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

[X] No Signature Required
Package may be left without obtaining a signature for delivery.

[ ] Direct Signature
Someone at recipient's address may sign for delivery. Fee applies.

[ ] Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only. Fee applies.

**Does this shipment contain dangerous goods?**
One box must be checked.

[X] No    [ ] Yes As per attached Shipper's Declaration.    [ ] Yes Shipper's Declaration not required.    [ ] Dry Ice Dry Ice, 9, UN 1845 ___ x ___ kg

Dangerous goods (including dry ice) cannot be shipped in FedEx packaging or placed in a FedEx Drop Box.    [ ] Cargo Aircraft Only

**7  Payment** *Bill to:*

Enter FedEx Acct. No. or Credit Card No. below.

[X] Sender Acct. No. in Section 1 will be billed.    [ ] Recipient    [ ] Third Party    [ ] Credit Card    [ ] Cash/Check

FedEx Acct. No.
Credit Card No.

Total Packages    Total Weight    Total Declared Value†
___    ___ lbs.    $ ___ .00

†Our liability is limited to $100 unless you declare a higher value. See back for details. By using this Airbill you agree to the service conditions on the back of this Airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 11/10 • Part #151134 • ©1994–2010 FedEx • PRINTED IN U.S.A. SRB

**611**

May 5, 2011

**Robert L. Geltzer, Esq.**
**Bankruptcy Trustee**
**1556 Third Avenue**
**New York, NY 10128**

**RE: BANKRUPTCY FILINGS**
**Park, Yongdae and Song**
**CHAPTER 7**
**CASE NO. 1-11-40745-cec & 1-11-40747-cec**

Dear Trustee Geltzer:


**<u>Pursuant to your request, the following documents are enclosed:</u>**

- ❖ Copy of books and records for Park's Doggi Mama Inc. from 2009-2011;
- ❖ Copy of Yongdae Park and Song Park's personal bank statements for 2009 and 2010;
- ❖ Yongdae Park's Memorandum of Law along with Exhibit A, Affidavit of Yongdae Park;
- ❖ Song Park's Memorandum of Law along with Exhibit A, Affidavit of Song Park and Exhibit B, Letter from HSBC.


Very truly yours,


Law Offices of N. M. Gehi, P. C.
Naresh M. Gehi, Esq.


ng/gh

FED EX OVERNIGHT DELIVERY

6

EXHIBIT ⌒

Case 1-11-40745-cec    Doc 20-2    Filed 06/14/11    Entered 06/14/11 11:09:54

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

In re

**SONG PARK,**

Debtor.

-------------------------------------------------------------------------x

**Chapter 7**

**Case No. 11-40745-CEC**

## SUBPOENA IN A BANKRUPTCY CASE

| To: Song Park<br>3625 Parsons Boulevard, Apt. 6C<br>Flushing, NY 11354 | N.M. Gehi, Esq.<br>118-21 Queens Boulevard, Suite 411, 4th Floor<br>Forest Hills, NY 11375 |
|---|---|

YOU ARE COMMANDED to appear to testify at the place, date, and time specified below to testify at the taking of a deposition in the above proceeding.

| Address: Law Offices of Robert L. Geltzer<br>1556 Third Avenue, Suite 505<br>New York, New York 10128 | Floor: 5 |
|---|---|
| | Date and Time: July 21, 2011<br>at 3:30 P.M. |

YOU ARE ALSO COMMANDED TO produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:

By July 5, 2011 at 10:00 A.M.
Law Offices of Robert L. Geltzer
1556 Third Avenue, Suite 505
New York, New York 10128

Any and all documents, for a period of six (6) years immediately preceding the filing of the petition (or the life of Debtor's wholly owned business, SP Puppy Love, Inc., if less than six (6) years), of, and/or pertaining to, the Debtor and the Debtor's wholly owned business, SP Puppy Love, Inc., including, without limitation, invoices, bank statements, statements of accounts receivable and payable, periodic credit card statements, bills, fronts and backs of cancelled checks, check stubs, ledgers, sales register tapes, passwords for computers, worksheets, work papers, notes, manual records, tax returns, investment and/or brokerage, retirements, 401(k) account statements, insurance policies, interests in other businesses and real estate, loan documents regarding any loans to and/or from related entities and their officers and directors and friends and relatives of Debtor, bank deposit slips, copies of checks received, back-up tapes and/or disks, contracts, agreements, lists of inventory and work-in-progress and/or any other fixed assets, major customers and suppliers, any papers and/or pleadings related to legal actions, correspondence, memoranda, etc., and any and all documents relating to any transactions between and/or among the Debtor and any insider(s) of the Debtor, as that term is defined in the Bankruptcy Code.

Any subpoenaed organization not a party to this action is directed pursuant to Federal Rule of Civil Procedure 30(b)(6), to file a designation with the court specifying one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and to set forth for each person designated, the matters on which each person will testify, and which documents or objects each person will produce. The persons so designated shall testify as to matters known or reasonably available to the organization. Fed.R. Civ.P. 30(b)(6) is made applicable in adversary proceedings by Rule 7030, Fed.R. Bank P.

