U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

HEARING DATE: July 14, 2011
HEARING TIME: 2:00 p.m.

-----------------------------------------------------------x

IN RE

YONGDAE PARK

Debtor.

: **REPLY TO OPPOSITION TO**
:     **MOTION TO QUASH**
:
: Chapter 7 Case No.
:
: **1-11-40747-cec**
:
:
:
:

-----------------------------------------------------------x

**REPLY TO TRUSTEE'S AFFIRMATION IN OPPOSITION TO DEBTOR'S MOTION**

**TO QUASH TRUSTEE'S RULE 2004 SUBPOENA**

1.      In response to Trustee Robert L. Geltzer's (hereinafter, "Trustee Geltzer") affirmation in opposition to Debtor's Motion to Quash Trustee's Subpoena to Conduct a Rule 2004 Examination (hereinafter, "Trustee's Affirmation"), Debtor Yongdae Park ("Debtor"), though undersigned counsel, respectfully submits this reply brief.

**I.      Trustee's Affirmation fails to address the adequacy of the records which the Debtor has already provided for a thorough investigation.**

2.      As discussed in Debtor's Memorandum of Law filed on May 5, 2011, (see Ex. A, Mem. of Law for Yongdae Park) a debtor does not need to justify a failure to maintain detailed business books and records unless a creditor or trustee shows that this failure has made it impossible to ascertain the debtor's true financial condition. See In re Yerushalmi, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008); see also In re DeRise, 394 B.R. 677, 688 (Bankr. E.D.N.Y. 2008); In re Moreo, No. 07-71258-dte, 2008 Bankr. LEXIS 3252 at *8 (Bankr. E.D.N.Y. Dec 1, 2008). In determining whether the 2004 Examination is necessary and proper and does not purposefully cause an undue burden or cost on the debtor, an

explanation by Trustee Geltzer on the adequacy of the records provided so far is relevant to determine whether Trustee Geltzer's Rule 2004 subpoena is proper.

3.    However, Debtor's Motion to Quash listed every record which was already given to Trustee Geltzer. The Trustee's Affirmation, nevertheless, failed to address the adequacy of the records given to him. While Trustee's Affirmation also reiterates with great conviction that he gave us a list of records he needed (see ¶¶ 5, 6 of Trustee's Affirmation), the only list he ever gave the Debtor was the list attached to the Rule 2004 subpoena. Debtor's Motion to Quash, however, refers to Trustee Geltzer's failure to provide a list to Debtor prior to the issuance of the Rule 2004 Subpoena, despite the many efforts of Debtor to seek a list. As explained in the Motion to Quash, Trustee Geltzer's inappropriate conduct against Debtor made any efforts to cooperate with him impossible. Any attempt at clarifying the records or information needed for the investigation was met with hostility and condescension.

**II.    Trustee's Affirmation also fails to address Debtor's lack of financial sophistication, education, experience, and personal difficulties, which justify the absence of business books and records.**

4.    A thorough explanation for Debtor's lack of thorough and robust documentation for his business was provided to this Court and the Trustee through a Memorandum of Law filed with this Court on May 5, 2011. (Ex. A.) The memorandum and accompanying affidavit detailed Debtor's education, experiences, and knowledge when he purchased the business, the difficulties he faced while operating it, and his lack of a fraudulent intent. All of these factors are relevant for determining the adequacy of his records and the necessity of a 2004 Examination.

**III.    Trustee Geltzer's Affirmation misrepresents to the Court the information already provided to him regarding the debt to Ji Sun Li.**

5.  While Trustee Geltzer purports to have filed the June 14 Motion for a Rule 2004 Examination, mainly out of concern over the debt paid to Ji Sun Li (see Trustee's Affirmation ¶¶ 17, 18), his subpoena went far beyond any information regarding that specific issue.  Moreover, Trustee's Affirmation fails to address or respond to any of the explanations of the $150,000 loan, which were already provided to him through the affidavit Debtor that was annexed to the memorandum of law filed with this Court on May 5, 2011 and is annexed to this reply as Exhibit A.

6.  Further, Trustee Geltzer had ample opportunity to question the Debtor and his daughter, Song Park, concerning the debt owed to Ji Sun Li and the circumstances surrounding that debt at the first and second § 341 meetings of the creditors, which he neglected to do. Trustee's Affirmation also implies that the Debtor failed to disclose the records and the circumstances surrounding the $150,000 loan to Ji Sun Li even though the Debtor listed Ji Sun Li as a creditor in the original petition and provided her contact information.  (Ex. B, Schedule F.)  Debtor also provided the business contract between Ji Sun Li's business, J.S. Puppy Land, Inc, and S.P. Puppy Love, Inc. with copies of the checks paid to J.S. Puppy Love attached to the contract (Ex. C, Contract with J.S. Puppy Land), and a mortgage table calculator results for the $150,000 loan (Ex. D, Mortgage Table Results). Debtor has been unable to obtain documentation other than what was already given to Trustee Geltzer regarding this loan, but is still actively working to get any further documentation from the attorney who closed the initial contract.

7.  In addition, Trustee Geltzer suggests that the Debtor's failure to initiate an action against Ji Sun Li somehow implies that he is complicit with Ji Sun Li.  (See Trustee's Affirmation, ¶ 10.)  It appears that Trustee Geltzer needs yet another reminder of the

precarious financial and emotional condition of the Debtor and his daughter. Debtor and

his daughter are presently unable to afford rent and both have had to move in with the

daughter's boyfriend. His daughter had also recently given birth, was suicidal, and is

also in the middle of an unnecessarily stressful and contentious bankruptcy proceeding.

