Page 1

1  UNITED STATES BANKRUPTCY COURT

2  EASTERN DISTRICT OF NEW YORK

3  Case No. 1-11-46867 -cec

4  Adv. Case No.  1-12-01343-cec

5  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6  In the Matter of:

7

8  MAN KIT NG,

9

10         Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13  ROBERT L. GELTZER, TRUSTEE

14         Plaintiff

15  vs.

16  MAN KIT NG

17         Defendant

18  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20            U.S. Bankruptcy Court

21            271-C Cadman Plaza East

22            Brooklyn, New York

23

24            February 3, 2014

25            10:22 AM

1

2  B E F O R E :

3  HON. CHIEF JUDGE CARLA E. CRAIG

4  U.S. BANKRUPTCY JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   HEARING RE:   [1] Complaint by Robert L. Geltzer against Man

2   Kit Ng -  Nature(s) of Suit: (41 Objection/revocation of

3   discharge - 727(c), (d), (e).

4

5   HEARING RE:  [25} Motion for Sanctions Under USC 28 Section

6   1927 Attorney Liability for Excessive Costs.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Pamela Skaw

1    A P P E A R A N C E S :

2    DAHIYA LAW OFFICES, LLC

3         Attorneys for

4         75 Maiden Lane, Suite 506

5         New York, NY 10038

6

7    BY:  KARAMVIR DAHIYA, ESQ.

8         NAVPREET KAUR, ESQ.

9

10

11   LAW OFFICES OF ROBERT L. GELTZER

12        Trustee of Estate of Man Kit Ng

13        1556 Third Avenue, Suite 505

14        New York, NY 10128

15

16   BY:  ROBERT L. GELTZER, ESQ.

17        MARK E. BRUH, ESQ.

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            THE CLERK:  Calling adversary 12-1343, Geltzer

 3     versus Ng.

 4        (Pause.)

 5            THE COURT:  Do you have a pen?

 6            THE CLERK:  Appearances, please.

 7            MR. GELTZER:  I'm Robert L. --

 8            THE COURT:  Thank you.

 9            MR. GELTZER: -- Geltzer, trustee.  I'm here with

10     my associate, Mark Bruh.

11            MR. BRUH:  Good morning, Your Honor.

12            MR. DAHIYA:  Good morning, Judge.  Karamvir Dahiya

13     appearing for Man Kit Ng and I'm with my colleague,

14     Ms. Navpreet Kaur.

15            MS. KAUR:  Good morning, Your Honor.

16            THE COURT:  Good morning.

17            MR. GELTZER:  Good morning, Your Honor.  Your

18     Honor, this case was filed August 9, 2011, so it's two and a

19     half years later.  About eight hearings in, I've incurred

20     approximately $37,333 of time, excluding today, and why are

21     we here today?  We're here today because Mr. Dahiya is

22     opposing a dismissal that I'm trying to effectuate of an

23     adversary proceeding against his client.

