UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In re:  Chapter 7

       **MAN KIT NG,**  Case No. 11-46867 (CEC)

             Debtor.

---

**ROBERT L. GELTZER**, as Trustee for
the Estate of **MAN KIT NG**,

             Plaintiff,

      -against-  Adv. Pro. No. 12-01343 (CEC)

       **MAN KIT NG,**

            Defendant.

---

**TRUSTEE'S[1] REPLY TO DAHIYA'S MEMORANDUM IN OPPOSITION TO THE MOTION FOR AN ORDER HOLDING KARAMVIR DAHIYA, ESQ. AND/OR THE DAHIYA LAW OFFICES, LLC IN CONTEMPT and IMPOSING SANCTIONS AGAINST THEM PURSUANT TO § 105(a) OF THE UNITED STATES BANKRUPTCY CODE and 28 U.S.C. § 1927**

      Robert L. Geltzer, Chapter 7 trustee (the "Trustee") for the estate of Man Kit Ng, the debtor (the "Debtor"), by and through his undersigned counsel, hereby submits this reply (the "Reply") to Dahiya's October 23, 2017 Memorandum in Opposition to the Motion (the "Opposition") to the Trustee's sanctions motion (the "Sanctions Motion") for an Order Holding Karamvir Dahiya, Esq. and/or the Dahiya Law Offices, LLC in Contempt and Imposing Sanctions against them pursuant to § 105(a) of the United States Bankruptcy Code ("§ 105") and 28 U.S.C. § 1927.

---

[1]     All capitalized terms not defined herein shall have the meanings ascribed to them in the Sanctions Motion [ECF No. 56].

In light of our very thorough and lengthy Sanctions Motion, which we stand by and reaffirm, we shall make this Reply as brief as possible, especially in light of the fact that some of Dahiya's statements in his Opposition are so totally incomprehensible that no reply to them can be made.

Before addressing his faulty reasoning[2] and invocation of purported arguments as to: (1) jurisdiction, (2) law of the case, (3) collateral estoppel, (4) res judicata, and (5) the merits, it must be stated that it would seem that Dahiya has no shame and no judgment in accusing me yet again of "extortion"[3] (p.[4] 11) -- his prior assertion of which is an essential basis for our Sanctions Motion. It simply defies credulity that he would again do so and thereby reaffirm this sanctionable statement (among his Five Sanctionable Statements), conduct which we discussed in detail at pages 94 to 100 of our Sanctions Motion, especially when his baseless accusation adds absolutely nothing to the weight of his Opposition.

Dahiya's rambling, oft-unintelligible Opposition egregiously -- and presumably, intentionally -- omits any reference whatsoever to the following critical first sentence in the Conclusion portion of the Stong Decision in the <u>Brizinova</u> case with respect to my motion therein for contempt and sanctions against Dahiya:

> For the reasons stated herein, and based on the entire record, to the extent that the Trustee seeks an order of contempt for violations of the Ng Stipulated Order and the Ng Mediation Order, the Motion

---

[2] Several of the cases that Dahiya cited in his Opposition involve procedural aspects so divergent from the procedural grounding in this case, that they are wholly inapplicable here.

[3] When Judge Trust of this Court in the case of <u>In re Sukhvir Singh</u>, case #17-70402 (AST) admonished Dahiya for his use of the word "extortionist" in attacking trustee Pergament, and Judge Trust implied that Dahiya's use of the word is, perhaps, sanctionable, Dahiya apologized. Notwithstanding Dahiya's apology in that case, Dahiya unapologetically and, indeed, brazenly continues to use the word to describe me. (<u>See</u> footnote 62 on page 88 of our Sanctions Motion).

[4] "p." followed by a numeral refers to the page in Dahiya's Opposition.

> for Contempt and Sanctions is denied **without prejudice to a request for such relief in the [Ng] case in which those orders were entered** [emphasis added].

Pursuant to the above-quoted sentence, this Court explicitly authorized me to bring the instant Sanctions Motion before Your Honor in this, the Ng case. Accordingly, Dahiya's endlessly repetitive mantras in his Opposition that Your Honor is bereft of jurisdiction to entertain the instant Sanctions Motion are devoid of merit.

