UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Hearing Date: 2/13/18
Time: 11:00 A.M.

In re:

Chapter 7

**MAN KIT NG,**

Case No. 11-46867 (CEC)

Debtor.

---

**ROBERT L. GELTZER,** as Trustee for
the Estate of **MAN KIT NG,**

Plaintiff,

-against-

Adv. Pro. No. 12-01343 (CEC)

**MAN KIT NG,**

Defendant.

---

**SUPPLEMENT TO TRUSTEE'S JANUARY 2, 2018 MOTION FOR AN ORDER HOLDING KARAMVIR DAHIYA, ESQ. AND/OR THE DAHIYA LAW OFFICES, LLC IN CONTEMPT AND IMPOSING SANCTIONS AGAINST THEM PURSUANT TO § 105(a) OF THE UNITED STATES BANKRUPTCY CODE ("§ 105") AND 28 U.S.C. § 1927 FOR MAKING A 6TH SANCTIONABLE STATEMENT, DATED, FILED AND SERVED ON JANUARY 2, 2018 (ECF #72)**

TO: THE HONORABLE CARLA E. CRAIG,
<u>CHIEF UNITED STATES BANKRUPTCY JUDGE:</u>

This supplements the Motion for an Order Holding Karamvir Dahiya, Esq. and/or

the Dahiya Law Offices, LLC in Contempt and Imposing Sanctions Against Them pursuant to

§ 105(a) of the United States Bankruptcy Code ("§ 105") and 28 U.S.C. § 1927 for Making a 6th

Sanctionable Statement (the "Motion"), dated, filed and served on January 2, 2018 (ECF #72).

As stated at the bottom of page 4 of the Motion, on the date of its filing and

serving, we did not have available to us the transcript of the December 13, 2017 hearing; the

following day, <u>viz.</u>, January 3, 2018 at 12:00 p.m. by email, the transcript was sent to me. A

copy of it is annexed hereto as Exhibit "A" and incorporated herein and made a part hereof by this reference thereto, as well as being similarly incorporated into the Motion. The transcript contains statements by Your Honor (in addition to those paraphrased by us in the Motion) and by Mr. Dahiya that are of great relevance to the Motion and add substantial weight as to why the Motion should be granted by Your Honor.

They include the following:

1. THE COURT: -- So, you wish you could -- you would like to retract that apology because you don't think that it was warranted? Is that what you're saying?

    MR. DAHIYA: The apology, respectfully, was not warranted.

    THE COURT: -- well, you yet -- you want to retract[1] the apology. Because? (Tr. 18:7-12 &19-20)

2. MR. DAHIYA: -- for nothing, Your Honor. I apologize for nothing what happened here. I am the victim. . . . (Tr. 19:3-4)

3. THE COURT: -- So, do you concede that you have not acted in accordance with the Civility Rules?

    MR. DAHIYA: Absolutely, I don't concede. . . . (Tr. 29:23-25).

4. THE COURT: -- your remedy in that situation, rather than name-calling in terms of -- at least, in terms of your -- certainly that

---

[1] This is the exact quote from the transcript of the language to which we alluded in (b) on page 5 of the Motion.

would be the way -- consistent with the Standards of Civility, rather than seeking to embarrass your adversary, or to harass him with accusations of this nature. (Tr. 35:5-10).

5.     THE COURT: -- that's name-calling. If you think that -- if

MR. DAHIYA: No, Your Honor. This --

THE COURT: Absolutely, it is. (Tr. 36:7-10)

6.     **THE COURT: Perjury is lying under oath ... -- that signifies a criminal accusation of criminal activity. How is that consistent with civility? It's not -- and what -- how am I to understand that, other than as I have?....** [Emphasis added.]

MR. DAHIYA: They -- there is -- it is totally not in violation. (Tr. 41:6, & 16-19 & 24-25)

7.     THE COURT: It is -- I'm telling you right now and you better get this through your head that, that type of language is not consistent with this Court's Rules of Civility. And you should know that because it was because of language like that, that this issue came up in this case. This is -- then you went ahead and used it, and it was explained to you then that that is not consistent with the Rules of Civility and I say what they are. You know, the Rules of Civility are not made up by you. They are made -- they are the -- prescribed by the Court....

