Law Offices of Robert L. Geltzer
1556 Third Avenue, Suite 505
New York, New York 10128
(212) 410-0100
Robert L. Geltzer
Mark E. Bruh
*Counsel to Robert L. Geltzer,*
*as Chapter 7 Trustee*

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
(212) 216-8000
Robert A. Wolf
*Special Litigation Counsel to the Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Submission Date: 4/10/18

In re:

Chapter 7

**MAN KIT NG,**

Case No. 11-46867 (CEC)

Debtor.

---

**ROBERT L. GELTZER,** as Trustee for the Estate of **MAN KIT NG,**

Plaintiff,

-against-

Adv. Pro. No. 12-01343 (CEC)

**MAN KIT NG,**

Defendant.

---

**REPLY TO OBJECTION TO MOTION FOR ORDER HOLDING KARAMVIR DAHIYA, ESQ. and/or THE DAHIYA LAW OFFICES, LLC IN CONTEMPT and IMPOSING SANCTIONS AGAINST THEM PURSUANT TO § 105(a) OF THE UNITED STATES BANKRUPTCY CODE ("§ 105") and 28 U.S.C. § 1927 FOR MAKING THE 6th SANCTIONABLE STATEMENT**

## PRELIMINARY STATEMENT

**Just 32 hours after this Court's[1] December 13, 2017 hearing** on our October 5, 2017 sanctions motion against Dahiya (the "2017 Sanctions Motion,"[2]) at which time Your Honor advised Dahiya that perjury is a criminal offense, Dahiya, in his December 14, 2017 motion to dismiss (Soshkin Dkt. No. 4 and 5), made the mendacious accusation that I[3] had made a "perjurious" statement in the complaint (the "Complaint"; Dkt. 1) in the adversary proceeding captioned Geltzer as Trustee v. Zlata Soshkin, Adv. Pro. No. 17-01157 (ESS) in the Brizinova Case, #12-42935 (ESS).

This Motion originally was noticed to be heard on February 13, 2018 but pursuant to this Court's March 8, 2018 Scheduling Order (the "Scheduling Order") the Motion was adjourned to April 10, 2018, and was to be submitted to the Court on that date for decision without oral argument.

---

[1] Pursuant to Rule 9001-1(a)(v) of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rule(s)"), "Court" "means the United States Bankruptcy Court for the Eastern District of New York and any Judge." [Emphasis added.]

[2] Brought for violations of 11 U.S.C. § 105(a), and 28 U.S.C. § 1927, and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)") 9014 and 9020, and the New York Rules of Professional Conduct, 22 NYCRR §§ 1200 et seq. (sometimes hereinafter referred to as the "Rules of Professional Conduct"), and the United States Bankruptcy Court for the Eastern District of New York, Administrative Order No. 568, Adoption of New York Standards of Civility (the "Civility Rules"), and Your Honor's November 6, 2014 Order (sometimes referred to as the "Craig Order"; Dkt. 50 in the instant adversary proceeding).

[3] "I" and "me" refer to Robert L. Geltzer, and the personal comments made herein are exclusively mine and do not necessarily reflect the opinions of Substitute Special Litigation Counsel to me in the below referenced cases, as Trustee.

Also pursuant to the Scheduling Order, any opposition on behalf of Dahiya was to be served on or before March 23, 2018; Dahiya's undated "Response to Robert L. Geltzer's another Motion for Contempt and Sanctions" was filed at 6:05 p.m. on March 23, 2018.[4]

As stated in this Motion, perjury constitutes a criminal offense, which Your Honor verbalized to Dahiya at the December 13, 2017 hearing when he specifically argued that accusing someone of perjury was no different from a child lying to his mother:

> MR. DAHIYA: A kid --
>
> THE COURT: -- so --
>
> MR. DAHIYA: -- lies to his mother.
>
> THE COURT: -- is there a version --
>
> MR. DAHIYA: Is that --
>
> THE COURT: -- is --
>
> MR. DAHIYA: -- a perjury?
>
> THE COURT: No, perjury -- because --
>
> MR. DAHIYA: A kid lies to his mother.
>
> THE COURT: Excuse me.
>
> MR. DAHIYA: Yes.
>
> THE COURT: Perjury is lying under oath.
>
> MR. DAHIYA: Yes, Your Honor.
>
> THE COURT: When you have made a statement under penalty of perjury.