Issuing Officer Signature and Title:        /s/ Robert L. Geltzer

Attorneys for Chapter 7 Trustee

Issuing Officer's Name, Address and Phone Number:
Robert L. Geltzer, Esq.
Law Offices of Robert L. Geltzer
1556 Third Avenue, Suite 505
New York, New York 10128
(212) 410-0100

Rule 45, Fed. R. Civ. P., Parts (c) and (d) made
Applicable in cases under the Bankruptcy
Code by Rule 9016, Fed. R. Bankr. P.

(c)        PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing on trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B)        If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

C:\WPDIRS\BANKFORM\2004 SUB

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2122302099

PARK, Song

| DOCUMENTS DEMANDED OF DEBTOR | Received* | Needed** |
|---|---|---|
| Any and all documents of, and/or pertaining to, the Debtor and her wholly owned business, SP Puppy Love Inc, for a period of six (6) years (except where otherwise noted) immediately preceding the filing of the petition including, without limitation: | | |
| invoices | | N |
| bank statements - personal - Woori America Bank acct# 2314484 | 7/27/09 - 12/27/10 | BN |
| bank statements - business | | N |
| statements of accounts receivable and payable | | N |
| periodic credit card statements | | N |
| bills | | N |
| fronts and backs of cancelled checks/images | | N |
| check stubs | | N |
| bank deposit slips | | N |
| copies of checks received | | N |
| financial statements - fiscal income statement and balance sheet | 2006 - 2008 | BN |
| ledgers | | N |
| sales register tapes | | N |
| passwords for computers | | N |
| worksheets | | N |
| work papers | | N |
| notes | | N |
| manual records | | N |
| tax returns - personal | | N |
| tax returns - business | | N |
| investment and/or brokerage, retirement, 401(k) account statements | | N |
| insurance policies | | N |
| interests in other businesses and real estate | | N |
| loan documents regarding any loans to and/or from related entities and their officers and directors and friends and relatives of Debtor | | N |
| back up tapes and/or disks | | N |

67

2122302699                                         DGPW                    11:19:37 a.m.    06-08-2011         5/5

PARK, Song

| DOCUMENTS DEMANDED OF DEBTOR | Received* | Needed** |
|---|---|---|
| contracts | | N |
| agreements | | N |
| lists of inventory and/or work in progress and/or any other fixed assets | | N |
| major customers and suppliers | | N |
| any papers and/or pleadings related to legal actions | Y | |
| correspondence | | N |
| memoranda | | N |
| any and all documents relating to the Debtor and any transactions with an insider of the Debtor as that term is defined in the Bankruptcy Code. | | N |

* Y equals received
** N equals not received
**BN equals balance needed

6 ?

.    •

## EXHIBIT "A"

## SCHEDULE OF DOCUMENTS

A.    **DEFINITIONS**

1.  The term Song Park or (the "Debtor") refers to the Chapter 7 Debtor.

2.  The terms "You", "you", "Your", and "your" refer to Song Park.

3.  The term "document" shall include every record of every type, financial and otherwise, including, but not limited to, any writings, correspondence, letters, telegrams, telexes, mailgrams, e-mails, memoranda (including inter-office and intra-office memoranda, memoranda for files, memoranda of telephone or other conversations, including meetings), invoices, reports, receipts and statements of account, ledgers, notes or notations, notes or memorandum attached to (or to be read with) any document, booklets, books, drawings, graphs, charts, photographs, phone records, electronic tapes, discs or other recordings, computer programs, printouts, data cards, studies, analyses and other data compilations from which information can be obtained or translated through detection devices into reasonably usable form and shall include, without limitation, the original and all non-identical copies thereof of all written, printed, typed, recorded, computerized or graphic material of any kind or description, including notes or preparatory material of any kind or description however produced or reproduced, whether mechanically or electronically recorded, draft, final original, reproduction, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, and whether handwritten, typed, printed, photostated, duplicated, carbon or otherwise copied or produced in any other manner whatsoever, including material concerned with said document and every additional copy of such

document where such copy contains any commentary, notation or change whatsoever that does not appear on the original or other copy of the document produced.

B.    **INSTRUCTIONS**

1.  In producing the documents requested herein, you are required to identify the documents produced according to the number of the request herein to which they are related.

2.  Each document is to be produced (along with all drafts thereof) in its entirety, without abbreviation or expurgation.

3.  If any document is withheld by you under claims of privilege, you are requested to furnish a list signed by the person supervising the production of the documents called for, identifying each document for which the privilege is claimed, together with the following information with respect to each such document:  date, sender, addressee, number of pages, subject matter, the basis on which privilege is claimed, all persons to whom copies were furnished, together with their name, address, employer and job titles at the date such document was furnished and, if now different, then also their present employer, job title and present work or residence address.

4.  State whether any document requested has been destroyed or discarded, and for each such document destroyed or discarded:

    (a)  Identify the author;

    (b)  Identify all addressees, including all blind or indicated copies;

    (c)  Identify each person who has seen it or been informed of its contents;

    (d)  Identify all included and blind addressee(s);

    (e)  State the date or approximate date of its preparation;

    (f)  Set forth the subject matter of each document and describe the content