(See Ex. A.) We again invite Trustee Geltzer to contact Ji Sun Li for further information

and to subpoena her directly or her bank for her records on this matter.

IV.   **Trustee Geltzer's Affirmation fails to respond to the incidents of inappropriate conduct that warrant his recusal from this case.**

8.   The statute governing the removal of a Trustee only requires showing cause for the

removal and leaves it up to the Courts to determine what qualifies as cause. See In re

Lundborg, 110 B.R. 106 (Bankr. D. Conn. 1990) ("Cause, which is not defined by [§

324(a) of] the Code, must be determined by courts on an ad hoc basis."). While it is true

that the Debtor does not make any allegations of fraud or extreme negligence regarding

this case, Courts recognize that it is in the best interest of the United States Bankruptcy

Court to protect the integrity of proceedings from even a suggestion of impropriety or

bias so as to properly protect the rights and interests of the creditors. See In re Mason, 12

B.R. 318, 319 (Bankr. D. Nev. 1981) ("The Court and the trustees in bankruptcy must be

above suspicion. . . . The trustee in this case and the integrity of the United States

Bankruptcy Court must be protected from any prejudiced suggestion of impropriety");

see also In the matter of Freeport Italian Bakery, Inc., 340 F.2d 50, 55 (2d Cir. 1987) ("If

the administration of estate in bankruptcy would suffer more from the discord created by

the present trustee than would be suffered from a change in administration, the removal

of the trustee is necessarily the better solution"); In re Savoia Macaroni Mfg. Co., 4

F.Supp. 626, 627 (E.D.N.Y. 1933) (court removed trustee rather than delay the

4

administration of the estate by a lengthy inquiry in charges made against and by trustee where the charges at least had "some substance in fact"); In re Baker, 38 B.R. 705, 708-709 (Bankr. D. MD. 1983) (rejecting appeal to remove a trustee because no showing of a desire to combat an unwarranted inference of an improper motive as was the case in In re Mason, 12 B.R. at 319)).

9.  Trustee Geltzer's conduct throughout the present proceeding has been marked with such impropriety and bias that it would be improper to allow Trustee Geltzer to remain as the Trustee administering this case.  In order to preserve the integrity of these proceedings, it is necessary for this Court to use its discretion in removing Trustee Geltzer.  To ensure that both the creditors and the debtors receive a full and fair administration of this case, it is in the best interest the parties that this Court appoint a new Trustee.

10.  Finally, in response to Trustee's Affirmation urging the Court not to "condone this type of harassment" (see Trustee's Affirmation ¶ 31), Debtor respectfully points out that it has been Trustee Geltzer's behavior and conduct toward Debtor that has brought forth this action.  Shouting at Debtor, throwing Debtor's daughter out of the room crying, and calling Debtor's counsel "stupid" on the record in front of a room full of people including the Debtor, his daughter, and Alicia Leonard from the United States Trustee's Office is far from appropriate behavior and should not be condoned by this Court.  Undersigned counsel has never suffered from such harassment and conduct from any other trustee. (See Ex. E, Affirmation of Naresh M. Gehi, Esq.)  Nor has counsel ever sought to remove a Trustee from a proceeding before today; and while it is an extreme remedy, it is one that is necessary and appropriate.  Further, it should be noted that after the first § 341 meeting of the creditors, undersigned counsel has been suffering similar problems with

Trustee Geltzer in other cases, where he subjects them to unduly burdensome discovery. Therefore counsel respectfully requests that Trustee Geltzer be removed from administering those cases as well under 11 U.S.C. § 324(b)[1], which allows this Court to use its discretion in removing a trustee from other cases once the Court has chosen to remove the trustee under 11 U.S.C. § 324(a).

Respectfully submitted,

Dated July 11, 2011                    By: /s/_____

LAW OFFICES OF N.M GEHI, P.C.
Naresh M. Gehi, Esq.
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999
Counsel to Debtor Song Park

---

[1] "Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise."

U.S. BANKRUPTCY COURT                    HEARING DATE: July 14, 2011
EASTERN DISTRICT OF NEW YORK              HEARING TIME: 2:00 p.m.
BROOKLYN DIVISION
--------------------------------------------------------------x    **AFFIDAVIT OF SERVICE**

IN RE                                      :
                                           :
YONGDAE PARK                               :    Chapter 7 Case Nos.
                                           :
                                           :    **1-11-40747-cec**
                                           :
Debtors.                                   :
                                           :
--------------------------------------------------------------x

I, _Naresh Gehi_____, certify that I have served a copy of the attached Reply to
Trustee's Affirmation in Opposition to Debtor's Motion to Quash Trustee's Rule 2004 Subpoena
by mailing it via Federal Express Overnight to the Law Offices of Robert L. Geltzer, whose
address is 1556 Third Avenue, New York, New York 10128, and upon the Office of the United
States Trustee, whose address is the U.S. Department of Justice, U.S. Trustee Program, 33
Whitehall Street, Suite 2100, New York, New York 10004.


Dated: July 11, 2011
Forest Hills, New York


                                    I declare that the statement above is true to
                                    the best of my information, knowledge and
                                    belief.