24            Now, when we were here on Wednesday, when

25     Mr. Dahiya again failed to appear, Your Honor asked, well,
```

1    is this sanctionable conduct of Dahiya or did this have to

2    do with his client?

3              THE COURT:  Okay, well --

4              MR. GELTZER:  And I --

5              THE COURT:  -- let's -- Okay.  Mr. Geltzer, I

6    think we need to get very specific about what it is you

7    think specifically, specific acts that you think warrant or

8    would justify the imposition of sanctions under 1927, which,

9    as you know, are committed to my discretion.

10             MR. GELTZER:  I understand, Your Honor.  And

11   that's just what I was going to do and --

12             THE COURT:  You're going -- you're asking me to

13   extend myself to exercise my discretion for your benefit.

14             MR. GELTZER:  I am, Your Honor, and I must --

15             THE COURT:  And don't just pile a bunch of facts

16   up and say, okay, just look through that, and somewhere in

17   there, there'll be justification.  I need specifics here.

18             MR. GELTZER:  I'm going to go through them

19   chronologically, one by one, Your Honor.

20             THE COURT:  Okay.

21             MR. GELTZER:  That's just what I was going to do.

22   And, I might add, Your Honor, that my asking for sanctions,

23   I don't, in any way, feel it's only for my benefit.  I feel

24   it's for the benefit of the system.

25             All right.  When this case, when Mr. Dahiya filed

1    his case August 9, 2011, there was a deficient filing.  He

2    didn't file pay stubs.  That's not his client's fault.  He's

3    supposed to know that.  On --

4           THE COURT:  Okay.  Is that sanctionable under

5    1927?

6           MR. GELTZER:  Your Honor, I think you have to look

7    at this in that what precipitated this motion was his

8    opposition to my --

9           THE COURT:  Okay.  But he wants --

10           MR. GELTZER:  Judge, please let me --

11           THE COURT:  -- the case to be -- he wants the case

12    to be dismissed with prejudice, I think, is what is -- so

13    unless you're telling me that when a -- in the circumstances

14    like this, when the plaintiff seeks to dismiss a case

15    without prejudice, that it's -- it is sanctionable conduct

16    to seek a dismissal with prejudice, then I don't see how

17    you're talking about sanctions here.

18           MR. GELTZER:  Judge, if you'll just let me finish

19    a thought here or there, I think I can get to that.

20           THE COURT:  I -- I am very familiar with the

21    record in this case.  Trust me.  Very familiar.

22           MR. GELTZER:  Judge, the motion for sanctions was

23    made because of a refusal to accept the dismissal.  Had he

24    called, even, and said, I want a dismissal with prejudice --

25           THE COURT:  You think --

1            MR. GELTZER:  I -- Judge, I --

2            THE COURT:  -- so you're telling me that is

3    sanctionable conduct?

4            MR. GELTZER:  -- really have --

5            THE COURT:  You're telling me that's sanctionable?

6            MR. GELTZER:  Judge, if you would just let me

7    finish one sentence, I think I can make my point.  All

8    right?  That's why we brought the sanctions motions.  But

9    when you bring the sanctions motions, then you have to look

10   backwards to that entire course of conduct.  It's not just

11   the one act.  It's a course of conducts because there are

12   four elements.  There's the multiplication of proceedings.

13   There's acting exatiously, acting in bad faith, multiplying

14   proceedings -- so you have to look backwards.  That was the

15   trigger and that's why we're looking backwards and that's

16   why I wanted -- I was going to be very specific to try to

17   respond to your question of Wednesday.

18           THE COURT:  All right.  Well --

19           MR. GELTZER:  I know you're familiar --

20           THE COURT:  Okay, Mr. --

21           MR. GELTZER:  -- with the record.

22           THE COURT:  Mr. Geltzer, let me just tell you

23   where -- let me just see if I can shortcut this.

24           I do not see this as a case for sanctions and I do

25   not think that this is an opinion that you want me to write

1    or that Mr. Dahiya would want me to write.  I don't think

2    anyone wants to see a written opinion on this.  So I would

3    say -- I would consider settling this by dismissing the case

4    and walking away from this.  That would be my strong

5    suggestion.

6            MR. GELTZER:  Judge, you know, obviously, and I'd

7    have to say you could do whatever you like.  I have no

8    problem in an opinion.  I see --

9            THE COURT:  You may have a problem with the

10   opinion that I'm going -- that I would write if I wrote an

11   opinion on this.  You might not like to see what I'm -- what

12   I would write.

13           MR. GELTZER:  Judge, what do you -- I -- you know,

14   because this is -- I don't know how you want me to respond,

15   Judge.

16           THE COURT:  I would like you to --

17           MR. GELTZER:  I'm here for eight times for a

18   hearing for a man who, in terms of, did not -- refused to

19   come to hearings, did not make documents available, told his

20   client not to testify, didn't file the papers he was

21   supposed to file and you're telling me that I might not like

22   -- as soon as we got the documents, or some of them, we

23   brought -- we submitted our dismissal.  If he wanted it

24   without prejudice, I really don't care -- with prejudice, I

25   don't care.  He could have called.  Instead, what does he

1    do?  He sends a letter that says, I'm not going to dismiss

2    this.  I'm going to fight it.

3              THE COURT:  Well, what --

4              MR. GELTZER:  If you're familiar with --

5              THE COURT:  But what do you think --

6              MR. GELTZER:  -- the whole record, then you know

7    that.

8              THE COURT:  But what do you think that means?

9    What do you think that means?  He's -- it means that he --

10   it means that he wants to have the case dismissed with

11   prejudice, obviously.  Right?  Isn't -- don't -- didn't you

12   understand it in that fashion?

13             MR. GELTZER:  No, Your Honor, I didn't understand

14   it in that fashion.  It's -- that's not the fashion in which

15   it was intended at all.

16             THE COURT:  But, in other words, you think he

17   wanted to go to trial, even if you were prepared to dismiss

18   it with prejudice?  You think that?

19             MR. GELTZER:  At some point in time, I think

20   that's exactly it and that was what he wrote on June -- I

21   can give you the date.  But I don't have to because you said

22   you're familiar with the whole record, so I'm sure you know

23   the date, of his statement that he's not going to dismiss it

24   -- not going to agree with it and he's going to fight it.

25             So, is there anything you'd like to hear from me?

1    I mean, I don't know why I'm even here if that's --

2            THE COURT:  I guess you can best answer that

3    question.  But, you know, if you're going to -- what I would

4    suggest is that you guys take a moment and see if you can

5    work this out.  That's what I would suggest.  And if you

6    can't work it out, or don't want to, I'll -- we'll have -- I

7    have the better part of the day --

8            MR. GELTZER:  So do i.

9            THE COURT:  -- and I'll listen to you.  That would

10    be my strong --

11            MR. GELTZER:  If the Court wants --

12            THE COURT:  -- suggestion.

13            MR. GELTZER:  -- to dismiss with prejudice, I'm

14    glad to dismiss it with prejudice.  I -- when I got the

15    documents, sparse though they were, within a matter of days

16    after it took two, over two years, I submitted a dismissal.

17    Okay?  This could have been an easy case.  Okay?  It only

18    was difficult because of Mr. Dahiya.

19            THE COURT:  But --

20            MR. GELTZER:  The client isn't supposed know those

21    things.

22            THE COURT:  But the thing is --

23            MR. GELTZER:  I say, fine.  Whatever the Court

24    would like.

25            THE COURT:  Okay.  You want --

1          MR. GELTZER:  Thank you.

2          THE COURT:  Are you going to take a minute?

3          MR. GELTZER:  I beg your pardon?

4          THE COURT:  Do you want to take a minute to talk

5     to Mr. Dahiya?

6          MR. GELTZER:  Well, if I'm going to dismiss it

7     with prejudice, what are we going to talk about?

8          THE COURT:  All right.  Are you prepared to go

9     along with that, Mr. Dahiya?

10          MR. DAHIYA:  That's fine, Judge.

11          THE COURT:  Okay.

12          MR. DAHIYA:  That's fine, Mr. Geltzer.

13          MR. GELTZER:  Thank you very much.

14          MR. DAHIYA:  Thank you.

15          THE COURT:  Okay.  Thank you.

16          THE CLERK:  All rise.

17     (Recess - 10:31; Resumed 2:03 by Telephone Conference)

18          THE CLERK:  Parties on with the Judge on case of

19     Geltzer versus Ng.

20          THE COURT:  Thank you both for making yourselves

21     available.  I felt that I had cut our hearing off this

22     morning unduly shortly and that I'm -- in fact, I cut

23     Mr. Geltzer off as he was trying to speak and for that, I

24     apologize.

25          But I did not want to bring you -- ask you to come

1    back out in a snow storm.  So I arranged this call for which

2    I'm happy that you were able to make yourselves available.

3           And I felt that while it is -- while it continues

4    to seem to me that this is not that rare case where

5    sanctions under Section 1927 are appropriate that there

6    wasn't enough attention given to Mr. Dahiya's role in this.

7           Mr. Dahiya did fail to appear at least twice and

8    multiplied the time that the trustee had to spend in Court

9    and the legal fees that he incurred.  There was

10   noncompliance with court orders, with discovery orders,

11   whether though that was due to Mr. Dahiya or to his client,

12   I don't know but in these -- in this type of context,

13   communication is key and in the context of when you're

14   running late to get to court, communication is key.  And a

15   lot of this could have been avoided, Mr. Dahiya, by

16   communicating with the Court and with counsel in a more

17   appropriate way.

18           If you are unable to provide documents by the

19   period of time required by the Court, you can --

20   communication is important.  You -- if you reach out to the

21   Court and to your adversary and explain what you have and

22   what you're able to produce, it goes a long way to

23   mitigating the harm that's caused by your behavior.

24           And I cannot let this go by without discussing the

25   ad hominem attacks that were made on the trustee by

1    Mr. Dahiya in his papers and there really is no place for

2    that.  There is no place for that.  It's -- it is -- it's in

3    contravention of our Court civility rules and it's -- it

4    doesn't advance your client's cause and it is wholly

5    inappropriate.

6         MR. DAHIYA:  I'm sorry about it, Judge, if I've

7    come across -- I apologize to Mr. Geltzer also --

8         THE COURT:  But --

9         MR. DAHIYA:  But I did not mean, in all fairness

10   and honesty, to have any personal attacks but I felt in the

11   paperwork submitted by the trustee, Your Honor, there was no

12   talks about (indiscernible - 2:06:25) obligation of

13   discharge (indiscernible - 2:06:31) and we're talking about

14   extraneous issues.  I have -- I mentioned what I saw.  It

15   was a pretty strong suggestive impression of good faith but