The Opposition (p. 11) claims that our instant Sanctions Motion is the "same motion" as that, that I made in the Brizinova case; clearly, it is not. This Sanctions Motion:

(a) calls for sanctions not only under § 105, but also under 28 U.S.C. § 1927 which the sanctions motion before Judge Stong did not; and

(b) contains facts about Dahiya at pages 37, 46, 49, 88-89, and 91 which occurred subsequent to the Brizinova Sanctions Motion and were not included therein; and

(c) sets forth the additional fact that Dahiya disclosed in his Appellant's Response to the Appellee's [trustee Debra Kramer] Motion for Sanctions (attached as Exhibit "G" to the Sanctions Motion) in the Second Circuit, Dahiya Law Offices LLC, et al. v. Debra Kramer, as Trustee of the Estate of Shahara Khan (case #14-1151), at page 13, that: "In the few meetings we had, Judge Stong kept telling the undersigned, 'Mr. Dahiya, it takes a bigger man to walk away'"; and

(d) details Dahiya's specific violations of the Civility Rules. The improper disclosure Dahiya made, not contained in the Brizinova Sanctions Motion, is an incontrovertible violation of the Mediation Order and, thus, a violation of the Craig Order.

This Sanctions Motion also addresses issues that Judge Stong did not decide, as well as the issues for violations of the Dahiya Agreement, the Craig Order, and the Mediation

Order, which Judge Stong explicitly allowed me to pursue in this case:

> [f]or these reasons, and based on the entire record, to the extent that this motion [the Brizinova Sanctions Motion] seeks an order of contempt for violations of the *Ng* Stipulated Order [the Dahiya Agreement and the Craig Order] and the *Ng* Mediation Order, it is denied without prejudice to a request for such relief in the case [the Ng case] in which those orders were entered (Stong Decision p. 22)

In her conclusion on page 34, Judge Stong reiterated the foregoing as follows:

> For the reasons stated herein, and based on the entire record, to the extent that the Trustee seeks an order of contempt for violations of the *Ng* Stipulated Order and the *Ng* Mediation Order, the Motion for Contempt and Sanctions is denied without prejudice to a request for such relief in the case in which those orders were entered.

If we had wanted to pursue the Appeal forthwith, rather than to comport with Judge Stong's denial without prejudice to come before Your Honor as to Dahiya's violations of the Dahiya Agreement, the Craig Order, and the Mediation Order, we would not have sought the adjournment of the dates for the Designation of the Record on Appeal and the Statement of the Issues on Appeal, which this Court permitted by granting my unopposed-by-Dahiya-Order to Show Cause to that effect, and we would not have made the unopposed-by-Dahiya-Reopen Motion (the "Reopen Motion"), granted by Your Honor.

In accord with Judge Stong's decision, we made the Reopen Motion to reopen this case and adversary proceeding before Your Honor and in those moving papers, as in the Order to Show Cause, made it clear that the purpose that we sought was precisely to move to find Dahiya in contempt and to sanction Dahiya in the instant case; if Your Honor had believed that that was the same motion, then the Reopen Motion could have been denied; but it was not; Your Honor granted it.

It is difficult to understand that Dahiya is "speechless" (Oh: if it were so!) in that, as stated, the Order to Show Cause and the Reopen Motion were clear that we were seeking them in order to move to hold Dahiya in contempt and to sanction him in this, the Ng case; and he did not oppose either one; whereupon, Judge Stong and Your Honor granted the Order to Show Cause and the Reopen Motion, respectively. In order to conserve judicial and litigants' resources, we sought and secured the adjournment of the time to file the Designation of the Record on Appeal and the Statement of the Issues on Appeal. That was done because Judge Stong clearly stated that she had not decided all the issues raised in the Brizinova Sanctions Motion.

In that Dahiya is simply not correct that "Judge Stong has already ruled on this Motion" (p. 3), all the cases that Dahiya cites to support that incorrect proposition are irrelevant and not applicable.

To the extent that a "ping-pong game" is going on, I did not initiate it and do not want to play it, but because Judge Stong decided not to decide certain issues and left them for Your Honor to decide, it is no fault of mine.

With respect to **JURISDICTION**, Dahiya cites Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) for the general proposition that the "filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," and, thus, he contends that the instant Sanctions Motion should be dismissed. To invoke Griggs to argue that the Sanctions Motion should not be considered is not correct. Griggs involved a premature appeal of a District Court decision to the Court of Appeals prior to the disposition of a

pending motion to alter or amend a judgment of the District Court under Rule 59 of the Federal Rules of Civil Procedure. Here, not only is there no appeal to the Court of Appeals, but there is no pending motion under Rule 59. In addition, Judge Stong, in effect, granted a stay with respect to the Appeal made to the District Court in the <u>Brizinova</u> case in order for Your Honor to exercise jurisdiction with respect to this Sanctions Motion in the instant case, which Sanctions Motion Judge Stong explicitly allowed to be pursued in her decision in <u>Brizinova</u>.