MR. DAHIYA: -- if you said this is what --

THE COURT: -- like that. Do you understand? Do you even understand what I'm talking about? (Tr. 42:6-15 & 23-25)

8. THE COURT: -- but the way that you're acting is not consistent with that.

MR. DAHIYA: Your Honor -- I mean, using a word "extortion," is not so fatally, like changing the --

THE COURT: Yes, it is. . . . I'm telling you that you're out of bounds.[2] Do you get that?

MR. DAHIYA: -- but then --

THE COURT: -- apologize, so you apologize to Mr. Geltzer for a similarly intemperate comments made in the -- in this case. But now -- but them, you want to retract the apology?

MR. DAHIYA: No, that apology was something different, Your Honor. I don't -- (Tr. 44:17-21 & 45:4-5 & 45:11-15)

9. THE COURT: -- told you this -- I told you the language that you used in this case was also outside the bounds of the Rules of Civility. You were told that repeatedly.

MR. DAHIYA: But, so what?. . . .

THE COURT: Well, I'm talking -- we're now talking about the words that you have used, okay? Let's --

(Tr. 46:4-8 & 46:23-24)

---

[2] This is the exact quote from the transcript of the language to which we alluded in (d) on page 5 of the Motion.

10.         THE COURT: To use language like that -- and you see, the thing that is troubling, the thing that is troubling here, Mr. Dahiya, is your <u>persistent refusal</u> to acknowledge that you are not complying with the Civility Rules. Your -- and your -- you state that you-re -- you -- you're admonished and you won't do it again. <u>And then you turn around and do it again</u>. (Tr. 49:23-25 & 50:1-4) [Emphasis added.]

11.         THE COURT: -- the fact that you don't -- that you persist in arguing; that you're justified in using this type of language is extremely troubling. . . . (Tr.51:17-19)

12.         THE COURT: -- how is it -- can you say that? The -- I'm not talking about how you feel. I don't care how you feel. I care about the way you act. And the way that your actions, as they're expressed in your -- the words that you use in papers and in court appearances, it reflects acrimony. (Tr. 52:9-14)

13.         MR. DAHIYA: I understand what I do, what I use. (Tr. 53:18)

14.         THE COURT: -- but you're supposed to have the discretion to understand what falls outside the bounds of civil behavior. (Tr. 54:19-21)

15.         MR. DAHIYA: No, that's -- you're right. It has -- it is a universal -- the behavior must comport to the civility. (Tr. 56:21-23)

16. THE COURT: You should treat everyone with civility.[3]

 MR. DAHIYA: You're right, Your Honor. They -- there's absolute no second thought about it. There's no argument about it. (Tr. 57:3-7)

17. THE COURT: It would be sufficient with the -- that would be consistent with Standards of Civility, how am I ever . . . how can you be trusted to act in accordance with the Standards of Civility in the future? (Tr. 59:15-18)

18. THE COURT: All right. So, the other judges have called this to your attention, but it somehow didn't -- you <u>still continue to maintain that you're justified in behaving in this fashion</u>. (Tr. 60:9-12) [Emphasis added]

19. THE COURT: All of which confirm that this is -- it's a -- it's <u>an accusation of a type of criminal conduct</u>. . . . [Emphasis added.]

 THE COURT: -- whether you are going to comport yourself in this fashion going forward. And it leads me to examine what -- to be more motivated to examine what tools might be at my disposal here to induce you to behave in this way, or to make you understand -- (Tr. 63:5-6 &15-19)

---

[3] This is the exact quote from the transcript of the language to which we alluded in (c) on page 5 of the Motion.

20. THE COURT: -- unless you're talking about a crime, you know, that somebody's -- but when you use words that are clearly uncivil; that are -- it's either vulgar language, disparaging personal remarks, or acrimony, that those -- that type of invective -- it not -- apart from the feelings of the part -- the person who is the -- who is on the receiving of that language, it undermines the -- all aspects of the functioning of the Court.

MR. DAHIYA: Yes, Your Honor. I --

THE COURT: Do you -- you don't -- and do you understand that?