---

[4] While it's permissible for Dahiya to file his objection before midnight, so, too, was it permissible for me to file the Soshkin adversary proceeding on November 9, 2017, notwithstanding Dahiya's objection that it was "on a very tardy basis"; an objection that is not grounded in law or equity.

THE COURT: Okay. So, but extortion -- when you accuse a trustee -- who's not a child in, you know, dealing with his mother, or whatever - who's a professional; who's working under the supervision of the United States Trustee's Office. And you accuse of him a criminal activity [e.g., perjury], then you use a word that has to -- that is, that is known -- that signifies a criminal accusation of criminal activity. How is that consistent with civility? It's not -- and what -- how am I to understand that, other than as I have? (Dec. 17, 2013 Tr.[5] 40:20-41:19, Exhibit "A" to the Supplement to the Motion)

As set forth in Black's Law Dictionary: "A person is guilty of perjury if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." In making his mendacious accusation of perjury, Dahiya does not - and cannot - point to any such false statement which has been made under oath; indeed, it was not even I who signed the Complaint.

Dahiya's 1772 Lord Mansfield quote from The King v. Skinner which excused the sitting judge from liability for his comments about the grand jury as a whole is misleading because Dahiya did not provide the entire quote; Mansfield went on to state: "'If the words spoken are opprobrious, or irrelevant to the case, the <u>Court will take notice of them as a contempt</u>, and examine on information. If any thing of mala mens is found on such enquiry, it will be punished suitably.'"[6] [Emphasis added.] And sanctions, at long last, will be a "suitable" punishment. It also should be noted that Mansfield was referring to "words spoken in [judicial] office"; thus, it simply is not relevant to any defense to our Motion inasmuch as Dahiya had no

---

[5] Tr. means Transcript of Hearing.

[6] Rex v. Skinner, 98 Eng. Rep. 529 (1772), and Dickinson's Guide to The Quarter Sessions, and Other Sessions of the Peace, Adapted to the use of Young Magistrates, and Professional Gentlemen, at the Commencement of their Practice — The Fifth Edition, Revised and Corrected, with Great Additions, by T. N. Talfourd, Esq., Sergeant at Law --------------- London: S. Sweet, V. & R Stevens & G. S. Norton, A. Maxwell, H. Butterworth, and J. Richards & Co., Law Booksellers' and Publishers'; and Hodges & Smith, College Green, Dublin, 1841; p. 87.

"office." But if Dahiya is to look to and heed Mansfield, then he should adopt the portion of the quotation that he omitted and also recall that when Mansfield was unfairly and falsely attacked by Junius in the Public Advertiser on November 16, 1770, Mansfield responded:

> Sir, if in future you indulge the ill-founded asperity of your Pen, [you] may be called to answer for your Conduct, in a way that may cause you to regret that ever you was born, or, at least, that Nature has given you Abilities, which, if guided by Discretion, would have made you as much a Blessing, as you are now a Curse to Mankind.[7]

Junius stopped; Dahiya has not!

## IRRELEVANT CASES CITED BY DAHIYA

No case cited by Dahiya involved any privilege attaching to the violation of a specific order or the Court's inherent power to sanction; every case cited by Dahiya involved seeking damages for defamation. By affirming his contemnable and sanctionable statements under the inapplicable theory of privilege, what Dahiya is, in effect, stating is that he believes and reaffirms that he has a license to accuse me falsely of extortion and perjury. That simply cannot be permitted any longer to stand. It should not be held as a mere "rhetoric flourish" to accuse one falsely of perjury especially when doing so (even if the statements were not in direct violation of various rules) is in direct violation of one of this Court's own orders and but one of many, not isolated, ad hominem attacks that are "threads" of a pattern of malicious, intentional abuse aimed at me and other trustees and the bankruptcy system in the District. But an accretion and confluence of even otherwise merely negative rhetorical flourishes, when utilized over and over again, congeal and breed contemnable and sanctionable results.

---

[7] William Lord Mansfield, "An Answer to the Letter Signed Junius, in the Public Advertiser of Wednesday, 14 November 1770," (London 1770) 25 (available on eighteenth-century collections online).