                                    X_____

Notary_____

                                    **NARESH MENGHRAJ GEHI**
                                    **Notary Public, State of New York**
                                    No. 02GE6063117
                                    Qualified in Nassau County
                                    Commission Expires August 27, 2013


7

# EXHIBIT A

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE                                                         :
                                                             :
**SONG PARK AND YONGDAE PARK**          :   **Chapter 7 Case Nos.**
                                                             :
                                                             :   **1-11-40745-cec, 1-11-40747-cec**
                                                             :
**Debtors.**                                         :
                                                             :   **(Jointly Administered)**
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTOR YONGDAE PARK'S MEMORANDUM OF LAW

LAW OFFICES OF N.M. GEHI, P.C.
Naresh M. Gehi, Esq.
The Pickman Building
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999

Counsel to Debtor Yongdae Park

## FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2011 (the "**Petition Date**"), debtor Yongdae Park ("**Mr. Park**") commenced a voluntary case under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**"). On the same day, Mr. Park's daughter, debtor Song Park ("**Ms. Park**"), also commenced a voluntary chapter 7 action.

As sworn to by Mr. Park in the attached affidavit, the events leading to this action began when Ms. Park purchased a pet grooming business in June 2006. See Exhibit A, Affidavit of Yongdae Park, at paragraph 4. The business was called SP Puppy Love, Inc. Ms. Park was twenty-five years old when she purchased the business and had never bought or managed a business prior to that time. See id. at 5-6. The person who sold the business to Ms. Park was Ji-Sun Lee ("**Ms. Lee**"), who pressured her to purchase the business despite the fact that Ms. Park lacked the financial means to do so. See id. Ms. Lee insisted that Ms. Park buy the business, and Ms. Lee devised a scheme for Ms. Park to secure the financing. See id. The scheme involved making Ms. Park's parents officers of Ms. Lee's own separate business, JS Puppy Land, Inc., and leading them to apply for loans from HSBC, Washington Mutual, and TD Bank. See id.

Ms. Park operated the business to the best of her ability and showed a profit of $973.00 in 2007. See id. at 8. However, she was unable to keep up with the monthly payments owed to Ms. Lee and was only able to make minimum payments toward her father's loans from HSBC and Washington Mutual. See id. at 7. In 2008, Ms. Park incurred losses and her business shut down. See id. at 8.

Ms. Park became so distraught over her inability to pay the debts that she attempted to commit suicide. See id. at 8. Mr. Park leased a different office space and incorporated a new

business, called Parks Doggi Mama, Inc. It has been operating since 2009, although with great difficulty. See id. at 9. Despite Mr. Park's best efforts, his business failed to generate enough revenue to make the payments owed to Ms. Lee, HSBC, and Washington Mutual. See id. at 9. As a result, Ms. Park and Mr. Park felt forced to file for bankruptcy.

A section 341 meeting of creditors was held on March 8, 2011. At that meeting, Trustee Robert L. Geltzer ("**Trustee Geltzer**") requested additional documents from Ms. Park and Mr. Park, and granted them additional time to submit these documents. However, Trustee Geltzer failed to clarify which specific additional documents were required. He did not provide to Mr. Park a complete list of the needed documents. On April 8, 2011, Trustee Geltzer sent Mr. Park's counsel a letter requesting books and records for the business. On April 11, 2011 Mr. Park filed a motion for an extension of time to submit documents. On April 12, 2011, a second section 341 meeting was held. At this meeting, Mr. Park received another extension of time to submit documents.

Mr. Park is now providing a detailed affidavit regarding the businesses involved in the above-captioned cases. See Exhibit A. He is also submitting to Trustee Geltzer bank statements regarding Parks Doggi Mama, Inc.

## ARGUMENT

**I.    MR. PARK'S INABILITY TO PROVIDE FULLY COMPREHENSIVE BOOKS AND RECORDS FOR HIS BUSINESS SHOULD NOT BAR HIM FROM RECEIVING A DISCHARGE.**

Mr. Park should not be barred from receiving a discharge on account of his inability to produce detailed books and records of her business. A debtor may be granted a discharge even if he cannot produce books and records of his business, if he can demonstrate that his lack of books and records is justified. In re Yerushalmi, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008). To

determine whether a debtor's lack of books and records is justified, courts evaluate whether the absence of records is reasonable given the debtor's particular circumstances. In re Underhill, 82 F.2d 258, 259-60 (2d Cir. 1936); Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992). It is a "loose test, concerned with the practical problems of what can be expected of the type of person and type of business involved." Morris Plan Indus. Bank of N.Y. v. Dreher, 144 F.2d 60, 61 (2d Cir. 1944). As discussed below, the education, experiences, and knowledge Mr. Park had, the difficulties he faced, and his lack of a fraudulent intent justify the absence of complete books and records for his business.

### A. MR. PARK'S LACK OF FINANCIAL SOPHISTICATION JUSTIFIES THE ABSENCE OF BUSINESS BOOKS AND RECORDS

In evaluating whether the absence of books and records is justified, key factors to consider are the debtor's education, experience, and sophistication. See In re Moreo, No. 07-71258-dte, 2008 Bankr. LEXIS 3252 (Bankr. E.D.N.Y. Dec. 1, 2008); In re DeRise, 394 B.R. 677, 688 (Bankr. E.D.N.Y. 2008) (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992). To determine a debtor's level of sophistication, courts have considered the debtor's education and knowledge of business affairs. In re Smorto, No. 07-CV-2727 (JFB), 2008 U.S. Dist. LEXIS 19235 (E.D.N.Y. Mar. 12, 2008). In Moreo, the court refused to deny a debtor a discharge for failing to produce books and records for her bagel shop because the debtor only had a high school education, lacked an understanding of proper business accounting, and had no experience apart from working at the shop before she purchased it. 2008 Bankr. LEXIS 3252 at *8. Like the debtor in In re Moreo, Mr. Park had never owned a business before, and he had no business experience. See Exhibit A at 6. Thus, he is an unsophisticated debtor and it is reasonable that he would not know how to maintain detailed business books and records.