16   I think Judge --

17        THE COURT:  But --

18        MR. DAHIYA:  -- you probably --

19        THE COURT:  But you're suggested impressions --

20        MR. DAHIYA:   -- you know, (indiscernible -

21   2:06:49) --

22        THE COURT:  Your suggested impressions are not

23   something you should be putting in writing and filing as an

24   attack on opposing counsel.  If you have some kind of

25   serious, legitimate grievance against a trustee, then you

1    need to take that up with the United States Trustees Office

2    and you need to substantiate that with evidence.  But

3    putting ad hominem attacks that are unsubstantiated in Court

4    papers are completely out of line.

5            MR. DAHIYA:  Your Honor, I'm trying to be

6    (indiscernible - 2:07:39) off Mr. Menkin (ph).  He asked me

7    several times on those lines.

8            THE COURT:  Well, I don't -- it doesn't matter

9    what Mr. Menkin asked you.  It -- then you need to respond

10   to him appropriately.

11           MR. DAHIYA:  He -- (indiscernible - 2:07:57)

12   happened, then (indiscernible - 2:08:00) examination

13   (indiscernible - 2:08:04) I -- then I saw the trustee's

14   paperwork and I said, this is an attack on me.  And I did

15   not answer to the main legal matters or legal issues here.

16   I (indiscernible - 2:08:19) was a motion --

17           THE COURT:  I think  you're --

18           MR. DAHIYA:  -- that was filed (indiscernible -

19   2:08:24) the case and I wanted it with prejudice and that's

20   where we got, you know, (indiscernible - 2:08:43) got stuck

21   there.

22           THE COURT:  Well, I'm --

23           MR. DAHIYA:   (Indiscernible - 2:08:38) request

24   for that, this is with prejudice, I'm (indiscernible -

25   2:08:44) this 1927 motion, Your Honor.

1            THE COURT:  Well, but my point, Mr. Dahiya, is

2      that number one, I never want to see any ad hominem attacks

3      in papers from you again, period, end of story.

4      Particularly not directed against Mr. Geltzer.  Is that

5      understood?

6            MR. DAHIYA:  Yes, Your  Honor.

7            THE COURT:  Okay.  And I do not want to encounter

8      any more situations where you keep people, where you stand

9      people up, you keep people waiting.  If you have a problem,

10     communicate.

11           MR. DAHIYA:  Yes, Your Honor.

12           THE COURT:  Okay.  Mr. Geltzer, is there anything

13     that you would like to put on the record here?

14           MR. GELTZER:  Well, only, Your Honor, that when I

15     was there Wednesday, you asked me, or you told me, you know,

16     you should make a record.

17           THE COURT:  Yes.

18           MR. GELTZER:  And I tried to make a record this

19     morning and I tried to address just your question, which I

20     was prepared to do it in detail, as I tried to say this

21     morning, and, with all due respect, Your Honor, you barely

22     let me finish, you know, one sentence to make that record.

23     If you didn't want that record, then, you know, why bring me

24     back?  And for the record, I don't care about being awarded

25     one penny.  I don't care about the money at all.  But I do

1    care about what Mr. Dahiya and I was going to try to

2    demonstrate, going through date by date, item by item, that

3    it was Mr. Dahiya.  The Court was quite right.  You can't

4    move to sanction the debtor under 1927.  But I wasn't trying

5    to under 1927 or any other -- I was just, you know, if you

6    had decided, as you evidently did, and that's certainly your

7    prerogative to decide it on the papers or before the hearing

8    or regardless of what somebody says or not, then so be it.

9    You decided but I don't know why I was brought back and then

10   I became somewhat of a target this morning and I just wanted

11   to tell you that.  I really was quite concerned and I quite

12   put off by that and --

13             THE COURT:  Well, I'm sorry you feel that way.

14             MR. GELTZER:  I accept your apology.  Thank you.

15             THE COURT:  I'm sorry you feel that way,

16   Mr. Geltzer, and I certainly did not intend to make you a

17   target.  And I would say that I reviewed the record in

18   greater detail between the time that we were in Court on

19   Wednesday and today, and I reached the conclusion that while

20   there were a lot of mistakes made, by Mr. Dahiya, that the

21   standard for sanctioning an attorney under section 1927,

22   which I think is very well described by Mr. -- by Judge

23   Stalling in her -- in the Kahn (ph) case, it doesn't rise to

24   that level here.

25             And, you know, I frankly don't -- I don't think

1    it's helpful to be -- I don't think that it is helpful to --

2    would be helpful to the process for me to write an opinion

3    about that.  I don't think --

4            MR. GELTZER:  That's fine, Judge.  I certainly --

5    I'm not going to -- I can't tell you whether to write an

6    opinion, if you want -- if it's your decision to deny my

7    motion, then deny it and I can look at it and if I want to

8    put the thing to rest, that'll be fine.  If for some reason

9    after I read all the cases that I've read and all the

10   situations that I've gone through, if I want to appeal it, I

11   will appeal -- so just deny my motion if that's -- you don't

12   have to write -- I mean, I don't have to tell you.  I don't

13   mean to be presumptuous and say you have to write an

14   opinion.

15           THE COURT:  Well, Mr. Geltzer --

16           MR. GELTZER:  But just deny my motion.

17           THE COURT:  Mr. Geltzer --

18           MR. GELTZER:  And then I can do what I -- whatever

19   I'll want to do.

20           THE COURT:  Okay.

21           MR. GELTZER:  But, Your Honor, the point is, you

22   know -- well, a sanctions motion is not to the one isolated

23   instance.  That's what I was trying to say this morning.

24   It's not just to the  isolated instance that he refused to

25   accept the dismissal, which if he had called and said with

1   prejudice, I'd said, fine, with prejudice.  I don't -- I'm

2   not going to go after this debtor at this point in time for

3   whatever reasons.  And if I did, I would and I think

4   everybody knows I would.  But -- so I don't care that it's

5   with prejudice.  But once that happened, then the motion for

6   sanctions looks at the whole course of events, the

7   confluence of things.  How one incident conflates with

8   another.  That's why they call that multiplicity of

9   hearings.  It's not based upon one, it's based upon a

10  multiplicity.  But, certainly, Judge, and, again, I don't

11  mean to be presumptuous, you don't have to write an opinion.

12  And I don't think I did anything wrong here the way you --

13  (indiscernible - 2:14:14)

14          THE COURT:  Well, you did miss --

15          MR. GELTZER:   If it's wrong, I apologize, kind of

16  threatened that if you wrote an opinion, that, you know, it

17  was going to be an opinion against me, I would then -- maybe

18  denying my motion so, you know, deny the motion, Judge.

19          THE COURT:  Well, -- okay.

20          MR. GELTZER:  I don't know what else to say to

21  you.  I, you know --

22          THE COURT:  Mr. -- let me -- Mr. --

23          MR. GELTZER:  -- without antagonizing you further.

24  It seems like I've antagonized you and if I had, I really

25  don't know why and I certainly regret (indiscernible -

1    2:14:35)

2         THE COURT:  Well, Mr. Geltzer, I'm either going to

3    write an opinion on this or it's going to be settled.

4        (Pause.)

5         MR. GELTZER:  How do I settle it, Judge?

6         THE COURT:  By withdrawing it --

7         MR. GELTZER:  What do I settle it for?  I don't

8    understand.  I really don't understand.  I'm not trying to

9    be difficult.  You want me to say to Mr. Dahiya, okay, pay

10   me, you know, "X" dollars and it will be settled?  I'm not

11   looking for "X" dollars.  I'm not looking for any money.

12   The money doesn't matter to me.  It's all the things he did

13   wrong and I can tell that you don't like if I say this, but,

14   you know, without some kind of a -- something beyond merely

15   your castigating him, on a conference, on a record that no

16   one's going to see, this is going to continue.  It'll go out

17   in the -- you know, (indiscernible - 2:15:30), yeah, he

18   didn't show up for three or four hearings or eight hearings,

19   he didn't show up.  He came -- you know, he dis "X" "Y" and

20   "Z" and then (indiscernible - 2:15:39) did nothing.  I --

21   you know, I'll settle it.  I'll settle it for a dollar.  A

22   dollar.  I'll settle it for a quarter.  For only a quarter,

23   I'll settle it.

24         THE COURT:  Well --

25         MR. DAHIYA:  Judge, please, can I speak?'

1           THE COURT:  Yes, of course.

2           MR. DAHIYA:  It was several things that the

3    trustee did improperly -- the trustee should have sought an

4    extension of time to object to the discharge.  He didn't do

5    that.

6           Then the complaints for other --

7           MR. GELTZER:  Why should I have done that?  Why?

8    Why should I -- I didn't do anything to hold up your

9    client's discharge and you're complaining about that.

10          MR. DAHIYA:  Can I please -- Mr. Geltzer.

11          THE COURT:  Go ahead, Mr. Dahiya.

12          MR. DAHIYA:  The second thing was the complaint

13   was not viable under 727(d) and the problem was the

14   (indiscernible - 2:16:36) 31, the (indiscernible - 2:16:40).

15   If you look into the (indiscernible - 2:16:42) that's where

16   he said, look, (indiscernible - 2:16:48).  Then you have

17   under 3(d)(41), something (indiscernible - 2:15:56), the

18   clerk of the court cannot get into the merits.

19          MR. GELTZER:  I'm sorry.  I didn't hear you.

20          MR. DAHIYA:  The clerk of the court cannot get

21   into the merits.  The (indiscernible - 2:17:11) was filed --

22          MR. GELTZER:  I'm sorry.  I just don't know -- the

23   what of the clerk?

24          MR. DAHIYA:  The clerk of the court.  The clerk.

25   He cannot (indiscernible - 2:17:18).

1           MR. GELTZER:  (Indiscernible - 2:17:20)

2           MR. DAHIYA:  -- under 3(d)(41) -- when there has

3    been extensive discovery because the clerk can never find on

4    that.

5           THE COURT:  Okay.  Mr. Dahiya --

6           MR. GELTZER:  Another issue, Your Honor, is --

7           THE COURT:  Mr. Dahiya --

8           MR. DAHIYA:  Yes, Your Honor.

9           THE COURT:  Okay.  That is -- I don't necessarily

10   agree with you on that point.  But I can understand why you

11   wanted your client's case to be dismissed with prejudice.

12   But -- so, you know, I really -- I think that if I were you,

13   I would not be heading down this path right now.  So -- what

14   -- but this is to me -- in my view and it is my -- it's view

15   that this is not case for the imposition of the types of

16   sanctions that were imposed in the Kahn case and, you know,

17   I will write an opinion explaining why if -- or you can

18   settle the case.

19           MR. GELTZER:  Judge, what is the Kahn case?  What

20   case is that?

21           THE COURT:  That's the one -- the case that Judge

22   Stong -- where Judge Stong sanctioned Mr. Dahiya, which

23   you --

24           MR. GELTZER:  That's Mahiya's (ph) case.  I'm

25   sorry, Judge, I got it.  That's Mahiya's case.  Yes, Your

1    Honor.

2           THE COURT:  Mahiya.  Okay.  The debtor is --

3    right.  The debtor was Shahara (ph) Kahn.

4           MR. GELTZER:  I got it now, Your Honor.  I'm

5    sorry.  Sorry about it.  I couldn't get that, yes.

6           THE COURT:  So I would like you to consider that,