Dahiya also cites the United States Court of Appeals, Second Circuit case of <u>New York State Nat'l Org. For Women v. Terry</u>, 886 F.2d 1339 (2d Cir. 1989), to support his erroneous position that this Sanctions Motion should not be considered. That case specifically provides for <u>an exception regarding jurisdiction in connection with an appeal</u>. An exception to "[t]he total divestiture of district court jurisdiction occurs when the judgment appealed from does not determine the entire action, in which case the district court may proceed with those matters not involved in the appeal." <u>Id.</u> at 1350. That is the situation in this <u>Ng</u> case. Clearly, Judge Stong did not decide on the merits whether Dahiya violated the Dahiya Agreement, the Craig Order and the Mediation Order; she said that a determination of these issues would necessitate a decision by Your Honor upon a motion made in the instant <u>Ng</u> case.

"When a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal." <u>In re Transtexas Gas Corp.</u>, 303 F. 3d 571, 580 n. 2 (5th Cir. 2002). <u>See e.g.</u>, <u>Sullivan Cent. Plaza I, Ltd. V. BancBoston Real Estate Capital Corp</u>. (<u>In re Sullivan Cent. Plaza I, Ltd.</u>) 935 F.2d 723, 727 (5th Cir. 1991) (we decline to adopt the "broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon

the issue involved in a pending appeal and may not do anything which has any impact on the order on appeal").

Rucker v. U.S. Dept. of Labor, 798 F.2d 891 (6th Cir. 1986), is an out of district case cited by Dahiya (p. 8) which undermines his argument regarding jurisdiction of the District Court. In that case, the Court of Appeals stated that: "a district court loses jurisdiction over an action when a party perfects an appeal . . . ." Id. at 892. If this Court were to follow that rule, then this Court would still have jurisdiction inasmuch as our appeal has not been perfected, and cannot be until this Court, when appropriate in accordance with Judge Stong's May 19, 2017 Order Extending Time for Filing the Designation of the Record on Appeal and the Statement of Issues on Appeal, transmits the record and statement to the District Court pursuant to Bankruptcy Rule 8009.

Dahiya's argument with respect to the doctrine of **LAW OF THE CASE** is totally irrelevant here. With respect to seeking sanctions for violations of the Dahiya Agreement and the Craig Order and the Mediation Order, Judge Stong made it clear that they should be decided by Your Honor. Moreover, we contend that Your Honor should hear and decide Dahiya's violation of Rules of Professional Conduct 3.1(a) and (b)(1), (2) and (3); 3.2; 3.3(a)(1) and (f)(2); 3.4 (a)(6), (c), (d)(1) and (3) and (e); and 8.4(a), (c) and (d), with respect to which the closest that Judge Stong came to finding no violation was her statement relative only to Rules 3.1 and 3.4 that we had not shown or established a violation (see our Sanctions Motion, footnote 35 on page 50); she made no ruling whatsoever as to whether Dahiya violated Rules of Professional Conduct 3.2, 3.3, and 8.4. And, even with respect to the violations by Dahiya of Rule 3.4, Judge Stong was totally silent regarding 3.4(a)(6) and (c), and 3.4(d)(1); thus,

certainly, Your Honor should decide on those. Thus, any argument in the Opposition founded upon law of the case has no place.

It also could be argued that to any extent that law of the case applies (which I contend it does not), Dahiya waived that argument by not opposing the Order to Show Cause granted by Judge Stong and the Reopen Motion which Your Honor has permitted, both of which made it clear that the reason sought for those motions was to bring on this Sanctions Motion. The March 15, 2017 Affirmation in Support of Order to Show Cause for Order to Extend Time for Filing the Designation of the Record on Appeal and the Statement of Issues on Appeal pursuant to Federal Rules of Bankruptcy Procedure 9006 (b)(1) and 8009, which this Court granted on May 19, 2017, states in paragraph 10:

> Because of Judge Stong's language, quoted above in paragraph 9, in order to bring the question of whether Dahiya should be sanctioned for violating the Dahiya Agreement, it becomes necessary to seek relief in the Ng case and adversary proceeding before Chief Judge Craig, perhaps making it somewhat uncertain as to whether the Stong Decision is ripe for appeal with respect to the other violations of the Dahiya Agreement.