MR. DAHIYA: I absolutely understand. (Tr. 65:14-25)

21. THE COURT: Well, I am concerned about it because you've demonstrated yourself and unable to --

MR. DAHIYA: Based --

THE COURT: -- act in that way. To understand this. (Tr. 66:6-10)

22. THE COURT: I know I was wrong, and I won't do it again. I will, you know -- I totally understand that this is beyond the bounds and <u>I won't do it again</u>. But that's -- . . . [Emphasis added.]

THE COURT: Because you -- and the problem is that if you had said that in the Judge -- in Judge Stong's context, you know, and had not repeated your behavior. (Tr. 67:3-5 &12-14)

23.     THE COURT: ... now you're back here defending this in front of me. So, you're -- the way you're, the way this has been approached is not the way that someone who has been corrected and has agreed to operate in a different way, not the way that that's --. . . .

THE COURT: And that's the concern I have because it doesn't seem like anything gets through to you. That's -

MR. DAHIYA: No, it does. (Tr. 68:2-6 & 14-17)

24.     THE COURT: -- So, that <u>leaves me</u> entirely <u>lacking</u> with -- of any -- <u>in any confidence</u> that <u>you are</u> going to be <u>able to judge</u> for yourself, <u>in future</u>, what other words are outside the bounds -- (Tr. 69:4-8) [Emphasis added.]

25.     THE COURT: ... how am I to believe that you're going to be able to figure out for yourself what else might be beyond the bounds of the Civility Rules?

MR. DAHIYA: -- I --

THE COURT: So, I'm asking you to convince by your behavior that you understand what's going on.

(Tr. 70:1-3 & 13-15)

26.     MR. DAHIYA: Yeah.

THE COURT: -- exercise -- try to exercise a modicum of common sense and restraint. And --

MR. DAHIYA: We are going to listen all the Chief Judge [sic]. We're going to listen. We're going to learn. (Tr. 72:3 & 23-24)

27.  THE COURT: -- you didn't learn back in -- you know, a year ago -- more when the stipulation was entered into? Why did you continue to behave in this fashion?

MR. DAHIYA: The answer is -- I think I should give a commitment to the Court to proofread and probably run it with a third-party. (Tr. 73:3-5: & 18-20)

28.  MR. DAHIYA: You know, language can be -- you know, one has to be careful. (Tr. 74:6-7)

29.  MR. DAHIYA: I would say, Your Honor, at this juncture, that I will get the -- I'll get a third-party to read the papers, <u>and I will give a very hard look to the semantics; to the language</u>. . . . I'm an intelligent person and I'm open to learning. It causes it hurt. I understand that. And I will definitely -- I mean, going forward. I mean, you could -- today's date. I will, I'll definitely proofread, and see more, and see what language is proper and not proper. (Tr. 77:20-23 & 78:6-7 & 12-16) [Emphasis added.]

30.  THE COURT: But -- okay, so <u>you're not hearing what I'm saying at all</u>. . . .

THE COURT: -- <u>you're really not</u>. If -- because if you're taking the view that we really didn't do anything wrong, but this

and -- but a lot of desperate allegations. None of which amount to anything are being thrown up as a smokescreen?

(Tr. 81:14-15 & 19-23) [Emphasis added.]

31. THE COURT: But your conduct in this case and in other cases, is fail -- falls short of what is -- of what is expected of attorneys practicing in this Court under this Court's Civility Rules.[4]

(Tr. 82:10-12)

32. MR. DAHIYA: I understand, Your Honor. I take your advice very seriously, and I will --

THE COURT: Well, do --

MR. DAHIYA: -- give a very hard look -- (Tr. 84:20-23)

33. MR. DAHIYA: I understand. I -- you know, I will stick to the Civility Rules, and if Your Honor -- I'm sorry, Your Honor, if you found my conduct not falling through properly. . . . And I understand that. So -- but I will learn. I'll take care of this, Your Honor. I promise you; about the language. I promise. I will not let you down. I'm -- this is a letdown of the system.