Dahiya's citation to <u>Briscoe v. LaHue</u>, No. 81-1404, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), is equally irrelevant to any defense to our Motion, even without considering the persuasive argument in the dissent. <u>Briscoe</u> attempts to answer the question of whether 42 U.S.C. § 1983 permits a convicted person to recover damages against a police office who gave perjured testimony at the convicted person's trial. The case makes clear that it's about "civil liability based on their testimony in judicial proceedings." <u>Id.</u> at 328. First of all, our Motion is not made in a defamation case and seeks no damages for defamation. It's not about "testimony in open court in a criminal trial." <u>Id.</u> at 330. But, even if it were, there has been no showing by Dahiya -- and there cannot be any showing by him or anyone else -- that accusing me of perjury was "relevant to the judicial proceeding." <u>Id.</u> at 331. What our Motion is about is clear: it's about Dahiya's violations of the Rules of Professional Conduct, the Civility Rules, and the Craig Order, all in violation of § 105 of the Code and 28 U.S.C. § 1927, as set out in detail in the Motion and the exhibits and attachments thereto.

His footnote quotation from <u>Butz v. Economou</u>, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), also is grossly misapplied. Again, this was a suit for damages by the plaintiff/respondent against the federal official for various Department of Agriculture complaints and audits and enforcement proceedings against him. The case does not stand for the proposition of absolute immunity; "the official would not be excused from liability if he failed to observe obvious statutory or constitutional limitations on his powers or if his conduct was a manifestly erroneous application of the statute." <u>Id.</u> at 494. Thus, even if one were to stretch to try to make <u>Butz</u> applicable here, it would fail because Dahiya's remarks calling me a perjuror went well beyond any duty he had (apart from the fact that he was not a public official), and because he violated specific rules which impose various restraints on his words and deeds including, without

limitation, the Rules of Professional Conduct, the Civility Rules and the Craig Order. Qualified immunity is the general rule to which exceptions are made for "some officials whose special functions require a full exemption from liability." Id. at 508. Dahiya's quotation from Butz is misplaced not only because it appertains to a situation in a trial, but also because Dahiya failed to state, as Butz did, that "advocates are restrained not only by their professional obligation, but by the knowledge that their assertions will be contested by their adversaries in open Court." Id. at 512. Certainly, his sanctionable words cannot receive any immunity as he would like inasmuch as they violate the Rules of Professional Conduct, the Civility Rules, and the Craig Order making them contemnable as well. It was not within Dahiya's official, or any other, duty to accuse me of perjury which in no way advanced his otherwise erroneous motion to dismiss.

While it is always pleasant to hear the poetry of Holmes, we fear that he would have concern that his words are being used to misconstrue his intent. Towne v. Esiner, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372 (1918), from which Dahiya quotes, is a case addressing whether "income means the same thing in the Constitution and the Act." Id. at 425. "Perjury," on the other hand, does not "vary greatly in color and content according to the circumstances and the time in which it is used." Id. Accusing someone of perjury is accusing them of having committed a blatantly illegal act, and when the accusation is false and made by Dahiya or any attorney it also violates the Rules of Professional Conduct and violates the Civility Rules, and when made by Dahiya it also violates the Craig Order, and he ought to be sanctioned for doing so.

Greenbelt Coop. Publ'g Ass'n v. Charles S. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), is totally irrelevant as a defense to our Motion to hold Dahiya in contempt and to sanction him. In Greenbelt, Bresler sought damages for libel and slander against a newspaper

that had published views of members of the public expressed at council meetings. He was a public figure and a public official who was involved in a heated public debate over certain zoning variances while, at the same time, he was trying to sell a parcel of land that he owned to that same city council from which the zoning variances were sought and, thus, he was accused of "blackmail." But meetings of the community in which there were heated public debates are unlike what the actions of a calm counselor in court and in pleadings should be. Accusations against Bresler were, indeed, simply rhetoric and hyperbole in the public square that were reported by the newspaper which, also according to Supreme Court jurisprudence, could not be held liable for damages even if its publication was false as long as it had not been uttered "with malice or with reckless disregard of whether they were true or false." Id. at 9. Certainly, not a case applicable to Dahiya's repeated mendacious accusations which added nothing to the representation of his client but which, one could reasonably argue, were, indeed, made with "malice . . . and their reckless disregard of whether they were true or false."