11

## B. MR. PARK'S PERSONAL DIFFICULTIES JUSTIFY THE ABSENCE OF BUSINESS BOOKS AND RECORDS

Mr. Park's personal difficulties also justify his inability to produce books and records. In re DeRise, 394 B.R. at 688-89; see also In re Benningfield, 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989) (finding that medical problems arising from an auto accident justified the debtor's failure to maintain records). In In re DeRise, the court found that a debtor's failure to produce accurate business records was reasonable because she was embroiled in a protracted divorce proceeding and was frustrated over her husband's failure to pay child support on a regular basis. 394 B.R. at 688-89. Here, Mr. Park tried desperately to help his daughter financially with a business that struggled so much that it drove her to attempted suicide. See Exhibit A at 8. Given the stress involved in suddenly being required to assume such responsibilities to assist an ailing family member, Mr. Park cannot reasonably have been expected to maintain comprehensive business records for his own separate business.

## C. MR. PARK'S LACK OF FRAUDULENT INTENT JUSTIFIES THE ABSENCE OF BUSINESS BOOKS AND RECORDS

Mr. Park's inability to maintain comprehensive books and records of his business should not bar his discharge because he was not motivated by an intent to defraud his creditors. Failure to produce business books and records only requires a denial of discharge where the failure results from the debtor's intent to defraud his creditors. Moreo, 2008 Bankr. LEXIS at *8. Case law clearly establishes that a debtor's lack of sophistication tends to "negate the existence of fraudulent intent." Id. (quoting Smorto, 2008 U.S. Dist. LEXIS at *13-15); see also In re Olshan,

312 B.R. 476, 488 (Bankr. E.D.N.Y. 2004). Here, Mr. Park's failure to maintain books and records resulted from his lack of financial sophistication and business experience, not from fraudulent intent. See Exhibit A at 6-7.

## I.    TRUSTEE GELTZER SHOULD CONSIDER ALL THE DOCUMENTS AND TESTIMONY PRODUCED BY MR. PARK TO ASSESS THE ADEQUACY OF HIS RECORDS.

Courts have repeatedly held that a debtor need not justify failure to maintain detailed business books and records unless the creditor or trustee shows that this failure has made it impossible to ascertain the debtor's true financial condition. Yerushalmi, 393 B.R. at 297; DeRise, 394 B.R. at 688; Moreo, 2008 Bankr. LEXIS at *8. To evaluate whether the debtor's financial condition can be ascertained and whether a debtor's inability to produce books and records is justified, courts typically consider all records produced by the debtor, and the debtor's testimony. See DeRise, 394 B.R. at 688-89 (Denial of discharge refused because "[I]nconsistencies, omissions, or misrepresentations between [the debtor's] complete Schedules and her SOFA were largely reconciled by her testimony at the November 2006 trial and an integrated reading of her bankruptcy papers"). Courts have refused a denial of discharge where the trustee is able to proceed with the bankruptcy by evaluating the documents produced. See, e.g. DeRise, 394 B.R. at 684. In light of the approach preferred by the courts, Trustee Geltzer has an obligation to consider Mr. Park's testimony, Ms. Park's testimony, and all the documents they have produced to determine whether the information provided will enable the continuation of the bankruptcy process.

Mr. Park has made every effort to cooperate with Trustee Geltzer. He appeared at both section 341 meetings. He provided Trustee Geltzer with documents including a copy of his

certificate of counseling, copies of his personal and business tax returns for 2009, bank statements for his current account and his closed account, his affidavit of self-employment, and proof of title, insurance and value for his motor vehicle. He is also now providing business bank statements for Parks Doggi Mama, Inc. In addition, he is providing a detailed affidavit containing relevant facts. As Mr. Park is an unsophisticated debtor who cannot reasonably have been expected to maintain comprehensive books and records, Trustee Geltzer should evaluate the information he has provided to determine whether it is sufficient to proceed with the bankruptcy.

## CONCLUSION

For all the foregoing reasons, Mr. Park's inability to produce detailed business books and records should not bar him from receiving a discharge.

LAW OFFICES OF N.M. GEHI, P.C.
Naresh M. Gehi, Esq.
The Pickman Building
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999

Counsel to Debtor Yongdae Park

# EXHIBIT A

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN RE                                          :
                                               :
SONG PARK AND YONGDAE PARK         :    **Chapter 7 Case Nos.**
                                               :
                                               :    **1-11-40745-cec, 1-11-40747-cec**
                                               :
Debtors.                                     :
                                               :    **(Jointly Administered)**
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF YONGDAE PARK

I, Yongdae Park, duly sworn, depose and state under the penalty of perjury:

1. I am a debtor in chapter 7 case number 1-11-40747.

2. There have been two section 341 meetings in my chapter 7 case, one on March 8, 2011 and the second on April 12, 2011.

3. I am submitting this affidavit to provide supporting details regarding the business that my daughter used to own, called SP Puppy Love, Inc., as well as the business that I own, called Parks Doggi Mama, Inc.

4. In June 2006 a business called JS Puppy Land, Inc. transferred its pet supplies, grooming business inventory, and stock to my daughter's business, SP Puppy Love, Inc. The president and sole owner of JS Puppy Land, Inc. was Ms. Ji-Sun Lee.   The purchase price was $250,000.00.