7    whether -- and if you want to pursue this, I'll let you --

8    we can do that.

9        (Pause.)

10          THE COURT:  If you want to -- if you want to

11   pursue sanctions, you can -- we can -- you can submit your

12   motion on the record that's been made already.  You can make

13   another record, a better -- a different record if you want

14   to but I think it would be better if you could work out a

15   settlement of this.  Because I don't think that it's going

16   to be helpful to write -- for me to -- for there to be an

17   opinion discussing the limitations of the -- of this -- of

18   the scope of section 1927 in this kind of context.

19          MR. GELTZER:  Judge, would you opine as to what

20   you mean about a settlement?  I'll -- I'm willing to listen.

21   I'm willing to listen.  I made it clear.  I'm not looking

22   for money.  I -- that's not -- that wasn't my objective in

23   bringing the motion.

24          THE COURT:  Well, maybe if Mr. Dahiya were willing

25   to commit that -- to refrain from personal attacks, that

1    would be a starting point.

2              MR. GELTZER:  If that would be -- if there could

3    be some kind of written stipulation to that effect that we

4    filed in court, I would certainly consider that.  Of course,

5    depending upon the breadth of it and the writing of it.

6    That's what important to me.  That's what's important to me.

7              MR. DAHIYA:  (Indiscernible - 2:21:30) important

8    to him to --

9              MR. GELTZER:  That's what's important to me.

10             MR. DAHIYA:  (Indiscernible - 2:21:32)

11             MR. GELTZER:  Some kind of official inducement for

12   him to stop this kind of conduct, not only against me, but

13   against other trustees and, Judge, I'm sorry you don't like

14   hear it, but it comes from the bottom of my heart, I think

15   this is a major affront.  I think he's a major affront on

16   the integrity of the bankruptcy system and on the Court.

17   And not up to you, of course, but I seen this in many cases.

18   I see it in 341 meetings.

19             THE COURT:  Okay.  But -- so --

20             MR. GELTZER:  Somewhere in -- this needs to be

21   stopped or at least moderated, somehow.

22             THE COURT:  See, what both of you are --

23             MR. GELTZER:  And if there's a settlement,

24   (indiscernible - 2:22:13), Mr. Dahiya, you know, would agree

25   to something like that, that's fine.

1            THE COURT:  Okay.  What seems to be --

2            MR. GELTZER:  I would have refunded the money to

3     the debtor for all I care.  But then (indiscernible -

4     2:22:23) $1,000 was making $10,000 a year while another

5     debtor, when we had that same day, was (indiscernible -

6     2:22:31).  We did the 341 meeting and it was (indiscernible

7     - 2:22:35) making $40,000 a year, Mr. Dahiya (indiscernible

8     - 2:22:40) charged fifteen hundred dollars and then

9     Mr. Dahiya had the audacity to say that I destroyed on the

10    basis that the person was a minority.

11           THE COURT:  Okay.  All right.  Mr. Geltzer, what

12    both of you are doing here, and Mr. Dahiya, what both of you

13    are doing are bringing into this dispute, things that have

14    occurred, into this case, things that have occurred in other

15    cases and in other situations.  When, and I -- I see that it

16    colors your view of this case, and your view of each other.

17    But it is -- it's really not something that I'm going to be

18    able to address or that would be appropriately addressed in

19    the context of this case.

20           MR. GELTZER:  In this case, he charged this

21    debtor, this $4,000, in this case, for a man who's earning

22    $10,000, which could have been -- it could have been a

23    simple no hassle case, Judge.  Closed by me early on, if I

24    got the documents.  But, you know, Mr. Dahiya didn't provide

25    the documents.  He -- he was never in his office and then he

1    said he had a computer virus.  Well, he had a month before

2    the computer virus allegedly hit and during the period that

3    the computer virus hit, he filed, what is it, another --

4    three or four other pleadings in cases, during that same

5    period.

6            MR. DAHIYA:  I did have a computer virus.

7            MR. GELTZER: (Indiscernible - 24:08).

8            MR. DAHIYA:  (Indiscernible - 2:24:09) hearing and

9    when I hearing and the entire case (indiscernible -

10   2:24:13), I have a little laptop.  (Indiscernible - 2:24:16)

11   this case, there were other documents and paperwork in this

12   case, (indiscernible 2:24:23) new computer.  And I stuck it

13   down and I have produce evidence to that effect, Your Honor.

14   This was not done.

15           THE COURT:  Mr. Dahiya --

16           MR. DAHIYA:  Yes.

17           THE COURT:  -- I think that it in -- that an

18   honest assessment of this case would be that you -- your

19   performance has not been stellar.  There were -- in addition

20   to whatever delays that may have been occasioned by a

21   computer virus or whatever, there have been instances of

22   your simply not responding to discovery requests or orders

23   in a timely fashion, for which there really can be no

24   excuse.

25           MR. DAHIYA:  I (indiscernible - 2:25:07) to that,

1    Your Honor.  (Indiscernible - 2:25:08) you know, the debtor

2    can personally come to the Court to testify (indiscernible -

3    2:25:14) how he speaks.  It is difficult to get -- it is

4    difficult to get all the information at once.  We had the

5    paperwork here, then -- and we tried to collect it and I

6    kept harassing him, bring it -- go up to the school and get

7    it.  In fact, the debtor personally went to get the boxes to

8    come to the office.  They gave the box to him.  Other

9    paperwork that was given to him (indiscernible -- 2:25:40).

10   I have nothing to fight with Mr. Geltzer about.

11           THE COURT:  Okay.  Well, I understand that you may

12   have had difficulties in getting clients -- documents from

13   your client; that your client may not have had a number of

14   the document; that they had to go to the bank for some of

15   them, et cetera.  But that doesn't mean that you can ignore

16   deadlines or court orders or dates in deposition notices or

17   anything of that nature.  And, again, communication is key.

18   If you're having a problem --

19           MR. GELTZER:  Judge, if I may --

20           MR. DAHIYA:  (Indiscernible - 2:26:17)

21           MR. GELTZER:  -- he should haven't the box of

22   those documents for about a month in his office.  He --

23           MR. DAHIYA:  That box was given to me about --

24   (indiscernible 2:26)27) which he had, we gave it to you

25   (indiscernible 2:26:29) not (indiscernible - 2:26:30) to the

1    Court to testify, Your Honor.  I gave him -- the only thing

2    I see, Your Honor, respectfully, was that (indiscernible -

3    2:26:39) the hearing and I (indiscernible - 2:26:42)

4    calendar.  I was given the 30th and I did check the ECF on

5    the court website and I (indiscernible - 2:26:49) listed

6    there.  The other time I was late, Your Honor, was that

7    Mr. (indiscernible 2:26:55) was seeking a criminal

8    indictment against the debtor in English.  Because if the

9    case was before (indiscernible - 2:27:01) website and I

10   thought I could finish that and be in your Court in time.

11           THE COURT:  Well, you can make a phone call and

12   then maybe Mr. Geltzer doesn't have to come and sit for two

13   hours or Mr. Geltzer's associate.

14           MR. DAHIYA:  (Indiscernible - 2:27:17).  I cannot

15   speak to Mr. Geltzer at times because he gets me upset.

16   Because (indiscernible - 2:27:34), Your Honor.

17           THE COURT:  Okay.

18           MR. DAHIYA:  I'm not saying it just because I have

19   to look for an excuse or something.  I -- why would I want

20   to come before the Court (indiscernible - 2:27:42).  This is

21   (indiscernible - 2:27:47) because the problem with this case

22   was, Your Honor, (indiscernible - 2:27:53) 727(b).  It was a

23   difference of opinion.  (Indiscernible - 2:28:00) for the

24   Court, he should have taken Court's consent.  He can't just

25   have the power of the United States like this.

1          THE COURT:  Okay.  I am not --

2          MR. DAHIYA:  (Indiscernible - 2:28:09)

3          THE COURT:  -- understanding what --

4          MR. GELZER:  (Indiscernible - 2:28:1) Dahiya's

5     absolutely incoherent remarks.

6          THE COURT:  I can't --

7          MR. GELTZER:  And you want to know if I would

8     settle it.  I'd be glad to settle it.

9          THE COURT:  I can't --

10         MR. GELTZER:  I'd like a dollar.  I'd like an

11    apology.  I'd like a representation from Mr. Dahiya that he

12    will comply with all Court orders, the Code, the Rules, the

13    disciplinary rules, the rules of civility.  No more ad

14    hominem attacks against me or anybody else and refund the

15    debtor the $4,000.

16         THE COURT:  Well --

17         MR. GELTZER:  I'd be fine with that.

18         THE COURT:  -- you know, Mr. Geltzer, that's not

19    up to you to decide whether Mr. Dahiya should refund $4,000.

20         MR. GELTZER:  No, I'm saying, as part of a

21    settlement.  It's part of a settlement.

22         MR. DAHIYA:  I live from dollar to dollar, Your

23    Honor.  I'm a very poor man's lawyer.

24         THE COURT:  Okay, I --

25         MR. DAHIYA:  I spend a lot of money to get to

1    here.  This is so unfair.

2            THE COURT:  Okay.

3            MR. DAHIYA:  I --

4            THE COURT:  Mr. Dahiya --

5            MR. DAHIYA:  -- am not a rich man.

6            THE COURT: I can't hear you.

7            MR. DAHIYA:  I'm not a rich man, Your Honor.  I

8    live from dollar to dollar.

9            THE COURT:  Okay.

10           MR. DAHIYA:  It's each dollar is important to

11   (indiscernible - 2:29:04).

12           THE COURT:  Okay.

13           MR. DAHIYA:  It is so unfair.  Why would -- I

14   mean, --

15           THE COURT:  Okay, Mr. Dahiya.  You're going to

16   have to calm down because I can't understand what you're

17   saying.  Okay.  But I understand that you don't want to give

18   the money back.  That much I --

19           MR. DAHIYA:  I have been working --

20           THE COURT:  -- picked up.

21           MR. DAHIYA:  --  for months on this case, Your

22   Honor.  I did my research on the 41, Rule 66, Federal Rules

23   of Civil Procedure.  I did extensive research into the laws.

24   I worked a lot with the --

25           THE COURT:  Okay.

1          MR. DAHIYA:  -- sister of the debtor and it's just

2     not fair that I go to his office and I would get treated and

3     he tells me to refund the money.  He is trying to gain a

4     (indiscernible - 2:29:42) out of this.  I know what is

5     happening here.

6          THE COURT:  Okay.

7          MR. DAHIYA:  The Court can see what is happening

8     here, Your Honor.

9          THE COURT:  All right.  Mr. Dahiya, Mr. Dahiya --

10         MR. DAHIYA:  Yes, Your Honor.

11         THE COURT:  Calm down.  Calm down.  Calm down,

12    please.  Are you calm now?

13         MR. DAHIYA:  Yes, Your Honor.

14         THE COURT:  Okay.  I think that -- I think one way

15    to resolve this would be for you to undertake that you will

16    not engage in any further ad hominem attacks against

17    Mr. Geltzer.  If you --

18         MR. DAHIYA:  I have --

19         THE COURT:  -- if you have a --

20         MR. DAHIYA:  That's fine, Your Honor.

21         THE COURT:  If you have a grievance against

22    Mr. Geltzer, there are ways that you can redress that,

23    through the United States Trustee's Office and you have to