And, my March 13, 2017 Motion for Order to Reopen Case and Adversary Proceeding, states in paragraph 13:

> The Third factor is "whether the bankruptcy court previously determined the appropriate forum to adjudicate the dispute." Judge Stong made clear by deciding (though we believe incorrectly) that she would not decide whether Dahiya violated the Dahiya Agreement, the Craig Order, and the Mediation Order but that they should be decided "in the case [the instant case] in which those orders were entered, and not here [the Brizinova case]," and only Judge Craig could do so. Thus, it is especially appropriate for Judge Craig to grant the Motion to reopen and decide whether her own orders were violated by Dahiya.

And both (the Order to Show Cause and the Reopen Motion) were granted without any opposition by Dahiya.

For the same reasons, to the extent that **COLLATERAL ESTOPPEL** has any role to play, then it should be applied to preclude Dahiya from in any way objecting to Your Honor's entertaining any of the issues included in our Sanctions Motion. In that he did not oppose the Order to Show Cause and the Reopen Motion then, then he has no right to oppose them now, i.e., he is collaterally estopped from doing so. Certainly, Dahiya's arguments with respect to "**ISSUE PRECLUSION**" (assuming he means collateral estoppel) has no relevance with respect to those Rules of Professional Conduct, that were not decided or addressed by Judge Stong, as stated above; and as to whether Dahiya should be sanctioned for violating the Dahiya Agreement and the Craig Order and the Mediation Order (which is sought herein), those issues were specifically denied without prejudice, with Judge Stong indicating that they would have to be decided by Your Honor. And again, it is noted that this Sanctions Motion also seeks sanctions for violations of 28 U.S.C. § 1927, which were not sought in the Brizinova Sanctions Motion.

Dahiya's argument as to "**CLAIM PRECLUSION**" (by which I assume he means res judicata) is totally inapplicable here in that no separate action has been brought; indeed, he cannot argue, on one hand, that this is the same motion in an attempt to avail himself of collateral estoppel which is geared to eliminating issues already decided in the same case, while, on the other hand, argue that res judicata applies in that that doctrine only applies if a separate action was brought asserting claims already decided pursuant to a judgment already rendered in the first action.

In the instant case there is no "subsequent suit" and there is no "judgment." With respect to collateral estoppel, that doctrine "bar[s] the re-litigation of an issue that was raised, litigated and <u>actually</u> decided by a judgment in a prior proceeding regardless of whether the two suits are based on the same cause of action." [Emphasis added.] <u>Tucker v. Arthur Andersen & Co.</u>, 646 F.2d 721 (2d Cir. 1981). Judge Stong did not decide whether Dahiya had violated the Dahiya Agreement, the Craig Order, and the Mediation Order; on the contrary, as stated, she refused to decide those issues and at least inferentially suggested that they be brought before Your Honor inasmuch as Judge Stong said that they should be decided by the Judge who had issued the order. Thus, Dahiya cannot avail himself of collateral estoppel. <u>Tucker</u> makes clear that litigating the issue is not sufficient for collateral estoppel to come into play; for it to do so "the question . . . [had to be] actually decided."

As far as Dahiya's Opposition on the **MERITS**, I note again that he continues to accuse me of trying to "extort a settlement," and that I have engaged in "fast settlements," clearly carrying an insulting and disparaging tone. Even putting that aside, however, he seems not to be able to understand "what part of the order had been violated?" (p. 12), notwithstanding the particularity in our Sanctions Motion as to how each of his Five Sanctionable Statements violates particular sections of the Rules of Professional Conduct and the Civility Rules and, thus, the Craig Order.

Yet, he admits (p. 13) that I "particularize the complaint by tying the five impugned statements [i.e., the Five Sanctionable Statements] to the New York Rules of Professional Conduct." Nowhere does he deny that he did not -- because he could not -- and because he cannot -- deny that his false claims that I committed "extortion" and otherwise, were

not frivolous because he cannot show that they were warranted under existing law. How much "particularity" did he need in addition to our tying every one of his Five Sanctionable Statements to every violation of the Rules of Professional Conduct and the Civility Rules? It seems he craves more particularity, but how much more particularity could have been given, and how much more "ample notice" (p. 14) could he have wanted, and what better "reasoning" does he need, and what more does he believe that this Court needs to understand this Sanctions Motion?

And, while critizing the length of my Sanctions Motion, he nevertheless claims that I "fail . . . to elucidate" how they violated the Dahiya Agreement -- and he says nothing about my argument that his Five Sanctionable Statements violated the Craig Order.