(Tr. 85:7-9 & 16-19)

34. THE COURT: So, you need -- that's what gives me such alarm and concern about you, is that you don't seem to get that.

MR. DAHIYA: No, I get it.

---

[4] This is the exact quote from the transcript of the language to which we alluded in (a) on page 5 of the Motion.

THE COURT: Okay.

MR. DAHIYA: I get it. <u>I promise</u>. I -- the <u>language will</u> be <u>tempered</u>; it will be <u>controlled</u>. . . .

(Tr: 86:15-22) [Emphasis added.]

## SO, SOME OF THE QUESTIONS THAT ONE WOULD UNDERSTANDABLY ASK INCLUDE THE FOLLOWING:

- Has he sought again to embarrass me with mendacious accusations, rather than pursue an appropriate path if he had had any legal grounds to take exception with our complaint?

- Does he understand that calling someone mendaciously a perjurer is "name-calling"?

- Doesn't he understand that accusing one of making a perjurious claim is accusing one of committing a crime?

- Can he not see that mendaciously accusing one of perjury is a violation of the Civility Rules and the Rules of Professional Conduct?

- Does he at all understand what Your Honor is talking about?

- Does he not understand that his mendacious ad hominem use of the language is violating the Civility Rules?

- Does he at all understand that he is "out of bounds"?

- Do not repeated admonitions initially from Your Honor, from your colleagues of this Court, from the District Court -- and your

admonition of only 32 hours prior to him accusing me of being a perjurer have any effect?

- Does he "understand" that it's not only the word "extortion" whose mendacious use is prohibited?

- Doesn't he understand that he cannot continue to comport himself in that fashion?

- Can we believe him when he says he "absolutely understand[s]"?

- Aren't we all still -- and, indeed, more so -- "concerned" that he will be "unable to act in that [legal and appropriate and civil] way"?

- Can we believe him when he said "I won't do it again," when he did it again within 32 hours after the most recent admonitions on December 13, 2017?

- Can any of the void of confidence that he created be replenished in any way and instill any confidence in him when he violates the Civility Rules again within 32 hours after an hour and fifteen minute colloquy with the Court, which included those numerous admonitions set out above?

- By his 32 hour-later-ad hominem attack did he demonstrate even a "modicum of common sense and restraint" even though he said: "we're going to listen. We're going to listen"?

- Can we believe this even though he says he's going to "give a very hard look to the semantics; to the language" and not to proofreading alone?

- Can we believe that even though he says he's "open to learning," is there any sign that he has learned -- any sign at all -- even though he said "definitely"?

- Did he hear and take Your Honor's advice . . . seriously when he exercised the same behavior only 32 hours later?

- Does the Court -- can the Court -- believe him when he says: "I will not let you [Your Honor] down"?

The answers to these questions are unfortunately all too clear and one cannot help but reach the ineluctable conclusion that Dahiya ought to be held in contempt and sanctioned because, only 32 hours after an hour and a quarter colloquy with this Court, Dahiya did it again, and violated Your Honor's November 6, 2014, and violated the Civility Rules, and violated the Rules of Professional Conduct -- this time by making his 6th Sanctionable Statement by mendaciously accusing me of committing perjury.

**THEREFORE**, it seems eminently clear and exigently necessary that the Court use the "tool . . . at . . . [the Court's] disposal . . . to induce . . . [Dahiya] to behave . . ."; the tool (Tr. 63:17-18) is to find him in contempt of the Craig Order and to sanction him now.

Dated: New York, New York
January 9, 2018

Respectfully Submitted,

| | |
|---|---|
| Law Offices of<br>ROBERT L. GELTZER<br>Counsel to the Chapter 7 Trustee<br>ROBERT L. GELTZER<br>1556 Third Avenue, Suite 505<br>New York, New York 10128<br>(212) 410-0100<br><br>By: /s/ Robert L. Geltzer<br>    Robert L. Geltzer<br>    Member of the Firm | TARTER KRINSKY & DROGIN LLP<br>Special Litigation Counsel to the Trustee<br>1350 Broadway<br>New York, New York 10018<br>(212) 216-8000<br><br>By: /s/ Robert A. Wolf<br>    Robert A. Wolf |