The trial court levied three judgments in the amount of $165,000.00 against the labor unions in Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), because the union published a "list of scabs" and used the word "traitor" to describe those opposing union organization and collective bargaining efforts. The Supreme Court reversed to protect "the freedom of speech in labor disputes guaranteed under federal law." Id. at 266. Again in Old Dominion, as in Greenbelt, constitutionally and statutorily protected freedom of speech were at stake. Sanctioning Dahiya's utterances would not violate constitutional tests because the very purpose of the rules and the Craig Order that he violated was, and is, to limit certain words and deeds by attorneys that are in derogation of proper professional conduct. Old Dominion involved the

preemption of state libel laws in order to foster the policy of Congress embodied in the National Labor Relations Act that "freewheeling use of the written and spoken word . . . has been expressly fostered by Congress and approved by the NLRB . . . to encourage free debate on issues dividing labor and management . . . [and are] allowed wide latitude to the competing parties." Id. at 272. In contrast to that, the Rules of Professional Conduct and the Civility Rules and, certainly, the Craig Order are intended to provide much narrower latitude as to what attorneys can say in pleadings and in court and in their practice. To apply absolute immunity or even limited immunity to words that are uttered in litigation but for which relief is not sought via a civil defamation action but, rather, in sanction and/or contempt motions, would totally nullify and render meaningless such motions.

> The existence of remedies other than a cause of action for damages provides the third rationale for absolute immunity. These alternative remedies include a variety of sanctions that can be imposed by the court pursuant to the rules of civil procedure and the court's inherent contempt powers, as well as the potential for disciplinary proceedings through state and local bar associations. Courts impose penalties pursuant to Federal Rules of Civil Procedure 11, 26, and 37. While courts are imposing monetary sanctions with greater frequency, other punishments under these rules have included reprimands, orders for attorneys to attend continuing legal education classes, and even suspensions from practice. Attorneys who are held in contempt of court may also face long-term professional repercussions. In addition to deterring errant attorneys, court-imposed sanctions may actually provide more immediate relief and satisfaction to party opponents who desire their "day in court" than a separate civil action would provide. [Footnotes omitted.] T. Leigh Anenson *Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers*, 31 Pepp. L. Rev. 4 (2004) Available at: http://digitalcommons.pepperdine.edu/ plr/vol31/iss4/1

While "in labor relations . . . electioneering or campaigning has a broad tolerance," Old Dominion at 275, mendaciously accusing one of extortion and perjury, even if to

advance a client's cause, receives a zero tolerance level. Although the Supreme Court acknowledged that even though the union speakers and newspaper articles stated that Bresler had committed "blackmail," no one could have thought that they were really charging him with a crime; that is just not the case where Dahiya, supposedly in a calm and careful reasoned legal pleading accuses me of extortion and perjury. And for that I do not seek damages and did not commence any action for defamation or libel; instead, I simply seek to have him sanctioned for his contemnable words and conduct. If the use of the words "scab" and "traitor" were, as the Supreme Court concluded, just "exaggerated rhetoric . . . commonplace in labor disputes and protected by federal law," Id. at 286, it is not "commonplace" in bankruptcy court disputes and are not protected by federal law to accuse me of extortion and perjury, especially where Dahiya has agreed to refrain from doing so as embodied in the Craig Order.

O'Brien v. Alexander,[8] 898 F.Supp. 162, (S.D.N.Y. 1995), is another inapplicable case inasmuch as it involves a lawsuit for defamation -- our motion is not about defamation. The appeal in O'Brien v. Alexander, 101 F.3d 1479, (2d.Cir 1996), was predominantly about whether sanctions against the plaintiff's attorney should be imposed under Rule 11. While our Motion was not brought under Rule 11, the Second Circuit's discussion is informative. While it recognizes the importance of "zealous oral advocacy," Id. at 1482, such advocacy cannot contain any "'knowingly . . . false statement of law or fact,'" under the Model Code of Professional Responsibility DR 7-102(A.5). First, it must be noted, that the Second Circuit decision was based upon the lower court's decision involving claims for defamation rather than for violations

---

[8] Reading this case almost makes one wonder whether Dahiya has violated § 487 of the New York Judiciary Law entitled "Misconduct by attorneys" in that, according to O'Brien, § 487 "provides [that] an attorney in a pending lawsuit may not deceive or collude with intent to deceive the court or any party to that lawsuit" Id. at 168. It seems that there can be no question but that accusing me of extortion and perjury is a clear attempt by Dahiya to deceive this Court.