5. At the closing, my wife Soon Kong Park and I made two separate payments, one for $40,000.00 in cash and another for $60,000.00 by check. Both payments were made to Ji-Sun Lee as a representative for JS Puppy Land, Inc.

6. My daughter was only 25 years old at the time and had never bought a business or had enough funds to purchase a business, and Ji-Sun Lee pressured our family into a plan to obtain the finances. Ms. Lee pressured me to become an officer of JS Puppy Land so that I

17

could obtain bank loans under the name of JS Puppy Land and then use the loan money to develop SP Puppy Love. In addition, Ji-Sun Lee pressured my wife to become an officer of JS Puppy Land in order to obtain a $50,000.00 loan from TD Bank for the development of SP Puppy Love. My whole family felt forced into this arrangement by Ji-Sun Lee, and we believed that there was nothing else we could do.

7.  The purchase agreement provides for an owner mortgage in the amount of $150,000.00 that SP Puppy Love would owe to JS Puppy Land. My wife, my daughter, and I ensured that monthly payments were made to Ji-Sun Lee as a representative of JS Puppy Land. My daughter worked long hours and tried to continue monthly payments to Ji-Sun Lee in the amount of $3,500.00 in accordance with agreement. After the first year, we were not able to keep up with the monthly payments of $3,500.00 to Ji-Sun Lee. My daughter Song started making reduced monthly payments of $500.00 to her for another year. Additionally, during that same year Song made minimum monthly payments to HSBC and Washington Mutual to help pay off the loans that I had obtained. My wife used money she had received from her mother's will to pay off the $50,000.00 TD Bank loan over the course of two years of monthly payments.

8.  Song tried her very best to run SP Puppy Love, and in the first year she made a small profit of $973.00. However in the second year, July 1, 2007 through June 30, 2008, she started incurring serious losses and suffered a net loss of $481.00, as shown in business records she submitted to the trustee. As also shown in business records submitted to the trustee, from July 1, 2008 through September 2008, when the business stopped operating, there was a net loss of $544.00. As a result of this, she was unable to continue running the business. She was so distraught that she tried to commit suicide due to the pressure and the losses she was sustaining.

9.  Since she closed down the business, the owner of the business next door to her, a veterinarian, was very sad to see her situation and its impact on our family. He offered to

sublet his office space to me, and I began operating a pet grooming business in that space. Upon the advice of an accountant, I incorporated my business. The corporation is called Parks Doggi Mama, Inc. It was incorporated in September 2009 and continues to operate currently, although with great difficulty. For example, as shown in some of the business records I submitted to the trustee, from September 21, 2009 through August 31, 2010, the business suffered a net loss of $2,024.00.

10. Our entire family has lost a great deal in our attempts to keep our businesses afloat.

11. At this stage, my family and I cannot even afford to pay rent for an apartment, and we are being helped by my daughter's boyfriend Douglas Gray, who has been extremely kind to accommodate us during the worst financial time of our lives.

As demonstrated above, I am offering everything I can provide in response to the Trustee's request.

Respectfully,

Sworn to before me this 21st day of April, 2011.

_____
Yongdae Park

_____
Notary Public

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

19

EXHIBIT B

B6F (Official Form 6F) (12/07)

In re    **Yongdae Park**                                              Case No.    **1-11-40747**
                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | Codebtor | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | Contingent | Unliquidated | Disputed | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 9188065370<br><br>Chase<br>Po Box 6004<br>Ridgeland, MS 39158 | - | | Opened 8/12/08 Last Active 12/01/08<br>Educational | | | | 35,437.00 |
| Account No. 540168301591<br><br>Chase<br>Po Box 15298<br>Wilmington, DE 19850 | | | Opened 3/25/01 Last Active 12/01/10<br>CreditCard | | | | 8,093.00 |
| Account No. 426684118747<br><br>Chase<br>Po Box 15298<br>Wilmington, DE 19850 | | | Opened 8/14/08 Last Active 1/01/11<br>CreditCard | | | | 2,244.00 |
| Account No. 9188092525<br><br>Citibank<br>Po Box 22828<br>Rochester, NY 14692 | - | | Opened 3/10/07 Last Active 12/29/10<br>Educational | | | | 46,453.00 |
| | | | Subtotal<br>(Total of this page) | | | | 92,227.00 |

**2**  continuation sheets attached

B6F (Official Form 6F) (12/07) - Cont.

In re  **Yongdae Park**                                      Case No. **1-11-40747**
_____,
                        Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **CH339816-CR**  Credit One LLC PO Box 605 Metairie, LA 70004 | | - | Business loan | | | | 26,000.00 |
| Account No. **CH339816**  Creditone Llc (Original Creditor:Ch Po Box 625 Metairie, LA 70004 | | - | Opened 4/03/10 Last Active 1/01/11 FactoringCompanyAccount Chase Bank | | | | 19,373.00 |
| Account No. **F1000000640405056**  Federated Fin Corp Of (Original Cre 30955 Northwestern Hwy Farmington Hills, MI 48334 | | - | Opened 7/12/08 Last Active 8/01/08 FactoringCompanyAccount Advanta 64 | | | | 5,723.00 |
| Account No. **9941451529**  Hsbc Bank Usa PO Box 37278 Baltimore, MD 21297 | | - | 2006 Business loan | | | | 50,000.00 |
| Account No. **5474-7837-0208-1636**  Hsbc Bank Usa PO Box 37278 Baltimore, MD 21297 | | - | Business Credit Card | | | | 5,500.00 |

Sheet no. __1__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          106,596.00

B6F (Official Form 6F) (12/07) - Cont.