24    substantiate what you are saying with evidence.  But in

25    terms of putting ad hominem attacks in court papers, they

1    have no place there and I think that you -- that it would be

2    appropriate for you to commit that you will desist -- cease

3    and desist from that practice.

4         MR. DAHIYA:  Your Honor, when I see something,

5    what happens then?  When I see something, I can substantiate

6    it, where does it go then?  What happens when I have a case

7    under Civil Rights Act (indiscernible - 2:31:06) what is

8    happening there with the trustees.  How does this go and

9    what's against the (indiscernible - 2:31:11).  I saw the

10   difference between David Turner and Man Kit.  My client's

11   should have --

12        THE COURT:  But what do you think you accomplish

13   by doing that?  Do -- it --

14        MR. DAHIYA:  I --

15        THE COURT:  -- it doesn't advance your client's

16   interests at all.

17        MR. DAHIYA:  It does not.  But --

18        THE COURT:  It does not -- it doesn't advance your

19   credibility at all.  It is, as you say, subjective and

20   unsubstantiated.  It's -- and I don't think it has any place

21   in proceedings, in pleadings in this Court.

22        MR. DAHIYA:  The only thing the way other than

23   (indiscernible - 2:31:45) how he treats the minority debtor

24   and how he treats the (indiscernible - 2:31:55) debtors.

25   It's very clear, Judge.  I'm not a --

1          THE COURT:  Okay.  All right.  Mr. -- all right.

2     Mr. Dahiya, what do you expect?  Do you expect me to believe

3     this?  Do -- and you are, again, these are ad hominem

4     attacks.  They are not substantiated.  If you had some kind

5     of serious concern that you were backing up with evidence,

6     you would go to the United States Trustee.  But telling me

7     and in this --

8          MR. DAHIYA:  Your Honor --

9          THE COURT:  -- unsubstantiated --

10         MR. DAHIYA:  -- respectfully, you --

11         THE COURT:  -- way accomplishes nothing.  And it

12    undermines your credibility, quite frankly.

13         MR. DAHIYA:  Your Honor, respectfully, you are the

14    master of the Court.  You (indiscernible - 2:32:33) totally

15    irreceptive, Your Honor.  We have -- I have -- I requested

16    them.  I've approached them.  But they're powerless.  And

17    I --

18         THE COURT:  Well, they may -- they are the -- I --

19    talking to me does nothing.  And putting allegations like

20    that in court papers does only harm to you and your clients.

21    It is not -- the United States Trustee's Office has

22    authority over trustees.  The Court does not.

23         MR. DAHIYA:  I'm going, Your Honor, look into

24    (indiscernible 2:33:10) because I wrote what I feel and I

25    saw and (indiscernible - 2:33:14) clients --

1           THE COURT:  Because you feel something does not

2    mean that it's justified for you to put it in court papers.

3    Because you feel something or believe something or -- does

4    not justify you putting it in court papers.

5           MR. DAHIYA:  I understand, Your Honor.  But then

6    the other part, I mean, how Mr. Geltzer brings these ad

7    hominem (indiscernible - 2:23:43) proceedings is

8    9indiscernible - 2:33:46) reality of what really has

9    happened before Judge Stong, before Judge Stong.  The

10   decision of Judge Stong is a default decision without

11   (indiscernible - 2:33:56).

12          THE COURT:  Okay, well, Mr. -- All right.

13   Mr. Dayiha --

14          MR. DAHIYA:  Yes, Your Honor.

15          THE COURT:  This decision is of record --

16          MR. DAHIYA:  Okay.

17          THE COURT:  -- and it is was it is.

18          MR. DAHIYA:  Okay, Your Honor.

19          THE COURT:  It is what it is.  It's not -- there's

20   not -- nobody's looking behind that and unfortunately for

21   you, you've got this decision on file and it's there.

22          MR. DAHIYA:  Yes.  We're sorry about it but then I

23   wanted to tell you what really happened there.

24          THE COURT:  I don't even want it -- I don't want

25   to go into that.  I don't -- I don't care because I am going

1    by what Judge Stong said.  And I'm not applying that here.

2    I don't know why you're even talking about that.

3            MR. DAHIYA:  Because they keep using it and

4    (indiscernible - 2:34:40) and I wanted to --

5            THE COURT:  Well, they're going to and that's

6    unfortunate for you but that's the situation you're in and

7    I'm not going to listen to what your story about what went

8    on behind that because I am -- as far as I am concerned, the

9    only thing that exists is what's written by Judge Stong.

10           MR. DAHIYA:  Yes, Your Honor.

11           MR. GELTZER:  And, Mr. Dahiya, it's also what

12   Judge Irizai (ph) said about you.

13           MR. DAHIYA:  That's what I'm talking about.

14   (Indiscernible - 2:35:02)

15           MR. GELTZER:  It's also a question of your

16   competency as an authority.

17           THE COURT:  Okay.  That's it.  That's it,

18   Mr. Geltzer.  Can we cease and desist the ad hominem attacks

19   on both sides, please?  Okay, Mr. Dahiya --

20           MR. GELTZER:  I've not made any ad hominem

21   attacks.

22           THE COURT:  -- I really think.

23           MR. GELTZER:  I was quoting Judge Irizai.

24           THE COURT:  Okay.  Well you said -- all right.

25   It's not helpful.  All right.  But Mr. Dahiya, I don't want

1    to see any more of these ad hominem attacks and I would --

2    and I think it is incumbent upon you to make that

3    commitment.

4              MR. DAHIYA:  Yes, Your Honor.  I do.

5              THE COURT:  And in terms of -- and I think that it

6    is incumbent upon you to commit to comply with court orders

7    and court rules.

8              MR. DAHIYA:  I do, Your Honor.  Respectfully, I

9    really do.  And If I miscalendared, if I'm -- you know, I

10   have (indiscernible - 2:37:07) respect for the Court, Your

11   Honor.  I mean, it's -- I don't know why I'm coming across

12   as someone who is running afoul, but I don't take law in my

13   hands.  I'm a hard stickler of the law.  I have respect for

14   the Court.  But (indiscernible - 2:36:23) trustee can

15   (indiscernible - 2:36:24) legal requirement, that's right.

16             THE COURT:  All right.  Well --

17             MR. DAHIYA:  (Indiscernible - 2:36:29)

18             THE COURT:  -- in terms of the question or whether

19   it is -- whether the trustee had the authority to dismiss

20   the case under Rule 41, that is -- I suppose that is one

21   question that could be addressed here.  But that seems to me

22   to be -- it seems to me to be a diversion of our attention

23   here.  The trustee has no objection to dismissing this case

24   with prejudice as he said.  But I think that you owe him an

25   apology and you ought -- you need to make a written

1    commitment to him that you will not attack him personally in

2    court papers, again.

3            MR. DAHIYA:  Okay.  I'll send him -- I'll send

4    something to him, Your Honor, along those lines as you just

5    described.  I will do that, Your Honor.

6            THE COURT:  In terms -- and --

7            MR. DAHIYA:  And I'll expect the same thing from

8    him.

9            THE COURT:  Okay.

10            MR. DAHIYA:  But (indiscernible - 2:37:24) attack

11    me.  He does, even in the paperwork, I see that, Your Honor.

12    It's both sides.  Now one side is we are as strong, as

13    strong and powerful as are the trustee in matters of law and

14    in the Court, as you said, Your Honor, you see us as equal.

15            THE COURT:  Okay.  Mr. Dahiya, I actually -- I

16    would not say that I have seen what I would consider to be

17    unsubstantiated ad hominem attacks by Mr. Geltzer against

18    you in the context of this case.

19            MR. DAHIYA:  Your Honor, he's twisting the facts

20    here.  You see, I can point it out to the Court.  I'm --

21    I've seen that.  (Indiscernible - 2:38:13) Court, he said,

22    look at the way he's dressed, because I was not wearing a

23    tie.  I mean, I (indiscernible - 2:38:20) Your Honor.  I'm

24    just, you know --

25            MR. GELTZER:  You know, you're not truthful.

Mr. (indiscernible - 2:38:26) you not only weren't wearing a tie, you were wearing jeans when you came to Court. That's not very respectful of the Court.

MR. DAHIYA: (Indiscernible - 2:38:32)

THE COURT: Okay. Well, you know what, Mr. Geltzer, if it's -- if I'm not concerned about it, it's not really -- it shouldn't really be your concern, I don't think.

MR. GELTZER: Well --

THE COURT: That seems to me to be getting -- to be inappropriate point for you to be raising. We don't know -- I don't know why Mr. Dahiya was dressed as he was and, at this point, I don't really care. But it's really not your concern, as far as I -- as far as -- in my view.

MR. GELTZER: I appreciate that, Judge, I just pointed it out as an officer of the Court.

THE COURT: Well, you know, I have eyes, too. So I don't need you to point out to me what Mr. Dahiya's wearing.

(Pause.)

MR. GELTZER: Your Honor, I --

THE COURT: Let's see if we can make some progress here towards resolving this and getting everybody on a better footing.

(Pause.)

1        MR. DAYIYA:  (Indiscernible - 2:39:36).

2        THE COURT:  And Mr. Geltzer I am not inclined to

3    inquire into the fees that were paid in this case.  It's --

4    I can see - I know that -- the thing that I have seen from

5    the record here is that there was a lot of work that

6    Mr. Dahiya had to do to get -- to gather the documents for

7    his client and, you know, I don't know -- I just don't --

8    this does not strike me as a case where that's appropriate

9    either.

10        MR. GELTZER:  Okay, I would leave that out then of

11   what I would put into a stipulation of settlement with the

12   other things that I said.  I'll leave that out.  I was just

13   trying to be -- I was just trying to do what I thought was

14   fair.  But, that's fine.  I can leave it out.  I have no

15   problem with that, Judge.  It's neither money in my pocket

16   or out of my pocket.

17        MR. DAHIYA:  You -- Your Honor, (indiscernible -

18   2:40:33) stipulation between the trustee and myself about

19   that, there will not be ad hominem attacks from both sides.

20   Any we will abide the civility and no attacks, nothing on

21   either side.

22        THE COURT:  I think that's -- that sounds

23   appropriate to me and I would not -- I do not think,

24   Mr. Geltzer, that the type of settlement stipulation, if

25   there were to be one, in this case, should involve bringing

1    in other cases or other trustees.  This is between the two

2    of you, in my opinion, right here and now.

3              MR. DAHIYA:  Your Honor, respectfully, you said it

4    right.  It is this case, not what is happening.  The trustee

5    is ganging up (indiscernible - 2:21:26) they want to use it

6    in their 9indiscernible 2- 2:41:28) sector because there is

7    a fight going on about the issue that 1927, whether, to what

8    extent 9indiscernible - 2:41:37) his clients.  I mean, the

9    other part is, the (indiscernible - 2:41:41) bankruptcy,

10   Your Honor, a lot of these attorneys do not conference with

11   the trustees, (indiscernible - 2:41:47) right because two

12   reasons; one, they don't (indiscernible - 2:41:51) the

13   trustee.  Second one, they're going to have to keep seeing

14   the trustee.  Third one, the debtors don't have money for

15   that.  I am something (indiscernible - 2:42:01) I fight for

16   the clients.  I fight for the law.  He has to comport

17   himself with the law, Your Honor.  That's all that I've been