In fact, he does not even argue that the Five Sanctionable Statements are not violations of the Craig Order and, moreover, that they are not bad faith per se so as to be in violation of 28 U.S.C. § 1927. It is simply untrue that Dahiya has not multiplied proceedings -- in other proceedings (as set out on pages 9, 10, 43, 46, 48, and 77 in our Sanctions Motion) and, more importantly, in this one. As stated in our Sanctions Motion at pages 32 and 59, no lawyer, especially no trustee worth her or his salt, would let Dahiya's Five Sanctionable Statements go unanswered. And if those Five Sanctionable Statements had not been made, then these proceedings would not have been multiplied, as they have been by and because of Dahiya.

Yet, he seems unable to comprehend how his Five Sanctionable Statements are "contemptuous." And, after again accusing me of extortion, Dahiya states: "And we will not settle." One cannot help but wonder whether he consulted with his clients and whether his clients gave him permission to make such an absolute statement! Indeed, one not even relevant to this Sanctions Motion.

As far as § 105 is concerned as discussed by Dahiya, the argument in our Sanctions Motion is not that § 105 was violated per se but, rather, that § 105 embraces the bankruptcy courts' inherent power to sanction, and sanction it should for Dahiya's violations of the Rules of Professional Conduct, the Civility Rules, the Craig Order, and the Mediation Order.

I do not think that I or anyone could have made it clearer that Dahiya's Five Sanctionable Statements intentionally and repeatedly and directly violated the Craig Order. And for those violations he should be held in contempt and sanctioned, in that the sanctions being sought are not here being sought as a criminal sanction but, rather, as civil sanctions to compensate us and the estate for the time necessarily incurred to respond to Dahiya for having multiplied the proceedings in bad faith, and to deter Dahiya, if at all possible, from such words and deeds once and for all.

I could not agree more with Dahiya that: "Civil contempt is a failure to obey a court order issued for another party's benefit and such sanctions are coercive or remedial in nature" (p. 18). No doubt, there was a court order, viz., the Craig Order. No doubt, that that Craig Order was for "another party's benefit," viz., the estate's and mine in that, among other things, the Dahiya Agreement, which was specifically incorporated into the Craig Order, requires him to be "courteous and civil" to me and comply with the law. Can anyone conclude that any one, or all, of the Five Sanctionable Statements are "courteous and polite"? And, yes, this Sanctions Motion seeks, among other things, that this Court "coerce" Dahiya into complying with the Craig Order, as well as the law and the Court's other Rules; evidently, voluntary compliance, even though required, is not in his nature. Dahiya is, indeed, much beyond "a reluctant party to do what a court requires of him" (p. 18). How can he possibly state that he

"conducts and complied with what this Court has asked to do [sic]"? There is no question but that the criteria for this Court to find Dahiya in contempt are satisfied: Your Honor's Order was "clear and unambiguous"; and "the proof of noncompliance is clear and convincing"; and Dahiya "has not diligently attempted in a reasonable manner to comply." Even when he had an opportunity to do so and retract and recant his Five Sanctionable Statements he elected not to do so. (See pages 94-100 in our Sanctions Motion.) How can he possibly argue that "there is absolutely nothing here about the Five Sanctionable Statements which has violated Geltzer-Dahiya stip"?

      Finally, his meritless attempt to invoke a First Amendment violation because we allegedly seek to curtail his mendacious and sanctionable words as exemplified in the Five Sanctionable Statements and to have Your Honor coerce his compliance with Your Honor's Orders and the law and rules of this Court, as well as his characterization of my Sanctions Motion as "baseless," are by their very nature subjecting him to yet another sanctions motion.

For all the above reasons, and for all those included in our Sanctions Motion, we request that Dahiya's Opposition be overruled, and that our Sanctions Motion be granted in accord with the proposed order attached thereto.

Dated: New York, New York
December 6, 2017

Respectfully Submitted,

| | |
|---|---|
| Law Offices of<br>ROBERT L. GELTZER<br>Counsel to the Chapter 7 Trustee<br>ROBERT L. GELTZER<br>1556 Third Avenue, Suite 505<br>New York, New York 10128<br>(212) 410-0100<br><br>By: /s/ Robert L. Geltzer<br>    Robert L. Geltzer<br>    Member of the Firm | TARTER KRINSKY & DROGIN LLP<br>Special Litigation Counsel to the Trustee<br>1350 Broadway<br>New York, New York 10018<br>(212) 216-8000<br><br>By: /s/ Robert A. Wolf<br>    Robert A. Wolf |