of the Rules of Professional Conduct, the Civility Rules or a judge's order, like the Craig Order. The Court of Appeals found that while all statements are not specifically embraced by Rule 11, such statements can result in sanctions if they are directly related to a pleading. Dahiya has reaffirmed his accusations against me of extortion in his oral arguments, notwithstanding this Court's attempts to encourage him to correct his words and conduct (as exemplified in the December 13, 2017 Transcript attached as Exhibit "A" to the Supplement to this Motion). Furthermore, while the safe harbor provision of Rule 11 giving the accused party a chance to withdraw and retract the sanctionable statement does not apply here, the fact remains that Dahiya has had ample opportunities to do so but, instead, has reaffirmed the statements that he made, which reaffirmation is a factor considered by the Court of Appeals in imposing sanctions. The Court of Appeals recognized that <u>de novo</u> oral statements made by an advocate might not be thought through thoroughly and presented in perfect prose in the heat of argument and, thus, are not sanctionable. But if those oral statements reaffirm sanctionable materials in the pleadings, then those oral statements are sanctionable unto themselves; i.e., his belief as to the permissibility of falsely accusing me of perjury in the December 13, 2017 colloquy with Your Honor and his accusation in his motion to dismiss that I had committed that crime. Attorneys are rightfully given the opportunity "for study and reflection," <u>id.</u> at 1489, attributes which it seems Dahiya eschews, notwithstanding admonitions by Your Honor and various members of this Court, and by a Federal District Judge. To whatever extent <u>O'Brien</u>, which stemmed from defamation actions, is relevant here, it seems to support sanctioning Dahiya.

<u>Grasso v. Mathew</u>, 164 A.D.2d 476, 564 N.Y.S.2d 576 (3d Dep't 1991), is another inapplicable case solely involving a defamation action between husband and wife in

connection with a letter that he sent to her alleging that a certain default judgment of divorce was obtained by fraud.

Herzfeld & Stern, Inc. v. Beck, 175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dep't 1991), is just another case based upon claims for defamation in which the discharged plaintiff demanded special damages arguing that statements made about him in his termination notice and subsequent letters defamed him. Like the other irrelevant cases cited by Dahiya, it makes the point that for the absolute privilege to attach to the utterance of the statement complained of, that statement must be "material and pertinent." Id. at 685.

The complaining plaintiff/landlord alleged that it was defamed by statements made by tenants in their applications for rent refunds in Park Knoll Assoc. v. Schmidt, 464 N.Y.S.2d 424 (1983). Again, this was a defamation case, but what is interesting to note is that the privilege attached because that Court felt that the statements were in the "public interest" and that tenants were "discharging a public function." Id. at 426. Even if our Motion sought damages for defamation, which it does not, Dahiya would not receive the benefit of the privilege because his false statements do not "promote the administration of justice." Id. Indeed, they thwart the administration of justice for all the reasons articulated in the 2017 Sanctions Motion which were incorporated herein by reference as stated on page 6 of this Motion.

Aequitron Medical, Inc. v. Dyro, 999 F.Supp 294 (E.D.N.Y. 1998), is just another defamation case, which afforded privilege to the defendant who was an expert retained by the plaintiff to opine on the plaintiff's sudden infant death syndrome alarm, and who made some negative comments with respect to it. The privilege was extended not only, or not even so much, "to benefit or protect the speaker, but to benefit the public by promoting the administration of justice." Even if this were a claim for defamation, false statements by an attorney, whether inside

or outside the courtroom simply do not promote the administration of justice; indeed, they thwart the Rules of Professional Conduct and the Civility Rules, and, in this case, violate a particular order, viz., the Craig Order which, like all court orders, should receive the honor and respect and compliance to which they are legally entitled if they are to mean anything at all.

## CONCLUSION

In making his mendacious accusation of perjury, Dahiya does not - and cannot - point to any such false statement which has been made under oath; indeed, it was not even I who signed the Complaint.

Thus, for all the reasons set forth above and in this Motion, including the exhibits attached thereto and the materials included therein by reference, this Motion to hold Dahiya in contempt and to sanction him should be granted.

Dated: New York, New York
      April 5, 2018

The Law Offices of
ROBERT L. GELTZER
Attorneys for Robert L. Geltzer
Trustee

By: /s/ Robert L. Geltzer
    Robert L. Geltzer
    A Member of the Firm
    1556 Third Avenue, Suite 505
    New York, New York 10128
    (212) 410-0100

TARTER KRINSKY & DROGIN LLP
Special Litigation Counsel to the Trustee

By: /s/ Robert A. Wolf
    Robert A. Wolf
    1350 Broadway
    New York, New York 10018
    (212) 216-8000