In re    **Yongdae Park**                                          Case No.    **1-11-40747**
_____
                                 Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. **Yong D Park** | | | | | **Owner Mortgage for Business** | | | | |
| Ji Sun Lee 2980 Blackstock drive Cumming, GA 30041 | - | | | | | | | | 150,000.00 |
| Account No. **6043090167PA00001** | | | | | **Opened 9/14/06 Last Active 12/21/10 Educational** | | | | |
| Natl Coleg 1200 North 7th Street Harrisburg, PA 17102 | - | | | | | | | | 38,509.00 |
| Account No. **0718289267** | | | | | **Business credit card** | | | | |
| Wash Mutual/Providian Po Box 9180 Pleasanton, CA 94566 | - | | | | | | | | 2,400.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | | 190,909.00 |
| Total (Report on Summary of Schedules) | | 389,732.00 |

# EXHIBIT C

AGREEMENT, made the      day of **June**, **2006**, in the State of New York
between       **JS Puppy Land, Inc.**

whose address is     **45-10 Parsons Blvd.**
                **Flushing, NY 11355**

                                                     hereinafter called the Transferor, and
~~Yong Dae Park~~ *SP Puppy Love, Inc.*

whose address is     **36-25 Parsons Blvd.**
                **Flushing, NY 11354**

                                                   hereinafter called the Transferee.

**SUBJECT MATTER OF SALE**

1. The Transferor agrees to sell to the Transferee and the Transferee agrees to buy the following described business:

         **Pet Supply & Grooming**

located at      **45-10 Parsons Blvd., Flushing, NY 11355**

*Inventory/stock*

including the stock in trade, fixtures, equipment, accounts receivable, contract rights, lease, good will, licenses, rights under any contract for telephone service or other rental, maintenance or use of equipment, machinery and fixtures at the said premises, more particularly described in Schedule A hereto attached, free and clear of any debts, mortgages, security interests or other liens or encumbrances except as herein stated. Title shall be closed on the      day of

**closing date**                 at           M at the office of

**PURCHASE PRICE TERMS OF PAYMENT**

2. The purchase price to be paid by the Transferee is     *210,000.00*
                                                         $~~250,000.00~~

3. The terms of payment are as follows:
      Upon execution of this agreement
         By cash or certified check, receipt of which is hereby acknowledged     *60,000.00*
                                                                $~~100,000.00~~

      Upon execution and delivery of Bill of Sale
         By cash or certified check                                            $~~150,000.00~~

      By execution and delivery of    promissory note     of the following tenor, to be secured by a security interest in the goods and chattels and all other personal property mentioned in Schedule A hereof and all other personal property, goods and chattels thereafter acquired used in connection with the aforesaid business, together with all proceeds thereof and all increases, substitutions, replacements, additions and accessions thereto.      $ *150,000.00*

      Transferee agrees to perfect such security interest by executing and delivering to Transferor a Security Agreement and a Financing Statement, in accordance with the provisions of the Uniform Commercial Code, and all other instruments or documents as may be required by the Transferor. The filing fees thereof shall be paid by the Transferee.

| | |
|---|---|
| rent<br>assumption<br>security | The rent during such term shall not exceed $              per month.<br>Transferee shall assume full performance of the existing lease, if assigned.<br>Security in the sum of $              now held by the landlord under the existing lease, is hereby added to the amount of the purchase price and is to be paid to the Transferor by the Transferee at the closing, less any valid set-off or counterclaim asserted by the landlord. Transferor shall also assign and transfer to the Transferee all of the Transferor's right, title and interest in said security. Any default on the part of the Transferor with respect to the provisions of this paragraph shall forthwith entitle the Transferee to repayment in full, on demand, of any deposit or payment on account hereunder. |
| LIQUIDATED<br>DAMAGES | 12. Any willful, capricious or other inexcusable default hereunder on the part of either party shall entitle the aggrieved party to the sum of $              as liquidated damages for breach of this contract in addition to repayment in full of any sum paid hereunder as aforesaid, said amount being hereby agreed upon by reason of the difficulty in reducing the exact damages actually sustained to a mathematical certainty. |
| BROKER | 13. The parties agree that              *None*<br>of No. |
| commission | is the only broker who brought about this sale. The Transferor shall pay to the Broker when and if title closes a commission at the rate of              per cent of the purchase price. |
| WARRANTIES<br>SURVIVE | 14. The warranties and covenants contained herein shall survive the Bill of Sale and become a part thereof and continue in full force as though set forth at length therein: |
| PRIOR<br>NAMES AND<br>ADDRESS | 15. Transferor represents that Transferor has not used any other business names and/or addresses within the three years last past except as follows:<br><br>    Mama's & Papa's |
| DEFINITION<br>OF GOODS<br>CAPTIONS | 16. The term "goods" as defined and used in the Uniform Commercial Code shall apply to this agreement.<br><br>17. The captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe scope of this agreement nor the intent of any provision thereof. |

The terms, warranties and agreements herein contained shall bind and inure to the benefit of the respective parties hereto, and their respective legal representatives, successors and assigns.

The gender and number used in this agreement are used as a reference term only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural.

This agreement may not be changed orally.

IN WITNESS WHEREOF, the Parties have respectively signed and sealed these presents the day and year first above written.

Seller
JS Puppy Land, Inc.

By: Ji-Sun Lee, President

Purchaser

_____    _____
                Broker       Yong Dae Park

*Purchaser*
*SP Puppy Love, Inc.*

*By: Song Park, President*

24

By taking title subject to and assuming payment of the sum of                      $
secured by a
now a lien affecting the business and assets or a portion thereof and paying
same according to the terms thereof.