18   saying.  There are no shortcuts.  If there are no shortcuts,

19   (indiscernible - 2:42:13) similarly, there are no shortcuts

20   on the trustee, which again, there should not be.  And

21   (indiscernible - 2:42:20) --

22              THE COURT:  What --

23              MR. DAHIYA:  I'm calling the U.S. Trustee's Office

24   about having the 341 meeting with the trustee because he

25   won't -- (indiscernible - 2:42:28).  And I spoke to the U.S.

1    Trustee, I said, there was no time.  He was after me.

2             THE COURT:  So --

3             MR. DAHIYA:  That's what happens 9indiscernible -

4    2:42:43).

5             THE COURT:  You're losing me, now, Mr. Dahiya.

6    What your point is I -- the point of it.

7             MR. DAHIYA:  I mean, I'm talking about how the 341

8    meetings took place, how I filed a letter --

9             THE COURT:  Okay.  But why do we care about --

10   they're -- well, you started out by telling me about what

11   the trustees are doing as a group.  Again, this isn't a

12   concern -- if you have one, you can bring with the United

13   States Trustees Office or you can raise it in a particular

14   case with respect to a particular trustee.  But I am not

15   addressing here --

16            MR. DAHIYA:  Your Honor --

17            THE COURT:  -- in here --

18            MR. DAHIYA:  -- respectfully, if I bring a motion

19   (indiscernible - 2:43:19) for the Court, for the

20   jurisdiction of the trustee, I think you do have

21   jurisdiction.  But the consequences are (indiscernible -

22   2:43:27) for the trustee.  He gets removed from all the

23   cases.  And it's not a good thing.  But under, you know, 58

24   CFR, whatever the section is, it is a long winded process.

25   I spoke to the U.S. Trustee's Office.  They said it was a

1     very difficult process to remove a trustee from

2     (indiscernible - 2:43:43).

3               THE COURT:  But you're not --

4               MR. DAHIYA:  But if you have --

5               THE COURT:  -- but Mr. Dahiya, we're not talking

6     about -- we're talking about resolving this case.

7               MR. DAHIYA:  No, with this case, yes.  I

8     (indiscernible - 2:43:52).

9               THE COURT:  If you have the idea that you're going

10    to be at war --

11              MR. DAHIYA:  I  promise, Your Honor, as

12    (indiscernible - 2:43:59) with this Court, as an officer, I

13    give you my word, Your Honor, no ad hominem attacks against

14    anyone.

15              THE COURT:  Okay.

16              MR. DAHIYA:  I mean, Mr. Geltzer should say the

17    same thing that he will not personally attack me

18    (indiscernible - 2:44:11) or anything.  I mean, his

19    expressions, in writings, always have a (indiscernible -

20    2:44:20).  I mean, he cannot (indiscernible - 2:44:23)

21    lawyers.  He, you know, I would start (indiscernible -

22    2:44:30), Your Honor, today.  This day, Your Honor, as an

23    officer of your Court, I promise to uphold the

24    (indiscernible - 2:44:39) law and conduct myself properly,

25    as an officer of the court.  No more ad hominems.

1           THE COURT:  Okay.

2           MR. DAHIYA:  I do.

3           THE COURT:  And in exchange for that, Mr. Geltzer,

4   that type of written -- that type of commitment on the

5   record here, are you prepared to dismiss this case with

6   prejudice.

7           MR. GELTZER:  Not just on the record.  I want a

8   writing to that effect, Judge.  And then I'd be prepared,

9   you know, if that writing is acceptable to me, obviously, to

10  the Court, then I would be prepared, as I said, as I said

11  quite awhile ago, I'd be prepared to dismiss the case with

12  prejudice.  And that's for the Court, you know -- one of the

13  hearings was leading us and that was fine.  And once I got

14  the documents, I saw, and I was ready to dismiss the case.

15  But I'll want it, in writing, as a stipulation and I will

16  absolutely dismiss it.  I'll dismiss the case with prejudice

17  regardless of that.  I just want a stipulation in terms of

18  -- if you want me to withdraw the motion.  I will do that as

19  a stipulation to withdraw the motion.  I'm not going to

20  prejudice the debtor because of that and, you know, I won't

21  address -- you permit Mr. Dahiya, Judge, to ramble on and on

22  about somethings I don't even know what he's talking about,

23  but when I try to respond to that, you cut me off.

24          THE COURT:  Well, I --

25          MR. GELTZER:  I mean --

1        THE COURT:  I'm prepared to give you your

2   opportunity to respond.  I was just letting Mr. Dahiya

3   finish.

4        MR. GELTZER:  Thank you.  Okay.  This thing

5   started from the get-go, first thing Mr. Dahiya did was to

6   try to do trustee shopping and Alisha Ladd (ph) you know,

7   worked with him.  On November 19th, she said, quote, your

8   actions prejudice your client's interests and impugn the

9   integrity of the bankruptcy system, period, end quote.

10        He started with trustee shopping.  And maybe the

11   reason that so many trustees are adverse to Mr. Dahiya is

12   because some of the things he says are just attacks on the

13   trustees.  One or more.  The -- that impugns the integrity

14   of the system.  (Indiscernible - 2:46:58) ninety-five

15   percent of these cases, as you know, Judge, they're not

16   asset cases.  But as soon as you ask for documents, they,

17   you know, Mr. Dahiya takes (indiscernible - 2:47:07), yeah,

18   he files the papers.  He doesn't file them properly.  He

19   doesn't put in pay stubs right away in this case.  And it

20   goes on and on like that.

21        And, you know, he's upset that Judge Stong

22   sanctioned him I think $15,000, Judge Irizai calls him

23   incompetent.  He's upset.  That's because of the papers he

24   puts in.  It makes no sense.  Am I right?  I've been doing

25   this for 22-23 years.  There have been complaints against me

1   but nobody, nobody has ever said I discriminated against

2   anybody on the basis of sex, or religion or race or ethnic

3   group or sexual orientation or any other reason.  I treat

4   everybody fairly, everybody the same.  It's just that when

5   some lawyers, Mr. Dahiya being one of them, are called upon

6   or are called into question about what they did or what they

7   didn't do, then it becomes an attack.

8          I mean, if he said these things outside of

9   pleadings, you rest assured I'd sue him for defamation.  And

10  he'd lose.  This is just absurd.  But, yes, I'm trying to be

11  accommodating to the Court as I possibly can.  I'm willing

12  to withdraw the motion.  I'm willing to stipulate to it.

13  I'm not making the stipulation contingent upon filing the

14  dismissal with prejudice.  But I want it all to be in

15  writing.

16         And, as far as the stipulation, as far as the

17  notice of the dismissal that I put in, I served it on

18  Mr. Dahiya.  I serve it on the United States Trustee.  I

19  filled it with the Court and the Court, in that situation

20  was always -- I don't have to say this, but -- I don't mean

21  to be presumptuous, was always entitled to change that and

22  put it with prejudice instead of without prejudice.  That's

23  why it's filed with the Court.  But, I say again, if he had

24  just called up and said I want it with prejudice, I'd have

25  said, fine.  But Judge he said, no, I'm not going to dismiss

1    this case.  I want to fight it.  It was after the fact.  It

2    was after the fact that he said, I want it with prejudice.

3    It wasn't before that, Judge.

4          You know, I still believe in my heart of hearts,

5    in my best legal judgment, that this is sanctionable.  The

6    Court obviously disagrees.  But -- and I would rather not --

7    I would rather not put the Court to the trouble of writing

8    an opinion.  And I would rather not appeal it.  And I'm

9    willing to follow the Court's suggestion in getting this

10   settled.  But just putting it on the record here, that

11   doesn't suffice, Judge.

12          THE COURT:  All right.  Well, Mr. Geltzer, if you

13   -- it's no trouble for me to write an opinion.  I love

14   writing opinions.  I do -- I'm working on one right now.  I

15   live for this.  So it's no problem at all.  And as far as

16   appealing it, you can go right ahead but, as I pointed out,

17   the exercise of sanctioning a -- the exercise of sanctions

18   under Section 1927 is highly discretionary.  So you would

19   have to show that I had abused my discretion by not

20   sanctioning, which I think is going to be a very heavy,

21   heavy lift.  So if you want to -- if you want me to write an

22   opinion, I will.

23          MR. GELTZER:  I --

24          THE COURT:  You don't need to accommodate me.

25          MR. GELZTER:  I really -- I really don't want you

1    to write an opinion.  I don't want to -- (indiscernible

2    2:51:01) at me in an opinion frankly at this time, and I

3    think you can hear me, I'm repeating myself, I'm more than

4    willing to stipulate to withdraw.  I just want that

5    stipulation to be in writing.  That's all, along the lines

6    that you said, Judge.  Along the lines that Mr. Dahiya seems

7    to have agreed.  So it shouldn't be a problem --

8              THE COURT:  All right.

9              MR. GELTZER:  -- to reduce it to a writing.

10             THE COURT:  Okay.

11             MR. GELTZER:  But --

12             MR. DAHIYA:  I will enter into a mutual agreement

13    with mutual respect, we will mutually refrain from ad

14    hominems.  I will do that.  Your Honor, I will do it.  And

15    in case (indiscernible - 2:41:45), I think I would like to

16    bring to the Court's attention before I file any paperwork

17    (indiscernible - 2:41:50) trustees.

18             MR. GELTZER:  I missed that.  What is that new

19    point now?

20             MR. DAHIYA:  There's no new point.  It is just

21    that I would like to choose whether I should file the

22    paperwork with the Court or I should involve the U.S.

23    Trustee's Office.  Or (indiscernible - 2:52:07) the U.S.

24    Trustee to do something.  But, Your Honor, respectfully I

25    think I would (indiscernible - 2:52:21) my writings and

1    (indiscernible - 2:52:22) seem that also that there is a

2    dramatic improvement in my writing style.  I've been working

3    hard on that.  And I do not want to be (indiscernible -

4    2:52:40) Your Honor, (indiscernible - 2:52:41) has nothing

5    to do with this.  I follow the law.  I'm asking him to

6    follow the law.  That's -- there's nothing else that I want

7    -- there's nothing else, Your Honor.

8         MR. GELTZER:  I say -- I mean, I follow the law.

9    I have to say you cite laws that are germane to the matter

10   that's at hand, number one.  And you never, if you

11   (indiscernible - 2:53:05) a document that I have never said

12   anything to you, it doesn't comply with the law.

13        Just because you say it, doesn't make it so,

14   Mr. Dahiya.  And that's what your belief is.  You think

15   (indiscernible - 2:53:16) --

16        MR. DAHIYA:  Your Honor, the (indiscernible -

17   2:53:18).

18        MR. GELTZER:  Let me finish, now.

19        MR. DAHIYA:  The fact is there (indiscernible -

20   2:53:21) in this case, one, you as the trustee --

21        MR. GELTZER:  (Indiscernible - 2:53:25).

22        MR. DAHIYA:  (Indiscernible - 2:53:27) seek an

23   extension, either directed to seek an extension to object to

24   discharge, and 727 was basically a way around what he should

25   have done prior to that.  Okay.  The business of without

1    prejudice, after extensive, extensive merit hearing by this

2    Court and this Court was very kind, Your Honor, this case

3    was dismissable to start with.  You, Your Honor, didn't