**ADJUSTMENT**

4. At the closing the following adjustments shall be made: rents, insurance premiums, taxes, electricity, gas, fuel, water, interest on mortgages or other liens.

**GUARANTY AS TO RECEIPTS**

5. Transferor represents that the gross weekly receipts (for a week of _____ business days) of the business, for the past _____ weeks averaged the sum of $ _____ per week, and hereby guarantees that the gross receipts for the period from _____ M., to _____ M: _____ will aggregate at least the sum of $

**TRIAL PERIOD**

6. The aforesaid period shall be deemed the trial period during which full opportunity shall be afford the Transferee or representatives to keep tally of said gross receipts, and in the event the total of said gross receipts for said period is less than the guaranteed sum, the Transferee shall be repaid in full amount of deposit or payment on account hereunder, on demand. The Transferee shall not be deemed to have taken possession during this trial period.

**CREDITORS LIST**

7. Transferor shall furnish Transferee with a list of Transferor's existing creditors, containing the names and business addresses of all creditors of the Transferor, with the amounts owed to each and also the names of all persons who are known to the Transferor to assert claims against the Transferor even though such claims are disputed. Such list shall be signed and sworn to or affirmed by the Transferor or his agent and, unless such list is appended hereto, it shall be delivered to Transferee at least 15 days before the closing date; provided that if Transferee takes possession of the goods or pays for them before that date such list shall be furnished at least 15 days before the happening of either event.

**PRESERVATI-ON OF LIST AND SCHEDUEL**

8. Transferee shall preserve the list of creditors aforementioned as well as the schedule of property (Schedule A hereof) for a period of 6 months next following the date of transfer of title and shall permit inspection of either or both and copying therefrom at all reasonable hours by any creditor of the Transferor; in lieu thereof, Transferee may file such list and schedule in the Office of the Secretary (Department) of State.

**NOTICE TO CREDITORS**

9. Transferee shall give notice to creditors of the transfer at least 10 days before taking possession of the goods or paying for them, whichever happens first. Notice shall be given in the form and manner as provided in the Uniform Commercial Code.

**RESTRICTIVE COVENANT**

10. The bill of sale shall contain a covenant by the Transferor and all other persons heretofore active in the said business or in any way interested therein with the Transferor, not to reestablish, re-open, be engaged in, nor in any manner whatsoever become interested, directly or indirectly, either as employee, as owner, as partner, as agent, or as stockholder, director or officer of a corporation or otherwise, in any business, trade or occupation similar to the one hereby agreed to be sold, within the area bounded.

northerly by...............................................................................................................

southerly by...............................................................................................................

easterly by...*Ten* ( *10* ) miles in radius.....................................................................

and westerly by...............................................................................................................

for a term of...*Five* ( *5* )........... Years from the closing date.

**LEASE**

11. Transferor further agrees, at the time of closing, to assign and transfer as part of this sale the existing lease or to execute and deliver, or to procure the execution and delivery, to the Transferee of a new lease or an extension of the term of the existing lease, covering the premises used in connection with said business and providing for a

**term**

continuous term which shall expire on the _____ day of _____

25

098

1-108/210

08/09/2006
DATE

PAY TO THE
ORDER OF    Js Puppy land    $ 20,000

Twenty    Thousand    only    DOLLARS

**HSBC**
HSBC Bank USA, N.A.

FOR

⑆021001088⑆06496000 5⑈ 0098

---

097

1-108/210

08/09/2006
Date

Pay to the
Order of    Js Puppy Land    $ 40,000.-

Fourty Thousand Only    Dollars

**HSBC**
HSBC Bank USA, N.A.

For

⑆021001088⑆06496000 5⑈ 0097

---

55-7272/212

95

Date 08/09/2006

PAY    Js Puppy Land Inc.    $ 10,940

to the order of    Ten Thousand Nine Hundred Fourty    Dollars

**Washington Mutual**
Washington Mutual Bank, FA
Murray Hill-Northern Blvd Financial Ctr 7383
156-10 Northern Boulevard
Flushing, NY 11354
1-800-788-7000
24 hour Customer Service

Memo

⑆021272723⑆ 311010561⑈ 0095

---

099

1-108/210

08/09/2006    Date

Pay to
the order of    Js Puppy land    $ 1531.59

Fifteen Thirdty One    59/100    Dollar

**HSBC**
HSBC Bank USA, N.A.

For

⑆021001088⑆06496000 5⑈ 0099

26

# EXHIBIT D

Aug 10 2007 13:35      HP LASERJET FAX

P.11

# Mortgage Table Calculator Results

The monthly payment for a mortgage of $150000.00 at 6.0000%
over 4 years is $3522.75.
The mortgage payments and remaining balances look like:

**Year 1**

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 150000.00 | 750.00 | 2772.75 | 750.00 |
| 2 | 147227.25 | 736.14 | 2786.62 | 1486.14 |
| 3 | 144440.63 | 722.20 | 2800.55 | 2208.34 |
| 4 | 141640.08 | 708.20 | 2814.55 | 2916.54 |
| 5 | 138825.52 | 694.13 | 2828.63 | 3610.67 |
| 6 | 135996.90 | 679.98 | 2842.77 | 4290.65 |
| 7 | 133154.13 | 665.77 | 2856.98 | 4956.42 |
| 8 | 130297.14 | 651.49 | 2871.27 | 5607.91 |
| 9 | 127425.87 | 637.13 | 2885.62 | 6245.04 |
| 10 | 124540.25 | 622.70 | 2900.05 | 6867.74 |
| 11 | 121640.20 | 608.20 | 2914.55 | 7475.94 |
| 12 | 118725.64 | 593.63 | 2929.13 | 8069.57 |