4    (indiscernible 2:43:53) didn't have any grounds to stand on

5    decided to start pleading the case.

6         MR. GELTZER:  He once made a motion to

7    (indiscernible - 2:43:04) time to object to discharge.  You

8    opposed that.  Why should you be complaining that I didn't

9    do anything at all to hold up your client's discharge

10   because I didn't want to burden the Court with your tactics

11   because of your tactics and your infrivolities.

12        MR. DAHIYA:  It is not about me (indiscernible -

13   2:54:23).

14        MR. GELTZER:  (Indiscernible - 2:54:25) --

15        THE COURT:  Okay.

16        MR. GELTZER:  (Indiscernible - 2:54:28).

17        THE COURT:  All right.

18        MR. GELTZER:  (Indiscernible - 2:54:29).

19        THE COURT:  All right.  I think this --

20        MR. GELTZER:  -- because of that nonsense.

21        THE COURT:  Okay.  This isn't helpful, I don't

22   think.

23        MR. GELTZER:  I don't either but I don't know what

24   to say.  I don't understand what the problem is to be,

25   Judge.  I -- you know, I -- it's kind of frustrating on this

1    end.

2         THE COURT:  Okay.  I -- Mr. Dahiya, I think what

3    is incumbent upon you to do, in exchange for Mr. Geltzer's

4    withdrawal of his motion, is for you to agree that you will

5    refrain from any future ad hominem attacks against

6    Mr. Geltzer.

7         MR. DAHIYA:  That's fine, Your Honor.

8         THE COURT:  Mr. Geltzer, does that -- will that

9    satisfy you?

10        MR. DAHIYA:  I would say then (indiscernible -

11   2:55:20) agreement together.

12        THE COURT:  I didn't --  what did you just say?

13        MR. DAHIYA:  (Indiscernible - 2:55:27) Your Honor.

14        MR. GELTZER:  And I think, Judge, you also pointed

15   out that you wanted a statement from him, and I made notes

16   here, that he would comply with court orders and laws.

17        THE COURT:  I think that's an appropriate

18   commitment to make as well.  And that's -- I think that a

19   simple commitment that you will, number one, I agree to

20   refrain from any ad hominem attacks against Mr. Geltzer in

21   court papers.  Number two:  I agree to comply with court

22   orders and rules.  That's it.  Number three:  the trustee

23   agrees to withdraw his sanctions motion.  That would -- that

24   could be your stipulation.  Right there.

25        MR. DAHIYA:  The trustee should also say that ad

1    hominem (indiscernible - 2:56:24) he should also say that

2    the parties will not -- the trustee acted improperly in this

3    case, Your Honor.

4              MR. GELTZER:  What did he say?

5              THE COURT:  I think his view is that you have --

6    that you should make a similar commitment not to engage in

7    an ad hominem attack against him.

8              MR. GELTZER:  I'm sorry, Judge.  I'm not going to

9    agree to that because that's assumes that I did so and I

10   have not.

11             MR. DAHIYA:  (Indiscernible - 2:56:54).

12             MR. GELTZER:  (Indiscernible - 2:56:55) There's

13   nothing in the record in this case or these other cases,

14   where I made any attacks on him whatsoever.

15             MR. DAHIYA:  (Indiscernible 2:57:06) trustee, it's

16   a very deep (indiscernible - 2:57:23).

17             MR. GELTZER:  (Indiscernible - 2:57:24).

18             THE COURT:  I think --

19             MR. DAHIYA:  (Indiscernible - 2:57:25) discussion

20   about it.

21             THE COURT:  I think you're -- I think you're

22   reading too much into it, Mr. Dahiya.  And --

23             MR. DAHIYA:  (Indiscernible - 2:57:33) another

24   case, he is going to do the same, he's going to bring this

25   up and that's not -- (indiscernible - 2:57:40) do the same

1    (indiscernible - 2:47:42) case because (indiscernible -

2    2:57:43) admission, it applies to that too.

3            THE COURT:  I don't know --

4            MR. DAHIYA:  There is nothing special about

5    (indiscernible - 2:57:52) about the other person, Your

6    Honor.

7            THE COURT:  Well, I think that in this case --

8            MR. GELTZER:  (Indiscernible - 2:57:56).

9            THE COURT:  Excuse -- let --

10           MR. GELZTER:  -- the facts.

11           THE COURT:  Can I respond, Mr. Geltzer?

12           MR. GELTZER:  Of course, Judge.  I'm sorry.

13           THE COURT:  I think that what is different in this

14   case is that in my view to my -- the way I see it is that

15   you have attacked Mr. Geltzer personally in this case and he

16   has not done the same thing with regard to you.  He has -- I

17   don't think -- I think that the level of personal attack has

18   been quite different.  Mr. Geltzer has complained about

19   things you have done in the context of this case, but that

20   is different than accusing, you know, as you have accused

21   him of discrimination and misconduct.

22           MR. DAHIYA:  (Indiscernible - 2:58:42) client is

23   willing to testify.

24           THE COURT:  Well, I don't care what your -- you

25   know, what -- I don't -- you think you're going to put your

1    client -- your client's opinion is -- do you think that that

2    is --

3                MR. DAHIYA:  (Indiscernible 2:59:01).

4                THE COURT:  -- that that proves --

5                MR. DAHIYA:  (Indiscernible - 2:59:04) personally.

6    What happens is that you have a 341 meeting, Your Honor, and

7    we see that -- I --

8                THE COURT:  Well, I -- you're right.  I'm not

9    attending the 341 meetings and it's not appropriate for you

10   to be putting -- for you to make representations about what

11   has happened at a 341 meeting in court papers; particularly

12   not in the context of attacking the trustee.  If there's

13   something that you think needs to be brought to my

14   attention, you need to provide a transcript.  This is an

15   unsubstantiated ad hominem attack and the fact that your

16   client may have -- whatever your client may have thought or

17   felt or what you may feel, is really of no relevance here.

18   Certainly not of -- it's of relevance to me in the context

19   of this case.  You can, again, you can bring this to the

20   attention of the United States Trustee.

21               MR. DAHIYA:  Yes, Your Honor.

22               THE COURT:  But this is not my -- this is not

23   something that you can -- that is appropriate in this case.

24   And particularly not when you -- in an unsubstantiated way.

25   And it's not of any relevance to the issues in the case,

1    either.

2              MR. DAHIYA:  Yes, Your Honor.  I have a request

3    and my request is -- let the trustee (indiscernible -

4    3:00:00) --

5              MR. GELTZER:  I don't understand --

6              THE COURT:  I -- we can't --

7              MR. DAHIYA:  (Indiscernible - 3:00:30).

8              THE COURT:  What?  I --

9              MR. DAHIYA:  And --

10             THE COURT:  I can't understand you, Mr. Dahiya.

11   Go --

12             MR. DAHIYA:  I mean, Your Honor -- what I was

13   saying was, I would (indiscernible - 3:00:38) or the trustee

14   can adopt the terms of the stipulation.  (Indiscernible -

15   3:00:45) agree with that.  (Indiscernible - 3:00:50) on this

16   issue and let the (indiscernible - 3:00:57) that I like.

17             THE COURT:  Well, how about if I suggest what the

18   terms are?

19             MR. DAHIYA:  Okay.  (Indiscernible - 3:01:07) Your

20   Honor, that's --

21             THE COURT:  Sorry.

22             MR. DAHIYA:  (Indiscernible - 3:01:08) to that.

23             MR. GELTZER:  (Indiscernible - 3:01:09).

24             THE COURT:  Well, you know what, if you -- I think

25   maybe I -- I don't want to go beyond where I should go with

1   this.  But I think -- and I will --

2          MR. DAHIYA:  I think we need a short -- let me

3   think on the terms and (indiscernible - 3:01:27).

4          THE COURT:  Why do you need -- why do you have to

5   think about it?  It's very simple.

6          MR. DAHIYA:  (Indiscernible 3:01:37) you said, he

7   feels that (indiscernible - 3:01:44) with a mutual request

8   that we will respect each other and they will not do ad

9   hominem attacks.  That shows -- I mean, he said no, he won't

10  do that because it's a vicarious admission on his part.  I

11  think, same thing applies to me, too.

12         THE COURT: But you have engaged --

13         MR. DAHIYA:  (Indiscernible - 3:02:04) when I'm

14  fighting for the clients, fighting for -- and I have respect

15  for the law.  (Indiscernible - 3:02:12). And now that --

16         THE COURT:  All right.  But --

17         MR. DAHIYA:  (indiscernible - 3:02:14), Your

18  Honor.

19         THE COURT:  But you have engaged in ad hominem

20  attacks, Mr. Dahiya.

21         MR. DAHIYA:  (Indiscernible - 3:02:23) as I said

22  that, I'm not sure this is -- can be dismissed as an ad

23  hominem attack.  I think the trustee might get a little

24  picky about it as to why (indiscernible - 3:02:38) under

25  these -- (indiscernible - 3:02:45) has to be an objective

1    reality (indiscernible - 3:02:48) just because someone

2    (indiscernible - 3:02:53) issue and from some subjective

3    (indiscernible - 3:02:56).

4         THE COURT:  I think in the context --

5         MR. DAHIYA:  I mean, look at this --

6         THE COURT:  -- of this case --

7         MR. DAHIYA:  -- there are other people that

8    (indiscernible - 3:03:02) another attorney in the cases --

9         THE COURT:  I think in the context of this case

10   accusing Mr. -- the trustee of discrimination is an ad

11   hominem attach particularly since it has zero relevance to

12   any issue that would -- that I would be -- that would ever

13   be before the Court in this case.  That is before the Court

14   in this case.  The relevant -- the issues before the Court

15   in this case had to do with your client's production of the

16   documents and the merits of the trustee's action.  And what

17   -- your belief or your allegations about the trustee had no

18   relevance to that.  None whatsoever.  Even if the trustee --

19   even if you were right about that, your client still has to

20   produce documents.  You see?  That's my point.

21        MR. DAHIYA:  I know (indiscernible - 3:03:54).

22        MR. GELTZER:  Judge, may I make a suggestion?  May

23   I make a suggestion, please?

24        THE COURT:  Please.

25        MR. GELTZER:  Why don't Mr. Dahiya and I order a

1    copy of the transcript of this hearing and split the costs

2    for it and then based upon that, Mr. Dahiya can settle and

3    order and if I have problems with the order, I'll state my

4    problems with the order, or we settle upon an order, and

5    then the Court can decide whether or both or neither.

6              THE COURT:  Maybe -- if you think it's any

7    possibility that the two of you could agree on a form of

8    order?

9              MR. DAHIYA:  I will try my best, Your Honor.

10             THE COURT:  Okay.  All right.

11             MR. DAHIYA:  I'm -- Your Honor, I might have to be

12   (indiscernible - 3:04:56) after tomorrow for (indiscernible

13   - 3:04:58) I'll be available online (indiscernible -

14   3:05:02) go see my mother and just want you to know about

15   it.

16             THE COURT:  Well, can I -- maybe what I should do

17   is this.  How about if I say that -- direct you two each to

18   settle an order within 30 days?  Is that too much time, not

19   enough time?  Well, it wouldn't be not enough, I should

20   think.

21             MR.DAHIYA:  Well, if you give us more time because

22   (indiscernible - 3:05:27) visit my mother and I just --

23             THE COURT:  But Mr. Dahiya --

24             MR. DAHIYA:  Yes.

25             THE COURT:  -- you said you were going to away for