**Year 2**

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 115796.52 | 578.98 | 2943.77 | 8648.55 |
| 2 | 112852.74 | 564.26 | 2958.49 | 9212.81 |
| 3 | 109894.25 | 549.47 | 2973.28 | 9762.29 |
| 4 | 106920.97 | 534.60 | 2988.15 | 10296.89 |
| 5 | 103932.82 | 519.66 | 3003.09 | 10816.55 |
| 6 | 100929.73 | 504.65 | 3018.11 | 11321.20 |
| 7 | 97911.62 | 489.56 | 3033.20 | 11810.76 |
| 8 | 94878.43 | 474.39 | 3048.36 | 12285.15 |
| 9 | 91830.07 | 459.15 | 3063.60 | 12744.30 |
| 10 | 88766.46 | 443.83 | 3078.92 | 13188.14 |
| 11 | 85687.54 | 428.44 | 3094.32 | 13616.57 |
| 12 | 82593.22 | 412.97 | 3109.79 | 14029.54 |

**Year 3**

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 79483.44 | 397.42 | 3125.34 | 14426.96 |
| 2 | 76358.10 | 381.79 | 3140.96 | 14808.75 |
| 3 | 73217.13 | 366.09 | 3156.67 | 15174.83 |
| 4 | 70060.47 | 350.30 | 3172.45 | 15525.14 |
| 5 | 66888.01 | 334.44 | 3188.31 | 15859.58 |
| 6 | 63699.70 | 318.50 | 3204.26 | 16178.07 |
| 7 | 60495.44 | 302.48 | 3220.28 | 16480.55 |
| 8 | 57275.17 | 286.38 | 3236.38 | 16766.93 |
| 9 | 54038.79 | 270.19 | 3252.56 | 17037.12 |
| 10 | 50786.23 | 253.93 | 3268.82 | 17291.05 |
| 11 | 47517.40 | 237.59 | 3285.17 | 17528.64 |
| 12 | 44232.24 | 221.16 | 3301.59 | 17749.80 |

**Year 4**

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 40930.64 | 204.65 | 3318.10 | 17954.45 |
| 2 | 37612.54 | 188.06 | 3334.69 | 18142.52 |
| 3 | 34277.85 | 171.39 | 3351.37 | 18313.91 |
| 4 | 30926.49 | 154.63 | 3368.12 | 18468.54 |
| 5 | 27558.36 | 137.79 | 3384.96 | 18606.33 |
| 6 | 24173.40 | 120.87 | 3401.89 | 18727.20 |
| 7 | 20771.51 | 103.86 | 3418.90 | 18831.05 |
| 8 | 17352.62 | 86.76 | 3435.99 | 18917.82 |
| 9 | 13916.63 | 69.58 | 3453.17 | 18987.40 |
| 10 | 10463.45 | 52.32 | 3470.44 | 19039.72 |
| 11 | 6993.02 | 34.97 | 3487.79 | 19074.68 |
| 12 | 3505.23 | 17.53 | 3505.23 | 19092.21 |

Total interest paid: $ 19092.21

27

EXHIBIT E

U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
-----------------------------------------------------------x
IN RE                                              :
                                                   :
YONGDAE PARK                                       :
                                                   :
                                                   :
                                                   :
Debtor.                                            :
                                                   :
-----------------------------------------------------------x

HEARING DATE: July 14, 2011
HEARING TIME: 2:00 p.m.

AFFIRMATION OF NARESH M.
GEHI

Chapter 7 Case No.

1-11-40747-cec

TO: THE HONORABLE CARLA E. CRAIG,
      CHIEF UNITED STATES BANKRUPTCY JUDGE:

I am attorney duly admitted to practice before all the Courts of the State of New York, Connecticut, and the Federal District Court and Bankruptcy Courts in the Southern and Eastern Districts of New York, and affirm under penalty of perjury the following to be true based on my information and belief:

1.     Your Honor, I have been a lawyer since 1993. Aside from Trustee Geltzer, no one has ever treated me, my clients, and my staff with such disrespect. Trustee Geltzer has blatantly disregarded the "basic rules of ethics in the profession" by openly using words such as "stupid" against me on the record and in front of numerous individuals in the court room. Additionally, he has made references to "my website," which has no connection with the facts and circumstances of this case. He has threatened my firm with sanctions, told my clients to seek a full refund of legal fees, and has sought to tarnish my reputation before my clients. He has thrown files at my associate with complete disregard to the Disciplinary rules.

28

2.  Assuming arguendo that my statements are incorrect, I beg your honor to carefully listen to the two original tapes of the two § 341 meeting with the creditors and your honor will clearly understand the severe, debilitating, extreme, and outrageous conduct, which Trustee Geltzer has directed against me, my clients, and my associate Monica Ahmad.

3.  My clients are petrified of appearing before Trustee Geltzer because of their past experiences with him. It is also impossible for me to work with Trustee Geltzer who has a problem with my accent. I have never had a problem dealing with attorneys and judges in connection with my accent. I respectfully urge your Honor to direct Trustee Geltzer not to treat any human being in the manner in which he has treated my clients, my staff, and me in this matter.

Respectfully submitted,

Dated July 11, 2011                    By: /s/_____

LAW OFFICES OF N.M GEHI, P.C.
Naresh M. Gehi, Esq.
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999