```
 1    14 days.

 2             MR. DAHIYA:  I'll be out for (indiscernible -

 3    3:05:34), Yes, Your Honor (indiscernible - 3:05:36).

 4             THE COURT:  I know.  I know.  Okay.  Mr. Geltzer,

 5    does -- what do you think?

 6             MR. GELTZER:  I think that's plenty of time,

 7    Judge.  You have three simple sentences in your order and I,

 8    you know, that's it.  There were three points to your order

 9    and I'll try to write it as close to what you said --

10             THE COURT:  That's --

11             MR. GELTZER:  -- as I possibly can.

12             THE COURT:  That's my suggestion.  And you can,

13    you know --

14             MR. GELTZER:  I'll settle an order.

15             THE COURT  -- do with it as you will.

16             MR. DAHIYA:  Okay.  That's fine, Judge.

17             MR. GELTZER:  And Mr. Dahiya's going to settle an

18    order as well, correct?

19             MR. DAHIYA:  Yes, I will. Okay.

20             MR. GELTZER:  And so, we'll just adjourn this

21    hearing again then --

22             MR. DAHIYA:  Again, (indiscernible - 3:06:17)

23    stipulation.

24             THE COURT:  There's to be a stipulation, wouldn't

25    it?
```

1        MR. DAHIYA:  (Indiscernible - 3:06:25), yes, Your

2   Honor.  It has to be, mutual covenants.

3        MR. GELZTER:  It can be -- we can settle a

4   stipulated order.

5        MR. DAHIYA:   That's fine.

6        MR. GELTZER:  That work for you, Judge?

7        THE COURT:  That does, although I guess it's not -

8   - I can't really sign off on it unless your both -- if

9   you've both signed it, right?

10        MR. DAHIYA:  Yes, Your Honor.

11        THE COURT:  So I guess if you can't agree, we're

12   back here again.

13        MR. DAHIYA:  That'll give us time to think about

14   it, Judge.

15        MR. GELTZER:  I'd just like to know what you want

16   me to do now, Judge.  I'm --

17        THE COURT:  Understood.

18        MR. GELTZER:  What do you want me to do?  What do

19   I do now?  I'm not --

20        MR. DAHIYA:  (Indiscernible - 3:07:09) the terms

21   of the stipulation that you want and I'll send the terms of

22   the stipulation that I want.  We each will try to agree.

23   It's a moot point.  We'll take the Court's help in this

24   case.

25        THE COURT:  Okay.  Why don't we do that?  And I'll

1   tell you what; why don't we schedule another conference so I

2   won't -- and we can discuss any outstanding issues you may

3   have on this.

4           MR. DAHIYA:  Thank you, Your Honor.

5           THE COURT:  Would that be okay?

6           MR. GELTZERZ:  That's fine, Judge.

7           THE COURT:  And should I give you a conference

8   date for the week of February 24th?

9           MR. DAHIYA:  Judge, can you please, Your Honor,

10  can you make it in March?  The first week of March, that's

11  fine?

12          THE COURT:  Are you not back in the United States

13  until March?

14          MR. DAHIYA:  No, I'm back. I'm back, Your Honor.

15  I have other cases -- (indiscernible - 3:07:57)--

16          MR. GELTZER:  He wants the first week in March,

17  that's fine, Judge.

18          MR. DAHIYA:  (Indiscernible - 3:08:01) of March is

19  good for me.

20          MR. GELTZER:  It doesn't matter, one week, another

21  week.

22          THE COURT:  Okay.  March 6th?

23          MR. DAHIYA:  6th?

24          THE COURT:  At 3 o'clock.

25          MR. GELTZER:  I have a deposition starting at two,

1   Your Honor.

2           THE COURT:  Okay.  The 5th?

3           MR. GELTZER:  I have to be before Judge Lord, as

4   of now, at two o'clock.

5           THE COURT:  Okay.

6           MR. GELTZER:  I can --

7           THE COURT:  Can we do it at -- do you want to do

8   it at one on March 5th?

9           MR. GELTZER:  No, because I'll be on my way there.

10  I could to it the morning of March 5, or --

11          MR. DAHIYA:  I'm in court (indiscernible -

12  3:08:46).

13          MR. GELTZER:  (Indiscernible - 3:08:47) I'll be in

14  the -- I would think Judge Lord's hearing should be over by

15  4, 4:30 it's not a big case but I think it should be over by

16  then.  Do 4 or 4:30 on March 5, Judge.

17          THE COURT:  How's that?  If you're here, you can

18  just -- you could just come to the courtroom then rather

19  than --

20          MR. GELTZER:  That would be better in case the

21  hearing runs late.  I don't think I'll get back to my office

22  by 4 or 4:30, so -- but I can certainly be there at 4:30 and

23  if I'm still before Judge Lord, perhaps he'll just give me

24  some additional time.

25          THE COURT:  March 5th, 4:30.  Mr. Dahiya?

1         MR. DAHIYA:  Your Honor, just give me one second.

2    I'll just -- I think -- March 5th.  Just give me a second

3    here, please.  What time, Your Honor?

4         THE COURT:       Four thirty.

5         MR. DAHIYA:  That's fine, Judge.

6         MR. GELTZER:  Judge.

7         THE COURT:  Yes.

8         MR. GELTZER:  Question, please.  Assuming we come

9    to an agreement on this stipulation, that's fine.  If,

10   however, we don't come to an agreement on this stipulation,

11   I hope the Court will at least take a look at each of the

12   stipulations that was put before the other party.

13        THE COURT:  Well, let's -- we'll talk about that

14   -- I'm not going to address that right now.  I think if

15   you're unable to agree, I'll probably end up having to write

16   an opinion.

17        MR. GELTZER:  Okay.

18        THE COURT:  And we'll -- I'll -- and it's going to

19   be -- it's going to be difficult -- but I -- but I'll be

20   glad to do it.  So I think that -- I think it would be a

21   very good thing for both of you if you could -- if this

22   could be -- if you could put this case away and move

23   forward.

24        MR. GELTZER:  By when should each of us provide

25   the other party with the our proposed stipulation?

1          THE COURT:  February -- how about in one week?  Is

2     that possible, Mr. Dahiya?

3          MR. DAHIYA:  (Indiscernible - 3:11:11)

4          MR. GELTZER:  (Indiscernible - 3:11:12)

5          THE COURT:  Go ahead.

6          MR. GELTZER:  We have to get the transcript,

7     Judge.  I don't think we can get it in a week.

8          THE COURT:  What would be your -- what --

9          MR. GELTZER:  And --

10          THE COURT:  -- do you --

11          MR. GELTZER:  I think we should split the cost of

12     the transcript, as I said.

13          THE COURT:  Okay.  Mr. Dahiya, are you prepared to

14     split the cost of the transcript?

15          MR. DAHIYA:  I don't know.  How much would it

16     cost?  I'm (indiscernible - 3:11:31) money, Judge.  You

17     know, I'm living check to check and I -- (indiscernible -

18     3:11:40), the trustee, I think (indiscernible - 3:11:41).

19          MR. GELTZER:  Well, that's not correct at all.

20     That's an understatement.

21          MR. DAHIYA:  All right.  I mean I (indiscernible -

22     3:11:50), Your Honor, and then I'll just (indiscernible -

23     3:11:59).

24          MR. GELTZER:  I'll pay for my own transcript but

25     I'm not going to provide it.

1          MR. DAHIYA:  I don't need the transcript.  I have

2      a sharp memory.  That's fine.

3          MR. GELTZER:  That's fine and just please allow me

4      time to get the transcript, Judge, without having to incur

5      the expense of ordering it on an expedited basis.

6          THE COURT:  What -- and what date would you like

7      to -- would you propose with --

8          MR. GELTZER:  (Indiscernible - 3:12:20) how long

9      does it take just to get transcripts?

10          THE COURT:  I think it's 30 --

11          MR. GELTZER:  Probably around 2 weeks.

12          THE COURT:  How long is it - non-expedited?  I'm

13      asking Mrs. Leonard (ph).  Do you know?

14          MR. DAHIYA:  (Indiscernible - 3:12:33).

15          MR. GELTZER: Why don't we each have to provide our

16      stipulations --

17          THE COURT:  Okay.

18          MR. GELTZER:  -- to the other party by Friday --

19      by Monday, February -- by Friday, February 28th?

20          MR. DAHIYA:  (Indiscernible - 3:12:46).  February

21      28th, okay.

22          MR. GELTZER:  Is that acceptable, Judge?

23          THE COURT:  That's fine.  I think that getting the

24      transcript if 30 days.

25          MR. GELTZER:  Oh, 30 days.

1           THE COURT:  Without paying extra for expedited.

2           MR. GELTZER:  So do you want to put the conference

3    further out, Judge?

4           THE COURT:  I don't look forward to reading the

5    transcript of this conference.

6           MR. GELTZER:  I don't look forward to it either.

7           THE COURT:  Okay.  You want --

8           MR. GELTZER:  Or the one from Wednesday, which

9    I've also ordered.

10          THE COURT:  Okay, then.

11          MR. GELTZER:  So you want to move it beyond

12   March 5 so that I can get it and --

13          THE COURT:  March 19?

14          MR. GELTZER:  March 19 - that's fine.  What time,

15   Judge?  No, I can't do by phone.  Whatever time you like.

16          THE COURT:  Four o'clock.

17          MR. GELTZER:  Four o'clock on Wednesday, March 19.

18          MR. DAHIYA:  (Indiscernible - 3:13:53).

19          THE COURT:  Okay.  So when are you going to

20   exchange stips?

21          MR. DAHIYA:  (Indiscernible - 3:13:59), Your

22   Honor.

23          MR. GELZTER:  No, because that's why we moved the

24   date to allow more time to get the transcript, so --

25          THE COURT:  How about the 14th?

1          MR. GELTZER:  That's fine.  Friday, the 14th.

2          THE COURT:  Yes.

3          MR. DAHIYA:  (Indiscernible - 3:14:20)  Okay.

4          THE COURT:  All right.  Anything else?

5          MR. DAHIYA:  No, thank you, Judge.

6          MR. GELTZER:  I have nothing else.

7          THE COURT:  Okay.

8          MR. DAHIYA:  Thank you.  Good day, Your Honor.

9          THE COURT:  Thanks.

10         MR. GELZTER:  Bye.

11

12

13     (Whereupon proceedings concluded at 3:15 PM)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3     I, Pamela A. Skaw, certify that the foregoing transcript is

4     a true and accurate record of the proceedings.

5

6

7

8

9

10

11

12

      Veritext

13

      330 Old Country Road, Suite 300

14

      Mineola, NY 11501

15

16

      Date:  February 21, 2014

17

18

19

20

21

22

23

24

25